IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| D. JEANETTE FINICUM; THARA TENNEY; TIERRA COLLIER; ROBERT FINICUM; TAWNY CRANE; ARIANNA BROWN; BRITTNEY BECK; MITCH FINICUM; THOMAS KINNE; CHALLICE FINCH; JAMES FINICUM; DANIELLE FINICUM; TEAN FINICUM; ESTATE OF ROBERT LAVOY FINICUM, | Case No. 2:18-cv-00160-SU<br><br>**FINDINGS & RECOMMENDATION** |

                    Plaintiffs,

        v.

UNITED STATES OF AMERICA; FBI; BLM; DANIEL P. LOVE; SALVATORE LAURO; HARRY MASON REID; GREG T. BRETZING; W. JOSEPH ASTARITA; STATE OF OREGON; OREGON STATE POLICE; KATHERINE BROWN; RONALD LEE WYDEN; HARNEY COUNTY; DAVID M. WARD; STEVEN E. GRASTY; CENTER FOR BIOLOGICAL DIVERSITY; JOHN DOES 1-100; TRAVIS HAMPTON; TROOPER 1; TROOPER 2; MICHAEL FERRARI; SPECIAL AGENT B.M,

                    Defendants.

_____

SULLIVAN, United States Magistrate Judge:

        This action concerns the shooting death of Robert LaVoy Finicum on January 26, 2016, in

connection with the armed occupation of the Malheur National Wildlife Refuge in Harney County,

Oregon, led by Ammon and Ryan Bundy, in January and February of that year.  Plaintiffs include

Jeanette Finicum, LaVoy Finicum's wife and the representative of his estate, and his children and heirs. Defendants include the United States, the State of Oregon, Harney County, Oregon Governor Kate Brown, Harney County Court Judge Steven Grasty, Harney County Sheriff Dave Ward, and individual state and federal law enforcement officers.

Plaintiffs bring claims for (1) wrongful death against the United States under the Federal Tort Claims Act; (2) a *Bivens* claim for violation of Finicum's constitutional rights against all individual federal Defendants; (3) a Fourth Amendment excessive force claim under 42 U.S.C. § 1983 against all individual Defendants; (4) a claim for deprivation of familial relationship under 42 U.S.C. § 1983 against all individual Defendants; (5) a *Monell* claim for municipal liability under 42 U.S.C. § 1983 against all Defendants; (6) a claim for conspiracy against all Defendants; (7) an Oregon state law claim for negligence against all Defendants; and (8) a common law claim for assault and battery against the State of Oregon, Travis Hampton, Trooper 1, Trooper 2, and Harney County.

This case comes before the Court on Motions to Dismiss filed by Defendants (1) the United States, ECF No. 108; (2) Greg T. Bretzing, ECF No. 107; (3) the State of Oregon, the Oregon State Police ("OSP"), Oregon Governor Kate Brown, Travis Hampton, Trooper 1, and Trooper 2 (collectively, the "State Defendants"), ECF No. 105; and (4) Harney County, David M. Ward, and Steven E. Grasty (collectively, the "County Defendants"), ECF No. 106. The Court heard oral argument on March 6, 2020, in Portland, Oregon. ECF Nos. 152, 156.

For the reasons set forth below, the United States' Motion to Dismiss should be GRANTED, Bretzing's Motion to Dismiss should be GRANTED, the State Defendants' Motion to Dismiss should be GRANTED in part and DENIED in part, and the County Defendants' Motion to Dismiss should be GRANTED.

## JUDICIAL NOTICE

Defendants Bretzing and the United States have filed a request for judicial notice.  ECF No. 110.  A court may take judicial notice of a fact that is not subject to reasonable dispute because it is "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Judicial notice may be taken of public records and government documents made available from reliable sources on the Internet, such as governmental agency websites.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  Courts may also take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  "Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents."  *Id.*

In this case, Bretzing and the United States request that the Court take judicial notice of the criminal complaint and supporting affidavit, as well as the superseding indictment in *United States v. Bundy et al.*, 3:16-CR-00051-BR.  Taylor Decl. Exs. A, B.  ECF Nos. 110-2, 110-3.  These are part of the docket file for a criminal case filed in the District of Oregon.  The Court concludes that they are proper subjects for judicial notice.

The United States and Bretzing also request that the Court take judicial notice of the 2008 Attorney General's Guidelines for Domestic FBI Operations ("AGG DOM") and the 2011 Domestic Investigation and Operations Guide ("DIOG").  Taylor Decl. Ex. H.  ECF No. 110-5.  These are public agency records available on the FBI's public records website and from records

electronically retrievable through the U.S. Department of Justice website.  Taylor Decl. ¶ 7.  The Court concludes that these documents are also proper subjects for judicial notice.

Finally, the United States and Bretzing request that the Court take judicial notice of a series of news media articles from ABC News, MSNBC, NBC News, and the Oregonian published between January 4, 2016, and January 26, 2016.  Taylor Decl. Ex. G.  ECF No. 110-4.  These articles report that Finicum and his confederates were armed and that Finicum would "take death over jail."  *Id.*  "Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation marks and citation omitted).

Here, the United States and Bretzing do not offer these articles for the truth of their contents, but "to establish what was in the public realm and likely known to Bretzing and other federal agents at the time of the events."  Req. for Judicial Notice, at 5.  That is an appropriate basis for judicial notice.  *Von Saher*, 592 F.3d at 960.  The Court therefore takes judicial notice of the submitted articles for those limited purposes.

In their Response to the United States' Motion to Dismiss, ECF No. 142, Plaintiffs urge the Court to take judicial notice of a series of articles published in December 2017 concerning allegations of misconduct and bias by federal agents in a 2014 confrontation that took place in Nevada.  Pls. Resp. 4-5 n.1.  Unlike the articles submitted by the United States and Bretzing, these reports were not published until nearly two years after Finicum's death and cannot be said to establish what was in the public realm at the relevant time.  Additionally, Plaintiffs appear to offer those articles for purposes of demonstrating the truth of their contents.  These articles are not,

therefore, proper subjects for judicial notice under *Von Saher* and the Court declines to take judicial notice of them.

## BACKGROUND

The following factual summary is drawn from the Second Amended Complaint ("SAC"), ECF No. 89, and the judicially noticed materials. Additional factual allegations will be addressed, as necessary, in the discussion section. Plaintiffs in this case are the personal estate, widow, and surviving children of Robert LaVoy Finicum. Second Am. Compl. ("SAC") ¶¶ 30-32.

Fincium was a resident of Arizona. SAC ¶ 342. In January 2016, Finicum traveled to Oregon to participate in a political demonstration held in the city of Burns on January 2, 2016. *Id.* at ¶¶ 130, 137. Following the demonstration, Finicum participated in the armed occupation of the nearby Malheur National Wildlife Refuge (the "Refuge") as part of a continuing political protest. *Id.* at ¶¶ 139-40, 153-56. Finicum was one of the "most visible spokesmen" of the protest and occupation. *Id.* at ¶ 156.

On January 26, 2016, Finicum and other leaders of the occupation left the Refuge to deliver a public presentation in Grant County, Oregon. SAC ¶ 197. At the time, Finicum was driving his own vehicle, which carried several passengers. *Id.* at ¶ 200. Other occupation leaders and participants were traveling in a second vehicle. *Id.* at ¶ 201.

State and federal law enforcement were aware of the planned route and set up a roadblock to intercept the two vehicles. SAC ¶¶ 199, 202-04.

When the two vehicles were a mile away from the roadblock, they were pulled over by state and federal police. SAC ¶¶ 223, 226, 235, 239, 245. The occupants of the second vehicle were arrested without incident. *Id.* at ¶ 223. Police fired pepper spray rounds into Finicum's vehicle. *Id.* at ¶ 227. Police demanded that Finicum and the other occupants of his vehicle

surrender.  *Id.* at ¶ 235.  Finicum refused and responded that he intended to continue to Grant County.  *Id.* at ¶ 236.  Finicum then resumed driving, pursued by police.  *Id.* at ¶¶ 243, 245.

Finicum was unaware of the roadblock during the subsequent mile of police pursuit because it was hidden by a bend in the highway.  SAC at ¶¶ 233, 245-46.  When Finicum saw the roadblock, he braked and veered off the road and into a snowbank to avoid a collision.  *Id.* at ¶¶ 249, 256, 261.  Police opened fire on Finicum's vehicle as it approached the roadblock and continued to fire on the vehicle after it crashed.  *Id.* at ¶¶ 249, 261.  Defendants Travis Hampton, Trooper 1, and Trooper 2 are alleged to have participated in the roadblock operation in their capacities as OSP troopers.  *Id.* at ¶ 191.

After coming to a stop, Finicum exited the vehicle, "vocally expressing and shouting that he realized he was being targeted for assassination."  SAC ¶ 262.  Plaintiffs allege that this was an "attempt to draw lethal fire" away from the vehicle.  *Id.*  Finicum was struck by three rounds fired by "one or more" officers of the Oregon State Police "and/or" the FBI, potentially including Defendants Hampton, Trooper 1, or Trooper 2.  *Id.* at ¶¶ 1, 268, 275.  It was subsequently reported that Finicum was armed and was reaching into his coat for a firearm when police opened fire.  SAC ¶¶ 280-81, 283-84.  Plaintiffs dispute those reports.  *Id.*

Finicum died on the scene as a result of his injures.  *Id.* at ¶ 273.

## PROCEDURAL HISTORY

The original Complaint was filed in this case on January 25, 2018.  ECF No. 1.  Several of the defendants named in the original Complaint are no longer parties to this action.  The claims against Senator Ron Wyden of Oregon and former Senator Harry Reid of Nevada were dropped with the filing of the operative SAC.  ECF No. 66.

Plaintiffs voluntarily dismissed their claims against the Center for Biological Diversity. ECF Nos. 103, 104.  Similarly, on December 31, 2019, the parties stipulated to the dismissal of the claims against Daniel P. Love and Salvatore Lauro.  ECF Nos. 133, 134.

On January 24, 2020, the Court dismissed the claims against W. Joseph Astarita for failure to properly serve.  ECF Nos. 130, 139.

At the hearing on the present motion, Plaintiffs affirmed that Michael Ferrari and Special Agent B.M. are also no longer parties to the lawsuit.  Mot. Hr'g Tr. at 7-8.  ECF No. 156.

## LEGAL STANDARDS—FEDERAL DEFENDANTS

### I.     Federal Rule of Civil Procedure 12(b)(1)—Lack of Subject Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction.  The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  The court "is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981).

A motion to dismiss under Rule12(b)(1) tests the court's subject-matter jurisdiction.  In deciding a motion under that rule, the "district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary.   No presumptive truthfulness attaches to plaintiff's allegations." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (internal quotation marks and citations omitted, alterations normalized).  The plaintiff bears the burden of establishing the court's subject-matter jurisdiction.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider [outside] facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).  A Rule

12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction to hear the claims at issue. Fed. R. Civ. P. 12(b)(1).  Specifically, a court may look beyond the pleadings when a defendant brings a "factual attack" disputing the substance of the allegations in a complaint as they pertain to subject matter jurisdiction.  *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

## II.       Sovereign Immunity

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."  *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).  To establish subject-matter jurisdiction in an action against the United States, there must be (1) "statutory authority vesting a district court with subject matter jurisdiction" and (2) a "waiver of sovereign immunity."  *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007).  Even where statutory authority vests the district courts with subject-matter jurisdiction, the United States cannot be sued unless it has expressly consented to be sued.  *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1087-88 (9th Cir. 2007).  "The Supreme Court has frequently held that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign."  *Id.* at 1088 (internal quotation marks and citation omitted, alterations normalized).

## III.      Federal Rule of Civil Procedure 12(b)(5)—Insufficient Service

Rule 12(b)(5) provides that a defendant may move to dismiss an action for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  "However, 'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'"  *Id.* (quoting *United Food & Commercial Workers Union v. Alpha Beta*

*Co.*, 736 F.2d 1371, 1382 (9th Cir.1984)).  But "without substantial compliance with Rule 4, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction."  *Id.* at 688 (internal quotation marks and citation omitted).  Once service of process is challenged, "[i]t is plaintiff's burden to establish the validity of service of process." *Roller v. Herrera*, No. 3:18-CV-00057-HZ, 2018 WL 2946395, at *2 (D. Or. June 11, 2018).  "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion."  *Id.*; *see also Lachick v. McMonagle*, No. CIV. A. 97-7369, 1998 WL 800325, at *2 (E.D. Pa. Nov. 16, 1998) ("Factual contentions regarding the manner in which service was executed may be made through affidavits, depositions, and oral testimony.").

## IV.    Federal Rule of Civil Procedure 12(b)(6)—Failure to State a Claim

To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The court is not required to accept legal conclusions, unsupported by alleged facts, as true.  *Id.*

## DISCUSSION—FEDERAL DEFENDANTS

This matter comes before the Court on Motions to Dismiss filed by the United States, Bretzing, the State Defendants, and the Harney County Defendants.  Because the United States' motion implicates threshold questions of subject matter jurisdiction, the Court will address that motion first.

## I.   The United States' Motion to Dismiss

Plaintiffs assert four claims against the United States: (1) Wrongful Death under the Federal Tort Claims Act (Claim One); (2) violation of 42 U.S.C. § 1983 (Claim Five); (3) Conspiracy (Claim Six); and (4) common law negligence (Claim Seven). The United States seeks dismissal of those claims for lack of jurisdiction on sovereign immunity grounds. ECF No. 108. The United States asserts that the claims do not fall within the limited waiver of sovereign immunity provided by the Federal Tort Claims Act ("FTCA"). Plaintiff has also brought claims directly against the FBI and the BLM. At oral argument, the United States argued that those claims should also be dismissed because the United States is the only proper defendant under the FTCA.

### A.   The Federal Tort Claims Act Generally

Under the doctrine of sovereign immunity, courts may not entertain suits against the United States without its consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The FTCA provides that the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]"). In doing so, the FTCA waives the United States' sovereign immunity for tort claims against the federal government in cases where a private individual would have been liable under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The remedies provided by the FTCA are the exclusive remedy for claims cognizable under 28 U.S.C. § 1346(b), which

grants the federal district courts jurisdiction over tort claims against the United States.  28 U.S.C. § 2679(a).

The waiver of sovereign immunity contained in the FTCA is limited to "permit[] certain types of actions against the United States."  *Morris v. United States*, 521 F.2d 872, 874 (9th Cir. 1975).  However, 28 U.S.C. § 2680 "provides for several exceptions that 'severely limit[]' the FTCA's wavier of sovereign immunity."  *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 217), *opinion amended on reh'g*, 868 F.3d 1048 (9th Cir. 2017) (quoting *Morris*, 521 F.2d at 874).  If a plaintiff's tort claims fall within one of the exceptions, the district court lacks subject matter jurisdiction.  *Id*.; 28 U.S.C. § 2680.

### B. Plaintiffs' Claims Against Federal Agencies

Plaintiffs have named the FBI and the BLM as Defendants for several of their claims.  SAC ¶¶ 345-69.  At oral argument, the Court inquired into the status of the claims against the FBI and the BLM, as neither agency had appeared in the case, except through counsel for the United States on a limited basis.  Mot. Hr'g Tr. at 6-7.

The United States argued that the claims against the agencies are improper because  (1) the United States is the only proper defendant under the FTCA and claims may not be maintained against federal agencies under that statute and (2) no other waiver of sovereign immunity would render the agencies susceptible to Plaintiffs' claims.  The Court granted Plaintiffs leave to file supplemental briefing on the question of agency defendants under the FTCA.  That briefing has now been filed and the United States has responded.  ECF Nos. 155, 158.

As discussed in the preceding section, the sovereign immunity doctrine provides that "unless the Government consents to being sued, neither it nor its agencies may be made parties in damage actions."  *Midwest Growers Co-op Corp. v. Kirkemo*, 533 F.2d 455, 465 (9th Cir. 1976).

"It is similarly well established that federal agencies are not subject to suit eo nominee unless so authorized by Congress in 'explicit language.'" *Id.* (quoting *Blackmar v. Guerre*, 342 U.S. 512, 515 (1952)).

"Sovereign immunity is jurisdictional in nature" and "the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (internal quotation marks and citation omitted, alterations normalized). "Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction." *Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004); *see also Alvarado*, 509 F.3d at 1016 ("To confer subject matter jurisdiction in an action against a sovereign, in addition to a waiver of sovereign immunity, there must be statutory authority vesting a district court with subject matter jurisdiction."); *Burns Ranches, Inc. v. U.S. Dep't of Interior*, 851 F. Supp.2d 1267, 1271 (D. Or. 2011) (J. Mosman, holding "Absent a waiver of sovereign immunity, a court lacks subject matter jurisdiction over a suit against the United States.").[1]

When the waiver of sovereign immunity is to be found in the FTCA, that statute is "the exclusive remedy for tort actions against a federal agency, and this is so despite the statutory authority of any agency to sue or be sued in its own name." *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998).

The FTCA itself provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title and *the remedies provided by this title in such*

---

[1] Because subject matter jurisdiction goes to the power of a court to hear a case, a court may, at any time, raise the issue of subject matter jurisdiction *sua sponte* and must dismiss if no subject matter jurisdiction exists. Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland, Inc.*, 316 F.3d 811, 826 (9th Cir. 2002). The Court therefore must inquire into its own jurisdiction, notwithstanding the lack of a formal motion to dismiss by the agencies. By the same token, Plaintiffs' arguments concerning service on the agencies are irrelevant—if the Court lacks jurisdiction to consider a claim, it does not matter if the party in question has been properly served.

*cases shall be exclusive*." 28 U.S.C. § 2679(a) (emphasis added). "Thus, if a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name,' despite the existence of a sue-and-be-sued clause." *Meyer*, 510 U.S. at 476.

As noted in the previous section, § 1346(b) provides that federal district courts have "exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "A claim comes within this jurisdictional grant—and thus is 'cognizable' under § 1346(b)—if it is actionable under § 1346(b)." *Meyer*, 510 U.S. at 477.

Plaintiffs appear to concede that the United States is the only proper party under the FTCA. Pl. Supp. Br. 2. Nevertheless, Plaintiffs argue that their claims against the FBI and the BLM are not cognizable under the FTCA and so it is appropriate for them to sue the agencies directly. *Id.* at 2-3. In support of this proposition, Plaintiffs rely on *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994).

In *Meyer*, the plaintiff brought a *Bivens* action against the Federal Savings and Loan Insurance Corporation ("FSLIC") alleging "that his summary discharge deprived him of a property right (his right to continued employment under California law) without due process of law in violation of the Fifth Amendment." *Meyer*, 510 U.S. at 474. The Supreme Court concluded that the plaintiff's constitutional tort claim was not cognizable under § 1346(b) because federal law, rather than state law, "provides the source of liability for a claim alleging the deprivation of a federal constitutional right," and "the United States simply has not rendered itself liable under §

1346(b) for constitutional tort claims." *Id.* at 478. The Court went on to hold that the FSLIC was liable to suit under the broad "sue-and-be sued" clause of its own organic statute, which waived the agency's sovereign immunity. *Id.* at 480-83. Nevertheless, the plaintiff's claim failed because he sought to bring a constitutional tort claim against a federal agency, which would have required a substantial expansion of *Bivens* remedies. *Id.* at 483-86. The Supreme Court declined to extend *Bivens* to cover federal agencies and held that the plaintiff had no claim for damages against the agency itself. *Id.* at 486.

*Meyer* does not support Plaintiffs' position. First, the agency in *Meyer* was subject to suit because its organic statute contained a broad sue-and-be-sued clause that waived the agency's sovereign immunity. Neither FBI nor the BLM is subject to such a waiver. *See Gerritsen v. Consulado General de Mexico*, 989 F.2d 340, 343 (9th Cir. 1993) ("[T]he FBI is a federal agency and Congress has not revoked its immunity."); *Tillett v. Bureau of Land Management*, CV-15-48-BLG-SPW-CSO, CV-15-61-BLG-SPW-CSO, 2016 WL 1312014, at *8 (D. Mont. April 4, 2016) ("The United States—in this case the BLM—has not waived its sovereign immunity for actions seeking damages for constitutional violations." (citing *Holloman v. Watt*, 708 F.2d 1399, 1401-02 (9th Cir. 1983))).

Plaintiffs also bring a claim against "all" defendants, including the federal agencies, for negligence, SAC ¶¶ 361-69.[2] Such claims are cognizable under § 1346(b) and the FTCA therefore supplies the sole and exclusive remedy for such a claim pursuant to 28 U.S.C. § 2679(a).

---

[2] For the reasons discussed in the following section, Plaintiffs' claim for conspiracy, SAC ¶¶ 356-60, also fails. A third claim against the federal agency defendants alleges municipal liability under 42 U.S.C. § 1983 pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). SAC ¶¶ 345-55. This claim is otherwise subject to dismissal because the FBI and BLM are not state actors and therefore do not come within the scope of § 1983, *see, e.g., Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011), and *Bivens* does not apply to federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Plaintiffs' claim for wrongful death, SAC ¶¶ 310-25, is alleged against the United States under the FTCA and is not alleged against the FBI or the BLM.

Plaintiffs' claims against the FBI and the BLM should be dismissed.  As no amendment would remedy this defect, dismissal should be with prejudice.

### C. Wrongful Death and Negligence

Plaintiffs' first cause of action, for wrongful death, alleges that "officers, agents, and employees of the FBI, employees of the BLM, and other employees, agents or officers of the UNITED STATES, along with others, caused LaVoy Finicum's wrongful death[.]"  SAC ¶ 311. Plaintiffs' seventh cause of action, for negligence, alleges that the United States "owed a duty to the public to properly train and supervise its officers, employee and agents," and that the United States breached this duty, causing Finicum's death.  *Id.* at ¶ 362.  Plaintiffs also allege that the United States "owed a duty to LaVoy Finicum, to conduct themselves reasonably and safely so as not to harm him in the circumstances that occurred."  *Id.* at ¶ 363.  The United States moves to dismiss these claims based on the discretionary function exception to the FTCA.

As previously noted, the FTCA waiver of sovereign immunity is subject to exceptions. The discretionary function exception immunizes the federal government from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The discretionary function exception "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

> The discretion protected by § 2680(a) is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law.  Accordingly, where there is room for policy judgment and decision there is discretion.

*Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (internal quotation marks and citations omitted, alterations normalized).

"The plaintiff has the burden of showing there are genuine issues of material fact as to whether the exception should apply, but the government bears the ultimate burden of establishing that the exception applies." *Green v. United States*, 630 F.3d 1245, 1248-49 (9th Cir. 2011). "In cases in which the exception does apply, the court lacks subject matter jurisdiction over the action." *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000).

A two-step test is used to determine whether the discretionary function exception applies. *Terbrush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citing *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). In the first step, the court determines "whether challenged actions involve an element of judgment or choice." *Id.* (internal quotation marks and citation omitted). "In addition to duties prescribed by the common law of torts of the place where the act or omission occurred, federal employees must follow federal statutes, regulations, or policies that specifically prescribe a course of action for an employee to follow." *Gonzalez*, 814 F.3d at 1027 (internal quotation marks and citations omitted, alterations normalized). "Thus, where conduct violates a mandatory directive and is not the product of judgment or choice, it is not discretionary." *Id.* (internal quotation marks and citation omitted).

If the challenged actions do involve an element of judgment or choice, then the court turns to the second step, which requires the court to decide "whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy." *Terbrush*, 516 F.3d at 1130 (internal quotation marks and citations omitted).

> The focus of the second step is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but rather on the nature of the actions

taken and on whether they are susceptible to a policy analysis.  The decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis.  According to the [Supreme] Court, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations. Thus, when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

*Gonzalez*, 814 F.3d at 1027-28 (internal quotation marks and citations omitted, alterations normalized, emphasis in original).

In this case, Plaintiffs challenge the United States' "actions, practices, plans, conduct and policies," and failure to "properly train and supervise the officer, employees and agents," in the course of attempting to arrest Finicum.  SAC ¶¶ 322, 362.  More specifically, Plaintiffs challenge the agents' decision to use a vehicle stop and roadblock to take Finicum and his confederates into custody, as well as the manner in which the operation was carried out.  *Id.* at ¶¶ 203-08, 221-22.

With respect to the first prong the of analysis, the Court must examine whether the federal agents' conduct involved an element of discretion.  The Ninth Circuit has held "that the discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation, so long as the agency does not violate a mandatory directive." *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000) (citing *Sabow v. United States*, 93 F.3d 1445, 1451-54 (9th Cir. 1996)).

The Ninth Circuit has observed that "no statute or regulation . . . prescribes a course of action for the FBI and its agents to follow in the investigation of crime."  *Gonzales*, 814 F.3d at 1029.  The FBI is empowered by statute to "detect and prosecute crimes against the United States." 28 U.S.C. § 533(1).  As part of this mission, the FBI is authorized to "make arrests without warrant for any offense against the United States committed in their presence or for any felony cognizable

under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." 18 U.S.C. § 3052.  This includes damage or "depredation against any property of the United States, or of any department or agency thereof." 18 U.S.C. § 1361.

The SAC alleges that Finicum was designated as a domestic terrorist.  SAC ¶ 172.  The FBI exercises "Lead Agency responsibility in investigating all crimes for which it has primary or concurrent jurisdiction and which involve terrorist activities or acts in preparation of terrorist activities," which is defined as including "the unlawful use of force and violence against persons or property to intimidate or coerce a government, the civilian population, or any segment thereof, in furtherance of political or social objectives."  28 C.F.R. § 0.85(l).  As such, the FBI's responsibilities "include the collection, coordination, analysis, management and dissemination of intelligence and criminal information as appropriate."  *Id.*

The AGG DOM guidelines similarly provides that the FBI "has the authority to investigate all federal crimes that are not exclusively assigned to other agencies," including "determining whether a federal crime has occurred or is occurring, or if the planning or preparation for such a crime is taking place; identifying, locating, and apprehending the perpetrators; and obtaining the evidence needed for prosecution."  Taylor Decl. Ex. H, at 7.  ECF No. 110-5.  The FBI also is permitted to disseminate or share information with state and local agencies.  *Id.* at 35.  Of particular note, the AGG DOM provides that

> The conduct of investigations and other activities authorized by these Guidelines may present choices between the use of different investigative methods that are each operationally sound and effective, but that are more or less intrusive, considering such factors as the effect on privacy and civil liberties of individuals and potential damage to reputation.  The least intrusive method feasible is to be used in such situations.  *It is recognized, however, that the choice of methods is a matter of judgment.  The FBI shall not hesitate to use any lawful method consistent with these Guidelines, even if intrusive, where the degree of intrusiveness is*

Page 18 – FINDINGS & RECOMMENDATION

> *warranted* in light of the seriousness of a criminal or national security threat or the strength of information indicating its existence, or in light of the importance of foreign intelligence sought to the United States' interests.  This point is to be particularly observed in investigations relating to terrorism.

Taylor Decl. Ex. H, at 12-13 (emphasis added).

By their plain terms, these statutes, regulations, and the agency's own internal guidelines conferred broad discretion on the FBI officials in responding to the Refuge takeover and occupation and in determining when and how to arrest those involved, including Finicum.  The AGG DOM expressly provides that the choice of methods is "a matter of judgment," and that even intrusive methods may be employed if they are deemed warranted.  Taylor Decl. Ex. H, at 12-13. The Court therefore concludes that the federal agents were vested with the exercise of judgment and choice in their investigation and in planning for the arrest operation.

Having determined that the investigation of Finicum and the Refuge takeover generally, as well as the vehicle stop and roadblock operation, involved the exercise of judgment and choice on the part of federal officials, the Court turns to whether that discretion is based on considerations of public policy.  The Ninth Circuit has held that "[i]nvestigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decision about the nature and scope of a criminal investigation." *Sabow*, 93 F.3d at 1453; *see also Dupris v. McDonald*, 554 F. App'x 570, 573 (9th Cir. 2014) ("We have further noted that investigations by federal officers include the type of policy judgments protected by the discretionary function test.").  In *Mesa v. United States*, 123 F.3d 1435 (9th Cir. 1997), the Ninth Circuit held that arrest operations implicate a number of policy considerations, including weighing "the urgency of apprehending the subject in light of such factors as the potential threat the subject poses to public safety and the likelihood that the subject may destroy evidence," as well as the consideration of available resources and "how to allocate those resources among the many

investigations for which they are responsible." *Id.* at 1438.  The decision whether to effect an arrest at all is similarly rooted in policy considerations because "an erroneous decision could potentially create a serious danger to public safety," or the risk that "the person may flee and thus evade or make more difficult future capture and prosecution." *Id.* at 1438-39; *see also Dupris*, 554 F. App'x at 573 (holding that "determinations of whom to arrest and when to arrest came within the discretionary function exception").

As in *Mesa*, the Court concludes that exercise of discretion by federal officers in the present case was subject to considerations of social, economic, and political policy.  Although Plaintiffs argue that the federal officers acted based on a vindictive or discriminatory animus, such considerations are irrelevant for purposes of the discretionary function exception.  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991); *see also Arteaga-Ruiz v. United States*, 705 F. App'x 597, 598 (9th Cir. 2017) ("[O]ur task is to evaluate the nature of the challenged conduct to determine if it was of the kind that the discretionary function exception was designed to shield, regardless of whether the discretion involved be abused." (internal quotation marks and citation omitted)).

Plaintiffs' claim that the United States is liable for "negligent hiring, supervision, and retention of agents and employees," SAC ¶ 315, must also fail.  In *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000), the Ninth Circuit held that challenges to "allegedly negligent and reckless employment, supervision and training . . . fall squarely within the discretionary function exception." *Id.* at 1001.

Because the decision to investigate and arrest Finicum, including selecting the location, manner, and timing of the arrest, involved the exercise of protected discretion, the discretionary function exception applies.  The United States' employment and supervision of the federal agents in question is also covered by the discretionary function exception.  The Court therefore lacks subject matter jurisdiction and the United States' Motion to Dismiss should be granted without jurisdictional discovery.  Plaintiffs' claims against the United States for wrongful death and negligence should be dismissed without prejudice.

**D.  Section 1983 and Conspiracy Claims**

Plaintiffs' fifth claim, for § 1983 and *Monell* liability, and sixth claim, for conspiracy, are alleged against all Defendants, including the United States.  The United States argues that the Court lacks jurisdiction over Plaintiffs' fifth and sixth claims because the claims are not cognizable under § 1346(b).  According to the United States, neither claim satisfies § 1346(b)'s "law of the place" requirement.  *See* Mot. to Dismiss at 9 (arguing that claim five fails under the "law of the place requirement), 19 (same regarding claim six).  Under the "law of the place" requirement, Plaintiffs must show that Oregon law imposes tort liability upon a private person for the conduct that federal actors are alleged to have engaged in here.  *See Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992) ("[T]he FTCA directs us to look to the law of the state in which the government official committed the tort to determine the scope of sovereign immunity.  If the law of the state makes private parties liable . . . then the United States is liable for the same.").

Plaintiffs' fifth claim asserts a violation of 42 U.S.C. § 1983, a federal civil rights statute that provides a cause of action for violations of rights conferred under federal law.  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (noting that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United

States Constitution and federal statutes that it describes").  The FTCA does not waive sovereign immunity for claims alleging violations of federal rights.  *See Jachetta v. United States*, 653 F.2d 898, 904 (9th Cir. 2011) (holding that the FTCA does not provide a waiver of sovereign immunity for claims alleging violations of 42 U.S.C. §§ 1983 and 1985); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024-25 (9th Cir. 2001) (holding that the FTCA does not waive the government's sovereign immunity for claims alleging violations of 42 U.S.C. § 1986); *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA.").

Plaintiffs' sixth claim asserts that "all Defendants . . . conspired with each other and together[] to cause LaVoy Finicum's harm and ultimate death."  SAC ¶ 357.  "Conspiracy" is not a tort or "separate theory of recovery" under Oregon law.  *Granewich v. Harding*, 329 Or. 47, 53 (1999).  Instead, "conspiracy to commit or aiding and assisting in the commission of a tort are two of several ways in which a person may become jointly liable for another's tortious conduct."  *Id.*

Plaintiffs assert that their fifth and sixth claims do not rely on the FTCA for jurisdiction, but rather, they rely on the causes of action provided in § 1983 and § 1985.  Plaintiffs note that both claims reference § 1983 and they assert that the facts alleged under claim six are sufficient to state a claim under 42 U.S.C. § 1985(3).[3]  They contend that 28 U.S.C. § 1343 provides jurisdiction over these civil rights claims.  None of those statutes waives sovereign immunity.  *Jachetta*, 653 F.3d at 907-08.

In sum, Plaintiffs' fifth and sixth claims do not fall within the terms of the FTCA's sovereign immunity waiver and Plaintiffs fail to demonstrate that any other waiver of the government's sovereign immunity is applicable to these claims.  Thus, the Court lacks subject

---

[3] Plaintiffs cite "42 U.S.C. § 1985(c)."  Resp. at 23.  ECF No. 142.  There is no such provision in § 1985.  Instead, Plaintiffs' response appears to quote 42 U.S.C. § 1985(3).

matter jurisdiction over Plaintiffs' § 1983 and conspiracy claims against the United States and claims should be dismissed.

## II.      Bretzing's Motion to Dismiss

Defendant Greg Bretzing was the Special Agent in Charge of the FBI's Portland Division at the time of Finicum's death.[4]  The SAC alleges that Bretzing, along with other federal agents, "monitored and tracked Finicum's YouTube videos and related activities online."  SAC ¶ 102. Plaintiffs allege that Bretzing participated in compiling and disseminating "false and misleading information and profiles" about Finicum.  *Id.* at ¶¶ 132-36.  This included labeling Finicum and his associates as domestic terrorists.  *Id.* at ¶ 172.  The SAC alleges the Bretzing was involved in planning the January 26, 2016 vehicle stop and roadblock operation.  *Id.* at ¶¶ 202-04.  Of note, the SAC does not allege that Bretzing was present during the events leading to Finicum's death.[5] Plaintiffs allege that Bretzing was subsequently involved in efforts to cover up the events of January 26, 2016.  *Id.* at ¶ 304.

Plaintiffs assert six claims against Bretzing:  (1) a *Bivens* claim for violation of Finicum's rights under the Fourth and Fifth Amendments to the United States Constitution (Claim Two); (2) § 1983 claim for excessive force (Claim Three); (3) a § 1983 claim for deprivation (Claim Four); (4) a *Monell* claim (Claim Five); (5) conspiracy (Claim Six); and (6) negligence (Claim Seven). Bretzing moves to dismiss those claims for lack of personal jurisdiction, insufficient service of process, and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

---

[4] Bretzing retired on January 23, 2017 and is no longer employed by the FBI.  Bretzing Decl. ¶ 2, Ex. D.  ECF No. 107-5.

[5] In his Declaration, Bretzing clarifies that he was "at a command post in a middle school in Burns, Oregon at the time of the vehicle stop and roadblock operation," and "provided no on-scene supervision of the officials executing the vehicle stop and roadblock."  Bretzing Decl. ¶ 4, Ex. D.

### A.  Insufficient Service

Bretzing argues that Plaintiffs have not properly served him because he has not been personally served under federal or Oregon law.  Plaintiffs respond that Bretzing waived his challenge to service and jurisdiction by appearing and defending in this action.  Plaintiffs also argue that service was adequate under Oregon law because it was reasonably calculated to apprise Bretzing of the action and because Bretzing had actual notice of the lawsuit.

On April 26, 2018, service for the original Complaint in this action was made on the U.S. Attorney, but was not made on Bretzing personally.  ECF No. 33.  On July 19, 2018, the Court ordered Plaintiffs' counsel to file a Report of Service verifying that all defendants had been served. ECF No. 44.  Plaintiffs' Report of Service asserted that Bretzing was served but references the earlier Return of Service showing service on the U.S. Attorney, but not on Bretzing himself.  ECF No. 51.  On August 2, 2018, Plaintiffs' counsel served the First Amended Complaint on Bretzing's attorney, who was authorized to accept service on Bretzing's behalf.  *Id.* at 6.  On April 1, 2019, the Court permitted Plaintiffs to amend their complaint a second time and ordered Plaintiff "to effect appropriate service on all defendants," and noted that the Court's order did not prejudice defendants in raising arguments previously made in opposition to proposed amendment, including that Plaintiffs have not properly served with the original Complaint, and/or the First Amended Complaint, on multiple defendants.  ECF No. 88.  Despite the Court's order, Plaintiffs have not demonstrated service of the SAC on Bretzing.

### 1.  Bretzing did not waive his Rule 12(b)(2) or 12(b)(5) defenses

Under Rule 12(h)(1) of the Federal Rules of Civil Procedure, a defendant waives any personal jurisdiction defense the defendant might otherwise have if he or she does not raise it in a responsive pleading or in a motion to dismiss that precedes the responsive pleading.  Here,

Bretzing raised his personal jurisdiction defense in this motion to dismiss and did not waive the defense by entering a notice of appearance before filing the motion.  *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (under Rule 12, waiver occurs if a defendant fails to challenge the defect in a preliminary motion, or responsive pleading); *Pac. Lanes, Inc. v. Bowling Proprietors Ass'n of Am.*, 248 F. Supp. 347, 348 (D. Or. 1965) ("It is now generally held that Rule 12 abolished, for the federal courts, the common law distinction between general and special appearances, and that a defendant is not required to specially appear in order to attack the court's jurisdiction over his person.").

And although a court can find that a defendant has waived a personal jurisdiction defense, even if the defendant satisfies the "minimum steps" to preserve a defense specified in Rule 12(h)(1), Bretzing's conduct in this case does not amount to "deliberate, strategic behavior" or "sandbagging" designed to seek affirmative relief from the court.  *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1318 (9th Cir. 1998).  Plaintiffs contend that Bretzing, "through counsel, has consistently appeared at each hearing" in this case, "argued at each hearing, filed motions and substantively participated beyond simply challenging jurisdiction."  Resp. at 15.  However, Bretzing's counsel, Ms. Taylor, represents both the United States and Bretzing in this action.  A review of the record demonstrates that Bretzing has not participated in this case beyond challenging jurisdiction.  To date, Bretzing has filed three motions in this action—two motions for an extension of time to respond to the complaint and this motion to dismiss.  ECF Nos. 25, 56, 107.  In each, Bretzing asserted that he has not been personally served.  Although Ms. Taylor appeared for Bretzing at each hearing in this case, the only issues she raised on his behalf were related to service issues.  The rest of her participation in those hearings involved representing the

federal government's general position on issues related to the unrepresented individual federal defendants and arguing for the United States to oppose Plaintiffs' motion for leave to amend.

### 2.   Service did not comply with Rule 4

Rule 4(i) of the Federal Rules of Civil Procedure governs service of process on United States officers and employees.  To serve an "[o]fficer or employee [of the United States] sued in an individual capacity . . ., a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)."  Fed. R. Civ. P. 4(i)(3).  Plaintiffs contend that they served Bretzing under Rule 4(e)(1) by using methods permitted under Oregon law.

Rule 7 of the Oregon Rules of Civil Procedure ("ORCP") governs service of process.  In *Baker v. Foy*, 310 Or. 221, 228-29 (1990), the Oregon Supreme Court articulated a two-part test for determining the adequacy of service under ORCP 7.  First, courts must decide whether service was presumptively adequate.  *Id*. at 228.  If it was not, then courts must determine whether the method of service is otherwise adequate, because it meets the "reasonable notice" standard in ORCP 7D(1).  *Id*. at 229.

Plaintiffs assert that they personally served Bretzing by mailing summons and the Amended Complaint by First Class and Certified United States Mail to the US Attorney's Office in Portland on April 26, 2018 and to Bretzing's counsel on August 2, 2018.

Plaintiffs' April 2018 mailing was not adequate under ORCP 7.  Under the first step of the *Baker* test, the mailing cannot be presumed to be adequate because it was not sent to Bretzing or a person authorized to accept service on this behalf.  *See* ORCP 7D(3)(a)(i) (providing that presumptively adequate service by mail must be to the defendant or other person authorized to receive service for the defendant).  Turning to the second step of the *Baker* test, the mailing does not satisfy the "reasonable notice" standard because it was made by unrestricted delivery.  *See*

F&R at 10-11, ECF No. 130, *adopted by* Opinion and Order ECF No. 139, ("Service by mail on an individual must be by restricted delivery—only the person being served can either accept or refuse the mailing—to satisfy the reasonable notice standard of ORCP 7 D(1).") (citing *Davis Wright Tremaine, LLP v. Menken*, 181 Or. App. 332, 339 (2002)).

By contrast, Plaintiffs did send their August 2018 mailing to an "other person authorized to receive service" for Bretzing, as required by ORCP 7D(3)(a)(i). However, that rule also requires that the "other person authorized to receive service signs a receipt" for the mailing and provides that service shall be complete on the date on which defendant's authorized agent signs a receipt for the mailing. ORCP 7D(3)(a)(i). Here, Plaintiffs did not file a return of service for the August 2018 mailing, and the record does not otherwise indicate when Ms. Taylor signed a receipt, if at all. Accordingly, this Court cannot conclude that Plaintiffs completed service using a presumptively valid method. And, like Plaintiffs' April 2018 mailing, this later mailing was unrestricted delivery, so it does not satisfy the "reasonable notice" standard.

Even assuming Ms. Taylor signed for the August 2018 mailing and, thus, service was presumptively valid under ORCP 7 D, service was untimely under FRCP 4(m) because Plaintiffs *mailed* summons and the Amended Complaint 101 days after filing the Amended Complaint and over six months after filing the Complaint. Plaintiffs also failed to prove service as required by FRCP 4(l).

Plaintiffs assert that they served Bretzing "on April 30, 2019 when Bretzing's counsel of record was served a copy of the Second Amended Complaint by electronic filing and service." Resp. at 14. ECF No. 144. That attempt fails to comply with FRCP 4 and ORCP 7, both of which require service of *summons*, not merely the complaint. Both rules also require proof of service, and Plaintiffs did not file a return of service for this attempt.

Page 27 – FINDINGS & RECOMMENDATION

Finally, Plaintiffs contend that ORCP 7G bars Bretzing's challenge because Bretzing had actual notice of this action.  The Court rejected that argument in its earlier decision on Astarita's Motion to Dismiss, and the Court's reasoning applies with equal force here.  *See* F&R  at 11 (observing that adequate service is a prerequisite to the application of ORCP 7G), 11 n. 4 (observing that, under ORCP 7G, "actual notice relieves defects in service, but only those related to 'the form . . ., issuance of . . ., and person who may serve summons.'") ECF No. 130; *Johnston v. ADT LLC*, Case No. 3:15-cv-01396-SI, 2015 WL 7722415, at * 4 (D. Or. Nov. 30, 2015) ("Oregon courts have repeatedly stated that actual notice is, in itself, insufficient to excuse defects in the manner of service.").

### 3.   Dismissal for Failure to Serve is Appropriate

Having concluded that Plaintiffs have not served Bretzing properly, the Court must exercise its discretion to decide whether to dismiss Bretzing or to quash service and grant Plaintiffs an opportunity to serve him.  *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976); *see generally* 5 Wright & Miller, *Federal Practice and Procedure*, § 1354, at 584-87 (1969). "Service will ordinarily be quashed and the action preserved where 'there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly.'"  *Roller*, 2018 WL 2946395, at *2 (quoting *Bravo v. Cty. of San Diego*, No. C 12-06460 JSP, 2014 WL 555195, at * 1 (N.D. Cal. Feb. 10, 2014) (citing Wright & Miller, § 1354)).  "The district court also has the discretion, upon a showing of 'good cause' to extend the time for service outside of the 90-day period provided for in Rule 4."  *Id.* (citing Fed. R. Civ. P. 4(m)); *see also* Fed. R. Civ. P. 4(l)(3) (providing that failure to prove service does not affect validity of service, and the court may permit proof of service to be amended).

Plaintiffs filed this action over two years ago, yet they have failed to serve Bretzing, despite repeated assertions from multiple Defendants challenging service and several extensions of time from this Court, including permission to serve Defendants with the Second Amended Complaint as if it were the original complaint.  Under these circumstances, this Court cannot say that there is a reasonable prospect that Plaintiffs will ultimately be able to serve Bretzing properly or that Plaintiffs have shown good cause for their failure to do so.[6]  Accordingly, the Court should exercise its discretion to dismiss Bretzing.  Even if service on Bretzing were deemed to be successful, Bretzing should still be dismissed for the reasons set forth in the following sections.

### B.  State Law Claim(s)

Plaintiffs' seventh claim, for negligence, is brought under Oregon state law.  Bretzing moves to dismiss this claim pursuant to the Westfall Act.  Bretzing also moves to dismiss Plaintiffs' sixth claim, for conspiracy, on the same basis, to the extent that claim also arises under state law.

> The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties.  *See* 28 U.S.C. § 2679(b)(1).  When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(1), (2).  Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act (FTCA), 60 Stat. 842.

*Osborn v. Haley*, 549 U.S. 225, 229-230 (2007).

---

[6]  Plaintiffs' Response to Bretzing's insufficient service argument did not provide any reason for Plaintiffs' failure to comply with FRCP 4 or ORCP 7, other than Plaintiffs' contention that their attempts at service did satisfy the requirements of those rules.

In this case, the Attorney General's delegate has certified that Bretzing "was acting within the scope of his federal office or employment at the time of the incidents out of which Plaintiffs' state tort claims (including conspiracy and negligence) arose."  C. Salvatore D'Alessio, Jr. Scope Certification for Greg T. Bretzing.   ECF No. 107-10.   Plaintiffs have not challenged the certification, nor have they responded to Bretzing's arguments concerning the Westfall Act. Bretzing's motion to dismiss should therefore be granted with respect to Plaintiffs' state law claims and those claims should be dismissed as to Bretzing.   The United States should be substituted as the defendant in place of Bretzing.  Following substitution, these claims are governed by the FTCA and should be resolved in favor of the United States for the reasons discussed in the previous section.[7]

### C.  Section 1983

Plaintiffs bring claims for excessive force, conspiracy, deprivation, and municipal liability against Bretzing pursuant to 42 U.S.C. § 1983.[8]  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

As a preliminary matter, Bretzing is not a municipality and so Plaintiffs' *Monell* claim for municipal liability under § 1983, SAC ¶¶ 345-55, should be dismissed.

---

[7] Plaintiffs' claims for negligence and conspiracy were already alleged against the United States.  SAC ¶¶ 356-60 (conspiracy alleged "Against All Defendants), ¶¶ 361-69 (negligence alleged "Against All Defendants").

[8] In their briefing, Plaintiffs suggest that the claim for conspiracy is brought pursuant to 42 U.S.C. § 1985.  This is contrary to the allegations of the SAC, which present the claim as arising under "*Bivens*, 42 U.S.C. § 1983, color of state law, and relevant state common law and statutory authority."  SAC ¶ 357.  Pl. Resp. 12.  ECF No. 144.  For purposes of this motion, the Court treats Plaintiffs' claim against Bretzing as it is pleaded in the SAC.  In the following section, in response to the State Defendants' Motion to Dismiss, the Court addresses the deficiencies of the conspiracy claim in the context of § 1985.

The Court next turns to the question of whether Bretzing acted under color of state law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (internal quotation marks and citation omitted). Because § 1983 deals with deprivations of rights accomplished under color of state law, the "actions of the Federal Government and its officers are at least facially exempt from its proscriptions." *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973). "[F]ederal officials can only be liable under section 1983 where there is a sufficiently close nexus between the State and the challenged action of the federal actors so that the action of the latter may be fairly treated as that of the State itself." *Ibrahim v. Dept. of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2008) (internal quotation marks and citation omitted, alternations normalized). This rule applies even when "federal officials recruit local police to help enforce federal law." *Id.*; *see also West v. City of Mesa*, 708 F. App'x 288, 292 (9th Cir. 2017) (holding that where the plaintiff alleged that the defendant was the "lead FBI investigator," the allegation supported the conclusion the defendant was acting under federal, rather than state law).

In this case, Plaintiffs allege that "[a]t all material times," Bretzing "was an agent of the United States Federal Bureau of Investigation acting under the color of law, and within the scope of his employment." SAC ¶ 40. The SAC alleges that Bretzing was part of a "rogue faction of government agents," targeting Finicum for an earlier incident in Nevada. *See, e.g.,* SAC ¶ 105. The SAC alleges that Finicum traveled to Oregon and joined in seizing and occupying a federal facility. *Id.* at ¶¶ 139, 153, 156. Plaintiffs have alleged that the vehicle stop and roadblock operation was "adopted in significant part by the FBI," and only "aided and assisted" by state and local law enforcement. *Id.* at ¶ 195. Indeed, the SAC alleges that Brown, Ward, and Grasty "had

been specifically advised and informed that no state laws had been broken by the protests and occupation of the Malheur National Wildlife Refuge." *Id.* at ¶ 211. An indictment was eventually brought against several of Finicum's associates concerning the occupation of the Refuge, charging them with federal crimes. Taylor Decl. Ex. B (Superseding Indictment in *United States v. Bundy et al.*, 3:16-CR-00051-BR).

Even read in the light most favorable to Plaintiffs, it is clear from the allegations of the SAC that Bretzing acted under color of federal, rather than state law. Consistent with *Ibrahim*, the fact that Bretzing and the federal authorities recruited state and local law enforcement agencies to assist with the enforcement of federal law does not transform Bretzing's acts into ones taken under color of state law. As Plaintiffs have failed to properly allege that Bretzing acted under color of state law, their § 1983 claims should be dismissed and it is not necessary for the Court to reach the question of qualified immunity.

### D. *Bivens* Claim

Plaintiffs' second claim, for violation of rights by a federal agent under the implied cause of action established in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), is alleged against "all Federal Agents, Employees, and Officers." SAC ¶¶ 326-30. As relevant to Bretzing, the second claim alleges that he "violated LaVoy Finicum's Fifth Amendment Due Process rights (e.g., false statements, conspiracy, misconduct, labeling as domestic terrorist, false attribution of threats, etc.)." *Id.* at ¶ 327.[9] Bretzing moves to dismiss these claims on the basis that they would entail an impermissible expansion of the *Bivens* doctrine.

---

[9] Additional allegations listed as part of the *Bivens* claim include excessive force, illegal seizure, battery, and the use of deadly force, but the SAC does not allege that Bretzing was present for the vehicle stop-roadblock operation or that he personally used any force against Finicum. SAC ¶¶ 327-29.

In *Bivens*, the Supreme Court held that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, ___U.S.___, 137 S. Ct. 1843, 1854 (2017) (summarizing *Bivens*, 403 U.S. at 397). In the years following *Bivens*, the Supreme Court recognized an implied cause of action in two other cases involving constitutional violations. In *Davis v. Passman*, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman, which led the Court to hold that the Fifth Amendment Due Process Clause afforded a damages remedy for gender discrimination. *Id.* at 248-49. The following year, the Court issued *Carlson v. Green*, 446 U.S. 14 (1980), in which it held that the Eighth Amendment Cruel and Unusual Punishments Clause provided a damages remedy for failure to provide adequate medical treatment to a prisoner. *Id.* at 19. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855.

In the immediate aftermath of *Bivens*, "there was a possibility that the Court would keep expanding *Bivens* until it became the substantial equivalent of 42 U.S.C. § 1983." *Abbasi*, 137 S. Ct. at 1855 (internal quotation marks and citations omitted). The Supreme Court ultimately "adopted a far more cautious course before finding implied causes of action," however, noting that "where Congress intends private litigants to have a cause of action, the far better course is for Congress to confer that remedy in explicit terms." *Id.* (internal quotation marks and citations omitted). In keeping with that cautious approach, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants" and "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857 (internal quotation marks and citations omitted).

When a plaintiff asserts a *Bivens* claim, district courts must apply a two-part test.  *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018).  The court first considers whether the claim is "different in a meaningful way" and arises in a new context from previously recognized *Bivens* claims.  *Abbasi*, 137 S. Ct. at 1859-60.  A claim might be meaningfully different due to the rank of government officials involved, the constitutional right at issue, the "extent of judicial guidance" regarding the alleged misconduct, the "risk of disruptive intrusion by the Judiciary," and the presence of other factors "previous *Bivens* cases did not consider."  *Id.*  The inquiry into whether a context is new is broad.  *Hernandez v. Mesa*, ___U.S.___ 140 S. Ct. 735, 743 (2020).  "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Id.*

If the claim arises in a new context, the court must then consider whether "special factors counselling hesitation" weigh against expanding *Bivens* "in the absence of affirmative action by Congress."  *Abbasi*, 137 S. Ct. at 1857 (citation omitted).  These factors include whether the claim implicates questions of policy or requires an intrusion into the deliberative policymaking process and whether other alternatives are available to vindicate the alleged right.  *Id.* at 1861.  "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id.* at 1858.

"Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies."  *Vega*, 881 F.3d at 1154 (internal quotation marks omitted).  The fact that potential alternative claims fail does not mean that a plaintiff "did not have access to alternative or meaningful remedies."  *Id.* at 1155.  "It simply means that [the plaintiff] did not plead, or ultimately have, a meritorious claim."  *Id.*  "Furthermore, no court has held that the

plaintiff's lack of success due to inadequate pleading while pursuing alternative remedies provides a basis for *Bivens* relief." *Id.*

In this case, Plaintiffs' claims against Bretzing fall outside the three recognized remedies under *Bivens*, *Davis*, and *Carlson* and must therefore be regarded as a "new context" for a *Bivens* claim. Although Plaintiffs point to a series of cases from the Seventh Circuit for the proposition that their claim is analogous to existing *Bivens* actions, these cases fail to provide even persuasive authority: "It is immaterial whether this [District] Court, the Ninth Circuit Court of Appeals, or other district and appellate courts have recognized a particular *Bivens* claim; the Supreme Court has stated that '[t]he proper test for determining whether a case presents a new *Bivens* context is as follows: If the case is different in a meaningful way from previous *Bivens* cases *decided by [the Supreme] Court*, then the context is new." *Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2019 WL 5653444, at *3 (D. Ariz. Oct. 31, 2019) (quoting *Abbasi*, 137 S. Ct. at 1859) (emphasis in *Smith v. Shartle*). As Plaintiffs' claims fall outside of *Bivens*, *Davis*, and *Carlson*, they constitute a new context.

Turing to the second prong of the inquiry, the Court concludes that special factors counsel against the expansion of *Bivens* into new contexts. First, Bretzing held a supervisory role in the FBI's Portland office and Plaintiffs attempt to hold him liable, at least in part, for the acts of his subordinates. This has been expressly foreclosed by the Supreme Court. *Abbasi*, 137 S. Ct. at 1860 ("*Bivens* is not designed to hold officers responsible for the acts of their subordinates."). Plaintiffs' claims against Bretzing also implicate questions of executive policy, particularly those claims concerning the planning of law enforcement operations, the dissemination of information about Finicum to state and local agencies, and the allegation that Finicum was labeled as a domestic terrorist. In *Abbasi*, the Supreme Court noted that when "the discovery and litigation

process would either border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question," a new *Bivens* claim would "interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.* at 1860-61. "A *Bivens* action is not a proper vehicle for altering an entity's policy." *Id.* at 1860 (internal quotation marks and citation omitted). The Court concludes that these factors weigh against the creation of a new *Bivens* remedy. If a cause of action is to be created for claims like those alleged in this case, it must come from Congress, rather than the judiciary.

On this record and giving special consideration to the Supreme Court's admonition that the creation of new *Bivens* remedies is disfavored, the Court should decline to extend *Bivens* to cover Plaintiffs' claims against Bretzing. For the forgoing reasons, Bretzing's motion to dismiss should be granted.

## LEGAL STANDARDS—STATE DEFENDANTS

### I.       Federal Rule of Civil Procedure 15—Relation Back

In federal cases, relation back is generally governed by Federal Rule of Civil Procedure 15(c). However, when "the limitations period derives from state law, Rule 15(c)(1) requires [courts] to consider both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014) (citation omitted).

### II.      Federal Rule of Civil Procedure 12(b)(6) – Failure to State a Claim

As previously stated, to survive a motion to dismiss under federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v.Iqbal*, at. 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id*.

## DISCUSSION—STATE DEFENDANTS

The State Defendants (1) move to dismiss the claims against Hampton, Trooper 1, and Trooper 2 as untimely; (2) move to dismiss the claim for excessive force as to Governor Brown for failure to state a claim; (3) move to dismiss Plaintiffs' *Monell* claim as to all State Defendants for failure to state a claim; (4) move to dismiss the conspiracy claim as to all State Defendants for failure to state a claim; or (5) in the alternative, move to make Plaintiffs' conspiracy claim more definite and certain; and (6) move to dismiss the excessive force claim and common law tort claims brought by all Plaintiffs except Jeanette Finicum in her capacity as personal representative for the estate of Finicum.

### I.      Timeliness and Relation Back

Plaintiffs' claims against the State Defendants are for (1) excessive force (Claim Three), SAC ¶¶ 331-38, (2) deprivation (Claim Four), SAC ¶¶ 339-44, (3) *Monell* liability (Claim Five), SAC ¶¶ 345-55, and (4) conspiracy (Claim Six), SAC ¶¶ 356-60, and are brought under 42 U.S.C. § 1983.[10]  Plaintiffs' seventh claim, for negligence, and eight claim, for assault and battery, are brought under Oregon state law.

A claim under § 1983 borrows the state statute of limitations for personal injury tort claims. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002).  For Oregon, the appropriate statute of

---

[10] The precise basis for Plaintiffs' conspiracy claim is unclear, as discussed in the following sections.  In the interests of full consideration, the Court will include it among Plaintiffs' § 1983 claims.

limitations is found in ORS 12.110, which provides that, except in cases of fraud or deceit, the action must be commenced within two years of the date of injury. *Id.* at 1139; ORS 12.110(1). Plaintiff's seventh and eighth claims for common law torts under the Oregon Tort Claim Act ("OTCA") are subject to the two-year limitations period set forth in ORS 30.275(9).

The original Complaint was filed one day before the two-year limitations period expired and named 100 John Doe defendants. ECF No. 1. The operative SAC was filed on April 30, 2019, and identifies Trooper 1, Trooper 2, and Travis Hampton as Defendants for the first time. The State Defendants argue that the SAC does not relate back to the original Complaint and so the claims against Trooper 1, Trooper 2, and Hampton are untimely.[11]

As mentioned, "Rule 15(c)(1) requires [courts] to consider both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Butler*, 766 F.3d at 1201 (citation omitted). As explained below, the Court concludes that the relevant amendments *do* relate back under Oregon law. Therefore, the Court will not consider whether relation back is permitted under the federal standard.

As a preliminary matter, Plaintiffs contend that their amendment to name Trooper 1, Trooper 2, and Hampton should be deemed timely because under ORCP 20H:

> When a party is ignorant of the name of an opposing party and so alleges in a pleading, the opposing party may be designated by any name, and when such party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.

Ore. R. Civ. P. 20H.

However, "Rule 20 H does not state whether the amendment of the complaint, by substituting a party's true name for a fictitious name, relates the amendment back to the date of the original pleading." *Korbe v. Hilton Hotels Corp.*, Civil No. 08-1309-PK, 2009 WL 723348,

---

[11] See the Court's earlier discussion at ECF No. 88.

at *2 (D. Or. Mar. 13, 2009).[12]  As in *Korbe*, the question before the Court is not whether the use of Doe defendants is permissible, but whether subsequent amendment to name Doe defendants relates back to an earlier pleading.  Relation back under Oregon law is governed by ORCP 23C, which provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment.

Ore. R. Civ. P. 23C.

Oregon courts have divided ORCP 23C motions into cases of "misnomer" and "misidentification," depending on which type of mistake the plaintiff has made.  *Worthington v. Estate of Davis*, 250 Or. App. 755, 760 (2012).  "Misnomer" cases are those in which the plaintiff "chooses the correct defendant and simply misnames it."  *Id.* at 672.  In cases of "misnomer," amendments relate back if the requirements in the first sentence of ORCP 23C are satisfied.  *Id.* "Misidentification", by contrast, "occurs when the plaintiff mistakenly sues a person or entity other than the one whose conduct allegedly harmed the plaintiff."  *Id.* at 761.  A case of misidentification can only relate back if it satisfies all requirements in ORCP 23C, including the more stringent requirements of the second sentence.  *Id.*

---

[12] In *Strong v. City of Eugene*, No. 6:14-cv-01709-AA, 2015 WL 2401395 (D. Or. May 19, 2015), Judge Aiken similarly rejected the plaintiff's argument concerning timeliness based on the use of Doe defendants: "Plaintiffs also argue that their claims are timely because '"John Doe' pleading is explicitly allowed under Oregon law.' Pls. Reply to Mot. Am. 4 (citing Or. R. Civ. P. 20H).  However, it is well-established 'that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" *Id.* at *1 n.2 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

Oregon state courts have not decided whether the naming of a "John Doe" defendant qualifies as a misnomer or a misidentification.[13]  *See Hagen*, 2014 WL 6893708, at *7 (so noting). Many courts in this District have concluded that a plaintiff's decision to name Doe defendants was a misidentification subject to the full requirements of ORCP 23C.  *See id.*; *Manns v. Lincoln Cnty.*, No. 6:17-cv-01120-MK, 2018 WL 7078672, at *6 (D. Or. Dec. 12, 2018); *Strong v. City of Eugene*, No. 6:14-cv-01709-AA, 2015 WL 2401395, at *5 (D. Or. May 19, 2015).   However, those decisions provided little analysis to support the conclusion and did not apply the context specific test that Oregon state courts use to determine whether a "misnomer" has occurred:  "If considering all the allegations of the original complaint and the summons, an entity could 'reasonably identify itself as the entity intended to be sued,' a 'misnomer' has occurred[.]"  *Worthington*, 250 Or. App. at 762 (quoting *Harmon v. Fred Meyer*, 146 Or. App. 295, 300 (1997)); *Vergara v. Patel*, 305 Or. App. 288, 295–98 (2020) (applying test from *Harmon* to conclude that the amendment at issue corrected a misnomer).[14]

In the one decision from this District where the Court applied this test, *Korbe*, the court reached the opposite conclusion and found that the case was one of misnomer because had the defendant "been served with the original complaint, he would have understood that he was the intended defendant, notwithstanding the fact that the complaint identified him as John Doe."

---

[13] Plaintiffs urge the Court to certify the question of whether the naming of a John Doe defendant is a misnomer or misidentification to the Oregon Supreme Court, but this motion is not properly before the Court and so the Court declines to address it.  In the first instance, Plaintiffs have included this motion as part of their responsive brief, which is forbidden by the Local Rules of this District.  LR 7(b) ("Motions may not be combined with any response, reply, or other pleading.").  If Plaintiffs wish to have this question certified, they must follow the procedures laid out in LR 83-15.

[14] In *Manns v. Lincoln County*, No. 6:17-cv-01120-MK, 2018 WL 7078672 (D. Or. Dec. 12, 2018), the court arguably recognized that the misnomer/misidentification distinction is context-specific under Oregon law and arguably applied the *Harmon* test by distinguishing the circumstances in that case from those in *Korbe v. Hilton Hotels Corp.*, No. 08-1309-PK, 2009 WL 723348, at *2 (D. Or. Mar. 13, 2009), which, as discussed below, is the only decision from this district where the court expressly applied the test to a relation back issue involving Doe defendants.

*Korbe*, 2009 WL 723348, at *2, *7.  The court reasoned that the circumstances satisfied Oregon's

test for a "misnomer" because (1) plaintiff "did not name an existing entity as the wrong defendant"

but instead, "named a fictitious entity[;]" (2) "the original complaint included a description

sufficient to inform [the renamed defendant] that he was the proper defendant[;] and (3) timely

served the proper defendant with the amended complaint.  *Id.* at *7 (analyzing to *Harmon*,

*Johnson v. Manders*, 127 Or. App. 147 (1994), and *Mitchell v. The Timbers*, 163 Or. App. 312

(1999), in which Oregon state courts concluded amendments involved misnomer, and

distinguishing *Richlick v. Relco Equip., Inc.*, 120 Or. App. 81, 85 (1993), and *Herman Valley Ins.*

*Co.*, 145 Or. App. 124, 129 (1996), in which Oregon state courts concluded amendments involved

misidentification).

The circumstances in this case are sufficiently similar to *Korbe* that the Court concludes

that the amendments at issue corrected a "misnomer" under Oregon law.  Here, as in *Korbe* and

*Mitchell*, Plaintiffs named fictitious entities.  Additionally, Trooper 1, Trooper 2, and Hampton do

not contest service.  In fact, they waived service of summons and the SAC on July 12, 2019.  ECF

No. 91.  Finally, the original Complaint alleges as follows:

> 3.  On January 26, 2016,… decedent Robert LaVoy Finicum was fatally shot three
> times *in the back* by one or more militarized officers of the Oregon State Police
> and/or the FBI.
>
>         *         *         *
>
> 17. …LaVoy Finicum suffered the unprovoked imposition of excessive and illegal
> police force when … multiple lethal shots were fired at him by the Oregon State
> Police, the FBI and…Astarita…."
>
>         *         *         *
>
> 42.  …Defendants John Does were agents of the United States or the State of
> Oregon… are sued under fictitious names….
>
>         *         *         *
>
> 156.   As Lavoy turned from officers in the trees, he was shot from behind, in the
> back, three times with lethal rounds. These shots came from OSP and/or FBI
> officers (including John Doe defendants).
>
>         *         *         *

161.  Investigators with the Deschutes County Sheriff's Office, assigned to process the scene of the shooting, were accounting for the known sets of shots fired by OSP officers during the event (the shots that apparently killed LaVoy)….

Compl. (emphasis in original). ECF No. 1.

While Plaintiffs have made their allegations regarding the Doe defendants as inclusive as possible in an effort to cast a wide net to include the FBI and Astarita, those allegations described the OSP officers with enough specificity to reasonably inform Trooper 1, Trooper 2, and Hampton that they were the proper defendants.  Because this case involves a "misnomer," ORCP 23C permits relation back if the requirements of the first sentence are met.  Here, there is no question that the claims against Trooper 1, Trooper 2, and Hampton "arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]"  ORCP 23C.  Accordingly, the claims relate back under Oregon state law standards, are not time-barred, and should not be dismissed.

## II.    Plaintiffs' Excessive Force Claim Against Governor Brown

The State Defendants move to dismiss Plaintiffs' Fourth Amendment excessive force claim as to Governor Brown.  There is no allegation that Governor Brown was present during the stop or the encounter at the roadblock or that she directly participated in the use of force against Finicum.  The State Defendants contend that Governor Brown was not an integral participant in the use of force and so cannot be held liable under § 1983.

Plaintiffs contend that Governor Brown was involved in the planning of the roadblock and that all an excessive force plaintiff is required to show is that the defendants "conduct caused some harm to plaintiff."  Pl. Resp. at 22.  In support of this contention, Plaintiffs rely on *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2471 (2015).  In *Kingsley*, the Supreme Court's decision was focused on whether a use of force was "excessive" should be judged according to a

subjective or objective standard. *Id.* at 2472. The case is entirely inapposite to the question before this Court. Furthermore, the section of *Kingsley* quoted by Plaintiffs is not part of the Supreme Court's holding at all. Rather, the Court was quoting from the jury instructions used by the district court, which the Supreme Court ultimately found to be erroneous. *Id.* at 2471, 2476-77.

For police officers, liability in cases of excessive force are predicated on the officer's "integral participation" in the alleged violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation. But it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id.* (internal quotation marks and citation omitted). In *Blankenhorn*, the Ninth Circuit held that the officer who ordered the use of hobble restraints on the plaintiff and two officers who tackled the plaintiff had "participated in an integral way" in the application of the restraints, but that officers who arrived after the arrest, or who "at most provided crowd control," were not integral participants. *Id.* "[T]he 'integral participant' doctrine does not implicate government agents who are 'mere bystanders'" to a violation. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011).

In this case, Plaintiffs contend that Governor Brown was the "proximate cause" of the allegedly excessive use of force because she disseminated information about Finicum in an effort to "control the narrative,"; ignored advice about how to "handle the refuge protests"; and authorized the January 26 police operation and the OSP participation in the operation. The Court concludes that this attenuated conduct falls well below the standard required for "integral participation" in a § 1983 excessive force claim. The excessive force claim against Governor Brown should therefore be dismissed for failure to state a claim.

### III.    *Monell* Liability Against Oregon State Police

The State Defendants move to dismiss Plaintiffs' § 1983 claims for municipal liability on the basis that none of the State Defendants are subject to *Monell* liability. Plaintiffs concede that their *Monell* claims should be dismissed as to all State Defendants except for the Oregon State Police. Pls. Resp. at 22-23. ECF No. 140. Plaintiffs do not clearly articulate a reason why OSP should be subject to *Monell* liability.

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities are subject to liability under § 1983. *Id.* at 701. In *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court held that the Eleventh Amendment protects both states and "governmental entities that are considered 'arms of the State'" from liability under § 1983, notwithstanding the holding of *Monell*. *Id.* at 70-71. In this case, OSP is clearly an Oregon state agency. *See* ORS 181A.015 (establishing OSP); *Wright v. Oregon*, No. Civ.01-1422-BR, 2002 WL 31474178, at *5-6 (D. Or. Feb. 20, 2002) (Oregon State Police protected by Eleventh Amendment immunity). There is no basis for reaching a contrary conclusion in the present case. Plaintiffs' *Monell* liability claims should therefore be dismissed as to all State Defendants.

### IV.    Conspiracy

The State Defendants move to either dismiss Plaintiffs' claim for conspiracy for failure to state a claim under 42 U.S.C. § 1985(3) or, in the alternative, move to make the claim more definite and certain pursuant to Rule 12(e). A party may move for a more definite statement of a pleading to which a responsive pleading is allowed "but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must "point out the defects complained of and the details desired." *Id.*

As previously noted, Plaintiffs' conspiracy claim is not alleged under § 1985, but instead under "*Bivens*, 42 U.S.C. § 1983, color of state law, and relevant state common law and statutory authority." SAC ¶ 357. Nevertheless, the Court will consider the claim under § 1985, as both Plaintiffs and the State Defendants have had a full and fair opportunity to litigate the issue.

The Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), was enacted to protect individuals from conspiracies to deprive them of their legally protected rights. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To state a claim under § 1985(3), a plaintiff must allege (1) a conspiracy; (2) for purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States. *Id.*

For the second element, "in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." *Sever*, 978 F.2d at 1536 (internal quotation marks and citation omitted). Within the Ninth Circuit, § 1985(3) "is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Id.* (internal quotation marks and citation omitted). More specifically, this requires "either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny, or that Congress has indicated through legislation that the class required special protection." *Id.* (internal quotation marks and citation omitted).

In the present case, there is no clear allegation of Finicum's membership in a class that has been found to require special federal assistance in protecting their civil rights. Plaintiffs point to

Finicum's religion, but the contention that the alleged conspiracy against Finicum was motivated by his religious affiliation is not readily apparent on the face of the SAC. Plaintiffs also point to Finicum's political beliefs as follower of Cliven Bundy, but there is no support for the contention that those beliefs constituted membership in the sort of class entitled to the protection of § 1985(3). The Court concludes that Plaintiffs have failed to state a claim for conspiracy under § 1985(3), but as discussed below, Plaintiffs should be permitted to amend their pleadings to more clearly state their claim.

In their Response, Plaintiffs contend that their conspiracy claim is not solely derived from § 1985(3), but is also derived from § 1985(2), based on a claim that the events of January 26, 2016, were an attempt to prevent Finicum from participating in some future judicial proceeding, or § 1983 based on alleged violations of Finicum's Fourth, Fifth, and Fourteenth Amendment rights. Plaintiffs complain that the State Defendants "are trying to impermissibly cabin Plaintiffs' conspiracy claim to only § 1985(3)." Pls. Resp. at 23-24. Far from being an attempt to cabin Plaintiffs' claim (or claims), however, the Court understands the State Defendants' motion as a good faith attempt to understand the frequently vague claims being made against them in the voluminous and rambling SAC.[15]

Plaintiffs also assert that there were, in fact, two conspiracies aimed at Finicum. As the State Defendants point out, however, these conspiracies are not clearly and separately described in the SAC. The State Defendants are entitled to understand the nature of the claims being made

---

[15] As previously noted, Oregon recognizes a theory of civil conspiracy. Where several individuals conspire to commit a tort, they may all be held liable for the tort even if one or more of the individuals did not commit all of the requisite acts comprising the tort. *Morasch v. Hood*, 232 Or. App. 392, 402 (2009). Civil conspiracy is not a separate cause of action or ground for recovery, however, but is instead a theory under which tortfeasors may be held liable under a substantive cause of action. *Id.*; *Granewich v. Harding*, 329 Or. 47, 53 (1999) ("[N]either 'conspiracy,' nor 'aid and assist' is a separate theory of recovery."). As noted, Plaintiffs' conspiracy claim is far from clear. To the extent Plaintiffs may have sought to rely on a state law claim for civil conspiracy, the claim should be dismissed because it is not a separate cause of action.

against them and so their motion should be granted.  Plaintiffs' claim for conspiracy should be dismissed with leave to amend so that Plaintiffs can more clearly state their conspiracy claim as to the State Defendants.

### V.    Personal Representative is the Only Proper Party

Plaintiff D. Jeanette Finicum is the personal representative of Finicum's estate and brings this action in her capacity as personal representative of the estate.  SAC ¶ 33.  Mrs. Finicum and the other Plaintiffs also bring this action in their capacity as the heirs and surviving family of Finicum.  *Id.* at ¶¶ 31-32.  The State Defendants contend that the Fourth Amendment claim for excessive force and the state law claims are personal to Finicum and can therefore only be maintained by the personal representative of his estate.  The State Defendants move to dismiss those claims insofar as they are brought by any Plaintiff other than Mrs. Finicum in her capacity as personal representative of Finicum's estate.

With respect to the excessive force claim, the Supreme Court has held that Fourth Amendment rights are personal and may not be vicariously asserted.  *Alderman v. United States*, 394 U.S. 165, 174 (1969).  "Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights."  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).  "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action."  *Id.*  A plaintiff seeking to maintain a survival action bears the burden of showing that state law authorizes such an action and that the plaintiff meets the requirements of a state survival action.  *Id.*

In Oregon, the survival actions are permitted, but are limited to the personal representative of the decedent.  ORS 115.305 ("All causes of action or suit, by one person against another, survive

to the personal representative of the former and against the personal representative of the latter."); ORS 30.075 ("Causes of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representatives of the decedent may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."); *see also Kaady v. City of Sandy*, No. CV. 06-1269-PK, 2008 WL 5111101, at *12-14 (D. Or. Nov. 26, 2008) (in a survival cause of action under § 1983, "the only proper plaintiff is the personal representative of the estate").  Oregon's wrongful death statute similarly provides that

> When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, . . . may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission.

ORS 30.020(1); *see also Kaady*, 2008 WL 5111101, at * 12 ("In both a survival cause of action and a wrongful death claim, the only proper plaintiff is the personal representative of the estate.").

The only Plaintiff able to maintain the Fourth Amendment excessive force claim, therefore, is Mrs. Finicum in her capacity as the personal representative of Finicum's estate.

For Plaintiffs' state law claims, for negligence and assault and battery, the Oregon Court of Appeals has held that a "claim for injury to the deceased survives only to the extent that the common law has been modified by statute." *Taylor v. Lane Cnty.*, 213 Or. App. 633, 644 (2007). In Oregon, the relevant statute is ORS 30.075. *Id.*  As discussed above, that statute permits the action to be maintained by the personal representative of the estate.

Plaintiffs' Fourth Amendment excessive force claim and their state law claims should therefore be dismissed except as to Mrs. Finicum in her capacity as personal representative of Finicum's estate.[16]

## LEGAL STANDARDS—COUNTY DEFENDANTS

### I.   Federal Rule of Civil Procedure 12(b)(6)—Failure to State a Claim

To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

### II.   Federal Rule of Civil Procedure 12(b)(5)—Insufficient Service of Process

Rule 12(b)(5) provides that a defendant may move to dismiss an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail*

---

[16] Plaintiffs' fourth claim, for "deprivation" under § 1983 alleges that the individual defendants, acting under color of state and federal law, "deprived Plaintiffs of their right to a familial relationship without due process of law by their sue [sic] of unjustified and fatal force against LaVoy Finicum with the deliberate intent to cause LaVoy Finicum harm so he could not and would not return to his family in his home state of Arizona, in violation of rights, privileges, and immunities secured by the First and Fourteenth amendments to the United States Constitution." SAC ¶ 342. From this, the Court understands that Plaintiffs, aside from Mrs. Finicum, seek to bring a Fourteenth Amendment substantive due process claim in their own right, as Finicum's children. The Ninth Circuit "has recognized that a child has a constitutionally protected liberty interest under the Fourteenth Amendment in the 'companionship and society' of her father." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229-30 (9th Cir. 2013) (citation omitted). "Official conduct that 'shocks the conscience' in depriving a child of that interest is cognizable as a violation of due process." *Id.* (internal quotation marks and citation omitted, alteration normalized); *see also Kaady v. City of Sandy*, No. CV. 06-1269-PK, 2008 WL 5111101, at *11 (D. Or. Nov. 26, 2008) (holding same). As a consequence, the requirement that claims be brought by the personal representative of the decedent's estate does not apply to Plaintiffs' substantive due process claim. The Court further notes that the State Defendants have not moved to dismiss this claim.

Page 49 – FINDINGS & RECOMMENDATION

*Specialists, Inc.*, 840 F.2d at 688.  "However, 'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'"  *Id.* (quoting *United Food & Commercial Workers Union*, 736 F.2d at 1382).  But "without substantial compliance with Rule 4, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction."  *Id.* at 688 (internal quotation marks and citation omitted).  Once service of process is challenged, "[i]t is plaintiff's burden to establish the validity of service of process." *Roller*, 2018 WL 2946395, at *2.  "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion."  *Id.*; *see also Lachick*, 1998 WL 800325, at *2 ("Factual contentions regarding the manner in which service was executed may be made through affidavits, depositions, and oral testimony.").

## DISCUSSION—COUNTY DEFENDANTS

The County Defendants move to dismiss all claims against them.  In addition to Harney County itself, Plaintiffs name two individual Harney County officials as Defendants: David M. Ward, who was the Harney County Sheriff at the time of the Refuge occupation and Finicum's subsequent death, and Steven Grasty, who was the Harney County Court Judge.[17]  SAC ¶ 6.

Plaintiffs bring six claims against the County Defendants: (1) a § 1983 claim for excessive force against Ward and Grasty (Claim Three); (2) a § 1983 claim for deprivation of due process and familial association against Ward and Grasty (Claim Four); (3) a § 1983 claim for municipal liability under *Monell* against all County Defendants (Claim Five); (4) a conspiracy claim against

---

[17] The title "judge" does not refer to an Oregon circuit court judge in this context.  The administrative body that governs Harney County is known as the Harney County Court and is made up of three elected officials: the County Judge and two County Commissioners.  In addition to their administrative duties, county courts exercise jurisdiction over certain other matters, notably probate cases.  ORS 111.075.  As relevant to the present case, Judge Grasty's role was essentially that of chair of the Harney County Commissioners.  As the Court observed at oral argument, this type of county government structure is common in eastern Oregon.  Tr. 5-6.  ECF No. 156.

all County Defendants (Claim Six); (5) a claim for negligence against all County Defendants (Claim Seven); and (6) a claim for assault and battery against Harney County (Claim Eight).

## I.        Failure to Serve

The County Defendants assert that Ward and Grasty were never properly served and so all claims against them must be dismissed.  Cnty. Def. Mot. at 32-34.  As previously noted, the original Complaint was filed on January 25, 2018.

On February 28, 2018, Casey Murdock filed an appearance as counsel for the County Defendants, directing that "all further pleadings, orders, notices, and other documents, *except original process*, be served upon [the County Defendants' counsel]."  ECF No. 5 (emphasis added).  On March 5, 2018, Thomas Armosino filed an identical appearance as co-counsel for the County Defendants.  ECF No. 6.

Plaintiffs filed Proofs of Service on July 19, 2018 indicating that Ward and Grasty were served by certified mail on April 24, 2018.  ECF Nos. 41, 42.  However, the Proofs of Service submitted by Plaintiffs show that service was sent to the County Defendants' counsel's office and was addressed to Harney County, rather than to Ward or Grasty.

On April 25, 2018, the day after the summons and Complaint were sent to the County Defendants' counsel's office, Plaintiffs requested an additional 60 days to effect service.  ECF No. 18.  The Court granted the motion and gave Plaintiffs until May 25, 2018 to serve Defendants.  ECF No. 19.

On July 19, 2018, the Court held a status conference at which it extended the deadline for service through August 3, 2018 and ordered Plaintiffs to file a Report of Service verifying that all Defendants were properly served.  ECF No. 44.  The Report of Service was duly filed on August 3, 2018.  ECF No. 51.

The Report of Service indicates that Ward and Grasty "received a true copy of the summons through cm/ecf delivery" on April 24, 2018, and that their attorney "received, by mail a true and correct copy of the Complaint and Summons," on April 26, 2018. Report of Service at 11-12. The Report indicates that Mr. Murdock sent an email to Plaintiffs' counsel on May 10, 2018, indicating his ability to act on behalf of Ward and Grasty. *Id.* at 12-13. Mr. Armosino sent an email to Plaintiffs' counsel on July 31, 2018, indicating his ability to act on behalf of Ward and Grasty, but he declined to provide an address for personal service on the individual County Defendants. *Id.* at 12-13.

The Report indicates that Plaintiffs served Ward and Grasty by mailing the Amended Complaint and summons to them on August 3, 2018 and promised that "Return of Service will be filed with the Court upon return of receipt from the United States Postal Service." Report of Service at 12-13. The mailing intended for Ward was addressed to a post office box in Burns, Oregon. *Id.* at 12.

In terms of personal service, the Report says that Ward was served by delivering "via hand delivery, by a person over 18 not a party, a lawful summons and the amended complaint to Ward at his office in Burns, Oregon," on August 3, 2018. Report of Service, at 12. For Grasty, the Report says that the summons and amended complaint were hand delivered on August 3, 2018 "to Grasty at his home in Burns, Oregon." *Id.* at 13. The Report promised that an "affidavit and Return of Service will be filed with the Court," for personal service on both Ward and Grasty. *Id.* at 12-13.

Notwithstanding the representations contained in the Report of Service, no affidavits or Returns of Service were filed for the August 3, 2018 mailing or the personal service on Ward or

Grasty.  The County Defendants assert that Ward and Grasty were not properly served with either the original Complaint or the First Amended Complaint.  Cnty. Def. Mot. at 33.

On September 28, 2018, Plaintiffs sought leave to file the operative Second Amended Complaint.  ECF No. 66.  In their Response to Plaintiffs' motion, the County Defendants raised the issue of service, noting Plaintiffs' failure to file proofs of service as to either the original Complaint or the First Amended Complaint and asserted that Ward and Grasty had not been properly served.  ECF No. 67.

On April 1, 2019, the Court granted Plaintiffs' motion to file the operative Second Amended Complaint.  ECF No. 88.  In its Order, the Court pointed out that multiple Defendants has challenged service of both the original Complaint and the First Amended Complaint.  Plaintiffs were "ordered to effect appropriate service on all defendants, if they are not already served."

The SAC was filed on April 30, 2019, ECF No. 89, but no proofs of service or affidavits of service were filed to demonstrate service on Ward or Grasty.  On August 30, 2019, the County Defendants filed the present Motion to Dismiss, once again raising the issue of insufficient service of process as to Ward and Grasty.

### A.  Waiver of Service

Plaintiffs contend that Ward and Grasty have waived the right to challenge defects of service by their attorneys' appearances in this case.  Pls. Resp. at 22-23.  ECF No. 141.

As previously discussed in Bretzing's challenge to service of process, Rule 12(h)(1) provides that a defendant waives any personal jurisdiction defense the defendant might otherwise have if he or she does not raise it in a responsive pleading or in a motion to dismiss that precedes the responsive pleading.  Fed. R. Civ. P. 12(h).  Here, Ward and Grasty raised a personal jurisdiction defense in their motion to dismiss and did not waive the defense by entering a notice

of appearance before filing the motion. *See Jackson*, 682 F.2d at 1347 (under Rule 12, waiver occurs if a defendant fails to challenge the defect in a preliminary motion, or responsive pleading); *Pac. Lanes, Inc.*, 248 F. Supp. at 348 ("It is now generally held that Rule 12 abolished, for the federal courts, the common law distinction between general and special appearances, and that a defendant is not required to specially appear in order to attack the court's jurisdiction over his person.").

A court can find that a defendant has waived a personal jurisdiction defense, even if the defendant satisfies the "minimum steps" to preserve a defense specified in Rule 12(h)(1), but, as with Bretzing's similar motion, Ward and Grasty's conduct does not amount to "deliberate, strategic behavior" or "sandbagging" designed to seek affirmative relief from the court. *Peterson*, 140 F.3d at 1318. As noted, the County Defendants raised the issue of defective service as to Ward and Grasty in response to Plaintiffs' Motion to Amend and again in the present Motion to Dismiss. On this record, the Court cannot conclude that Ward and Grasty have waived the right to challenge defective service.

### B.  Service was inadequate under Rule 4

Rule 4(e) provides that an individual may be served in a judicial district of the United States by:

> (1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy at each of the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Service must be completed within 90 days after the complaint is filed, unless the time for service is extended on a showing of good cause.  Fed. R. Civ. P. 4(m).

In this case, Plaintiffs have failed to effect service on Ward or Grasty pursuant to Rule 4(e)(2).  The notices of appearance filed by the County Defendants' counsel expressly state that they are not authorized to accept service of original process.  And although Plaintiffs' Report of Service claims that Ward and Grasty were personally served, Plaintiffs have failed to provide an affidavit or other proof of service to support that claim, as required by Rule 4(l)(1).

The Court therefore turns to Rule 4(e)(1), which provides that a plaintiff may complete service by following state law for serving an action.  ORCP 7D(1) "sets forth a 'reasonable notice' standard for determining adequate service of summons: 'Summons shall be served . . . *in any manner reasonably calculated*, *under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. . . .*"  *Baker*, 310 Or. at 224-25 (emphasis in original).  "Rather than requiring a particular manner of service to satisfy the standard of adequate service, the rule endorses the process of examining the totality of the circumstances, to determine if the service of summons was reasonably calculated to provide defendant with notice of the action and reasonable opportunity to appear and defend."  *Id.* at 225.  ORCP 7D(2) provides a list of possible means of serving a prospective defendant including personal service, substituted service, office service, or service by mail.

When evaluating the adequacy of service under the Oregon Rules, courts apply a two-step analysis:

First, the court must determine of the method in which service of summons was made was one of those methods described in ORCP 7 D(2), specifically permitted for use upon the particular defendant by ORCP 7 D(3), and accomplished in accordance with ORCP 7 D(2).  If so, the service is presumptively adequate and, unless the defendant overcomes the presumption, service will be deemed effective.

If, however, presumptively adequate service is not effected, or if the defendant rebuts the presumption of valid service, the court must then consider whether the manner of service employed by plaintiff satisfies the 'reasonable notice' standard of adequate service set forth in ORCP 7D(1).  Only if that inquiry is answered in the affirmative will service be deemed valid.

*Davis Wright Tremaine*, 181 Or. App. at 337 (citing *Baker*, 310 Or. at 228-29) (internal quotation marks and citations omitted, alterations normalized).

In this case, Plaintiffs have failed to demonstrate compliance with ORCP 7D(2).  Although Plaintiffs claim to have personally served Ward and Grasty, as allowed by ORCP 7D(2)(a), they have failed to provide an affidavit or proof of service memorializing service.  Plaintiffs do not claim to have completed substituted service, as allowed by ORCP 7D(2)(b).

ORCP 7D(2)(d) provides for service by mail "by mailing true copies of the summons and the complaint to the defendant by first class mail and any of the following: certified, registered, or express mail with return receipt requested." ORCP 7D(2)(d)(i).  For purposes of computing the time for service by mail, service is deemed complete "on the day the defendant or other person authorized by appointment or law signs a receipt for the mailing, or 3 days after the mailing if mailed to an address within the state, or 7 days after the mailing if mailed to an address outside the state, whichever first occurs."  ORCP 7D(2)(d)(ii).

In this case, Plaintiffs contend that they properly served Ward and Grasty by mailing a copy of the Complaint and summons to the County Defendants' attorney on April 26, 2018.  As previously noted, however, that mailing (1) was addressed to Harney County, rather than to Ward

or Grasty, and (2) was sent to the County Defendants' counsel, who were not authorized to accept original process.

Plaintiffs contend that they served Ward and Grasty a second time by mail on August 3, 2018. Plaintiffs never filed a return receipt or other proof of service for this second attempt, but even if the Court accepts that the mailing occurred, it is still untimely. In its July 19, 2018 Order, the Court directed Plaintiffs to file a report on August 3, 2018 verifying that all Defendants had been properly served. The Report of Service indicates that Plaintiffs *mailed* the summons and complaint to Ward and Grasty on August 3, 2018. Service is not deemed complete on the date of mailing, however, but on the date when either (1) the defendant signs a receipt for the mailing or (2) three days after mailing if mailed to an address within the state. ORCP 7D(2)(d)(ii). If the mailing occurred (and Plaintiffs have not provided proof that it did), then the earliest it may be deemed complete is August 6, 2018. This date falls 193 days after the filing of the original Complaint. This is well beyond the time limit provided by Rule 4(m) and beyond even the generous extensions of time allowed by this Court for Plaintiffs to effect proper service.

Finally, ORCP 7D(2)(c) allows for office service, which may be done "by leaving true copies of the summons and the complaint at that office during normal working hours with the person who is apparently in charge." In this case, Plaintiffs assert that Ward was served at his office, but office service requires that the summons and complaint be mailed after office service and serve is only deemed complete upon the mailing. ORCP 7D(2)(c). As discussed, the mailing in this case was defective. Furthermore, Plaintiffs have failed to offer proof of office service on Ward or the subsequent mailing.

As Ward and Grasty were not properly served under ORCP 7D(2), the Court must consider whether the manner of service satisfies the "reasonable notice" standard of ORCP 7D(1). The

Court concludes that it does not.  The only proof Plaintiffs offer to show any service on Ward or Grasty is a receipt for a mailing addressed to Harney County and sent to the County Defendants' counsel, rather than to Ward or Grasty.  Plaintiffs knew or should have known based on the language of the County Defendants' counsel's notices of appearance that they were not authorized to accept service of original process.  This service attempt was not "reasonably calculated, under all the circumstances," to apprise Ward and Grasty of the existence and pendency of the action, as required by ORCP 7D(1).

Actual notice does not excuse noncompliance with ORCP 7 and cannot render service adequate under ORCP 7 if the summons is not served in a manner reasonably calculated to appraise the defendant of the existence and pendency of the action against him.  *Davis Wright Tremaine, LLP*, 181 Or. App. at 338-39.  Here, the Court concludes that Ward and Grasty were not properly served under either ORCP 7 or Rule 4.

### C.  Dismissal for failure to properly serve is warranted

As with Bretzing, the Court must exercise its discretion to decide whether to dismiss Ward and Grasty or to quash service and grant Plaintiffs an opportunity to serve them.  *Stevens*, 538 F.2d at 1389.  "Service will ordinarily be quashed and the action preserved where 'there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly.'"  *Roller*, 2018 WL 2946395, at *2 (quoting *Bravo*, 2014 WL 555195, at * 1 (quoting Wright & Miller, § 1354, at 585)). "The district court also has the discretion, upon a showing of 'good cause' to extend the time for service outside of the 90-day period provided for in Rule 4."  *Id.* (citing Fed. R. Civ. P. 4(m)); *see also* Fed. R. Civ. P. 4(l)(3) (providing that failure to prove service does not affect validity of service, and the court may permit proof of service to be amended).

As with Bretzing, the Court cannot say that there is a reasonable prospect Plaintiffs will ultimately be able to serve Ward or Grasty properly or that Plaintiffs have shown good cause for their failure to do so.[18]  Accordingly, the Court should exercise its discretion to dismiss Ward and Grasty.  Even if service on Ward and Grasty were deemed to be successful, however, the claims against those individual County Defendants should still be dismissed for the reasons set forth in the following sections.

## II.    Special Motion to Strike—Anti-SLAPP Statute, ORS 31.150 *et seq.*

The County Defendants move to strike Plaintiffs' state law claims for negligence (Claim Seven) and assault and battery (Claim Eight) pursuant to Oregon's anti-SLAPP statute, ORS 31.150 *et seq.*[19]

As a preliminary matter, Plaintiffs contend the County Defendants' Special Motion to Strike is untimely.  The statute provides that a special motion to strike under ORS 31.150 "must be filed within 60 days after the service of the complaint or, in the court's discretion, at any later times."  ORS 31.152(1).  Leaving aside the question of service as to Ward and Grasty, discussed above, the Court previous gave leave for the County Defendants to file their anti-SLAPP motion after the expiration of the 60-day window established by the statue.  On April 1, 2019, the Court issued an Order granting Plaintiffs leave to file the operative SAC.  ECF No. 88.  As part of that Order, the Court established that "All responsive pleadings or motions (including any anti-SLAPP motion under Oregon state law, Or. Rev. Stat. § 31.150) are due by September 1, 2019."  Order,

---

[18]  As with Bretzing, Plaintiffs Response does not provide any justification for their failure to properly serve Ward or Grasty, other than Plaintiffs' misplaced belief that service was proper.

[19]  Although the parties do not define the term, "SLAPP" is an acronym for "strategic lawsuits against public participation."  *Young v. Davis*, 259 Or. App. 497, 499 (2013).

at 6.  The County Defendants filed their motion on August 30, 2019.  ECF No. 106.  The anti-SLAPP motion is therefore timely.

Oregon's anti-SLAPP statute provides "an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading state."  *Neumann v. Liles*, 358 Or. 706, 723 (2016); ORS 31.150.  The statute provides a "two-step burden-shifting process."  *Wingard v. Ore. Family Council, Inc.*, 290 Or. App. 518, 521 (2018).  In the first step, the defendant making a special motion to strike must demonstrate that "the claim against which the motion is made arises out of" protected activities described in ORS 31.150(2).  ORS 31.150(3); *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 815 (2016).  The burden then shifts to the plaintiff "to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case."  ORS 31.150(3); *Handy v. Lane Cnty.*. 360 Or. 605, 612 (2016).  If the plaintiff meets this burden, the court must deny the special motion to strike.  ORS 31.150(3).  If the plaintiff fails to meet the burden, the court must dismiss the claim without prejudice.  ORS 31.150(1).

Federal courts generally apply state substantive law and federal procedural law.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The treatment of anti-SLAPP motions is therefore substantially different in federal court.  "Although anti-SLAPP motions appear to be a procedural mechanism to vindicate existing substantive rights, they are generally allowed in federal court.  However, the Ninth Circuit has held that not all provisions of a state anti-SLAPP statute apply in federal court."  *Miller v. Watson*, Case No. 3:18-CV-00562-SB, 2019 WL 1871011, at *4 (D. Or. Feb. 12, 2019), *F&R adopted*, 2019 WL 1867922 (D. Or. April 25, 2019) (internal quotation marks, citation, and footnote omitted); *see also Chase v. Gordon, Aylworth & Tami, P.C.*, Case No. 3:18-cv-00568-

AC, 2020 WL 1644310, at *3-4 (D. Or. Feb. 14, 2020) (Acosta, J. quoting and concurring with the holding of *Miller*).

The Ninth Circuit has adopted a tiered approach to anti-SLAPP motions. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018). When an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, the court must apply the Rule 12(b)(6) standard and consider whether a claim is properly stated. *Id.* at 834. But when an anti-SLAPP motion to strike "challenges the factual sufficiency of a claim," the Rule 56 standard applies, and discovery must be allowed before any decision is made by the court. *Id.* This approach was adopted because requiring "a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure." *Id.* at 833-34.

In this case, if the Court accepts that the claims arise out of protected activities described in ORS 31.150(2), the burden would then shift to Plaintiffs to demonstrate a probability that they would prevail on the claims by a showing of substantial evidence. ORS 31.150(3). Unlike Oregon state courts, a federal court must evaluate the sufficiency of a plaintiff's prima facie case under the Rule 12(b)(6) standard, without requiring the presentation of evidence. *Planned Parenthood*, 890 F.3d at 834; *Miller*, 2019 WL 1871011, at *4; *Chase*, 2020 WL 1644310, at *4. "A district court's evaluation of the factual sufficiency of the plaintiff's prima facie case must wait until after discovery." *Chase*, 2020 WL 1644310, at *4. As Judge Beckerman observed in *Miller*, this tiered approach "appears to defeat the purpose of an anti-SLAPP motion, and coverts it to a standard Rule 12(b)(6) motion to dismiss." *Miller*, 2019 WL 1871011, at *4, n.6. Nevertheless, it is the standard established by the Ninth Circuit.

The County Defendants already challenge the legal sufficiency of Plaintiffs' state law claims under Rule 12(b)(6), Mot. to Dismiss, at 25-28, and evaluation of Plaintiffs' state law claims under the anti-SLAPP statute would be duplicative of that analysis. The Court should therefore deny the Special Motion to Strike with leave to renew, if necessary, after the close of discovery.

## III.     42 U.S.C. § 1983—Excessive Force

Plaintiffs third claim alleges excessive force against Ward and Grasty pursuant to § 1983. SAC ¶¶ 331-38. The claim alleges that the individual Defendants "acted jointly and collectively with each other in the wrongful acts leading to the death of LaVoy Finicum," and that each individual Defendant "failed to intervene to prevent abuse and harm to LaVoy, though able." *Id.* at ¶¶ 335-36.

The allegations of the SAC are slender when it comes to direct participation by Ward or Grasty in a use of force. The SAC alleges that Ward and Grasty "supported the plan, and in offering their support and assistance knew about the planned 'traffic stop,' and the pre-planned use of excessive force." SAC ¶ 206. It alleges that Ward and Grasty "had been specifically advised and informed that no state laws had been broken by the protests." *Id.* at ¶ 211. It alleges that Ward knew of Grant County Sheriff Glenn Palmer's support for the protest and that the operation was planned to take place in Harney County "to avoid Sheriff Palmer and to ensure operational secrecy and control." *Id.* at ¶¶ 215-16. Critically, the SAC does not allege that Ward, Grasty, or any Harney County personnel were present for or directly involved in the stop and roadblock operation. Rather that operation is alleged to have been jointly carried out by federal and state law enforcement agencies. There is no allegation that Ward or Grasty used any force against Finicum.

As discussed in the previous section concerning Governor Brown, a claim for excessive force under § 1983 requires that the defendant be an "integral participant" in the use of force.

*Blankenhorn*, 485 F.3d at 481 n.12.  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation.  But it does require some fundamental involvement in the conduct that allegedly caused the violation."  *Id.* (internal quotation marks and citation omitted).  "[T]he 'integral participant' doctrine does not implicate government agents who are 'mere bystanders'" to a violation.  *Bravo*, 665 F.3d at 1090.

In this case, Ward and Grasty are alleged to have offered "support" or cooperation to the operation.  This vague and undefined conduct is insufficient to meet basic pleading standards and falls well short of alleging integral participation in the use of force at which neither Ward nor Grasty were present.  With respect to the alleged failure to intercede, the Ninth Circuit has held that "officers can be held liable for failing to intercede only if they had an opportunity to intercede," and that officers who were not present could not be held liable for failing to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).  As Ward and Grasty are not alleged to have been present for the use of force, they cannot be held liable for failing to intervene.

Plaintiffs have failed to state a claim for excessive force as to Ward and Grasty and so that claim should be dismissed.

## IV.    42 U.S.C. § 1983—Deprivation

Plaintiffs' fourth claim alleges deprivation of familial relationship in violation of their substantive due process rights under the Fourteenth Amendment against Ward and Grasty.  SAC ¶¶ 339-44.

The Ninth Circuit has held that "a child has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of her father." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229-30 (9th Cir. 2013) (internal quotation marks and citation omitted).  "Official conduct that 'shocks the conscience' in depriving a child of that interest is

cognizable as a violation of due process." *Id.* at 1230 (internal quotation marks and citations omitted, alterations normalized). When the deprivation of familial relationship is alleged to have occurred as a result of excessive force, "the court must first ask whether the circumstances are such that actual deliberation by the officer is practical." *Id.* Where "a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

In this case, the deprivation is alleged to have occurred as a result of excessive force. As noted, the force is alleged to have been applied by state and federal law enforcement. Neither Ward nor Grasty are alleged to have been present. The vehicle stop and road block operation were planned and carried out by state and federal agencies and the County Defendants are only vaguely alleged to have supported the federal and state authorities with the operation. SAC ¶¶ 189, 191, 195, 206. A plaintiff may not bring a claim under § 1983 for vicarious liability and to state a valid claim, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, had violated the Constitution." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (internal quotation marks and citation omitted). A plaintiff may not "lump all the defendants together" in making out a case under § 1983. *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996). Ward and Grasty's conduct, as pleaded, is too undefined and too removed from the use of force to sustain a claim for violation of substantive due process rights. Accordingly, this claim should be dismissed.

## V. *Monell* Liability

Plaintiffs' fifth claim alleges municipal liability under § 1983 pursuant to *Monell*. SAC ¶¶ 345-55. Plaintiffs allege that the County Defendants "maintained[,] permitted[,] and ratified

policies and customs which allow the occurrence of the types of wrongs set forth herein above, all in deliberate indifference to the constitutional rights of citizens." *Id.* at ¶ 347. As relevant to the County Defendants, Plaintiffs allege that Harney County "acted with deliberate indifference in the training of its law enforcement officers and other agents, related to the use of reasonable force and lawful seizures, as well as the deliberate indifference by the relevant government hierarchy to the safety of citizens or the adherence to the Constitution's protection of individual rights," and that this was "the moving force behind the misconduct engaged in by Defendants." *Id.* at ¶ 351. Plaintiffs allege that the County Defendants ratified the misconduct and failed to "conduct adequate investigations of misconduct." *Id.* at ¶ 353.

To prevail on a *Monell* claim, a plaintiff must show that a municipal custom or policy caused the violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 690-92. A plaintiff must show a constitutional violation by (1) an employee acting under an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a final policymaker. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). If no constitutional violation occurred, then a municipal liability claim fails under § 1983. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As a preliminary matter, the claim for *Monell* liability is brought against all County Defendants, including Ward and Grasty. "*Monell* did not extend its reasoning however to individual employees of local government," and "an individual employee cannot be liable under a *Monell* theory of liability." *Kuhns v. City of Albany*, Civ. No. 6:18-cv-01254-JR, 2018 WL 6313610, at * 1 (D. Or. Oct. 10, 2018), *recommendation adopted by* 2018 WL 6313005 (D. Or. Nov. 30, 2018). Harney County is therefore the only proper County Defendant and this claim should be dismissed as to Ward and Grasty.

To establish liability based on government policy or longstanding custom, a plaintiff must show that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy, longstanding practice, or custom; (3) the policy, practice, or custom amounted to "deliberate indifference to the plaintiff's constitutional right;" and (4) the policy, practice, or custom was "the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citations omitted). To succeed on a *Monell* claim based on a longstanding custom or practice, the custom or practice "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

In this case, the SAC fails to identify any specific custom or policy of Harney County, let alone a policy or custom of sufficient duration to permit municipal liability under *Monell*.

Plaintiffs also allege that the County Defendants failed to train or supervise its employees. *Monell* liability can arise from a failure to train, supervise, or discipline that amounts to a deliberate indifference to individuals' constitutional rights. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). To show deliberate indifference, a plaintiff must demonstrate that the need "for more or different action is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the

need." *Hyun Ju Park v. City and Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (internal quotation marks and citations omitted, alterations normalized).

In this case, the SAC does not clearly allege which employee was left without proper training or supervision, nor does it plead sufficient facts to demonstrate that deficient training amounted to deliberate indifference.  Furthermore, the harm alleged in this case is the use of excessive force against Finicum during the vehicle stop and roadblock operation.  As discussed in the preceding sections, that operation was planned and carried out by state and federal agencies and no Harney County employees are alleged to have been present.  The County Defendants are vaguely alleged to have cooperated in or supported the operation, but there are no allegations to support the contention that whatever assistance the County Defendants offered was the moving force behind the harm Fincium suffered.

Finally, the SAC alleges that "the ratification of misconduct by . . . HARNEY COUNTY, WARD, and GRASTY" gives rise to municipal liability under *Monell*.  SAC ¶ 353.  A plaintiff may establish *Monell* liability "(1) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision, or (2) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002).

In this case, the SAC does not clearly allege what decision was ratified or by whom.  To the extent that the decision in question related to the nebulous support and cooperation the County Defendants offered to state and federal law enforcement in connection with the vehicle stop and roadblock operation, the allegation is not sufficiently clear, nor does it clearly allege that the County Defendants' cooperation with state and federal authorities was the moving force behind

Finicum's injury.  Plaintiffs have therefore failed to state a claim for municipal liability under *Monell* and this claim should be dismissed.

### VI.    Conspiracy

Plaintiffs' sixth claim alleges conspiracy "under *Bivens*, 42 U.S.C. § 1983, color of state law, and relevant state common law and statutory authority."  SAC ¶ 357.  As discussed in the preceding sections, this claim is not sufficiently alleged against any Defendant, including the County Defendants, and should be dismissed.

### VII.    Negligence

Plaintiffs' seventh claim alleges negligence against all County Defendants.  SAC ¶¶ 361-69.  Plaintiffs allege that the County Defendants "owed a duty to the public to properly train and supervise the officers, employees, and agents under their control and influence," and that the failure to do so "led to the untimely and unwarranted death of LaVoy Finicum."  *Id.* at ¶ 362.  Plaintiffs also allege that the County Defendants "owed a duty to LaVoy Finicum, to conduct themselves reasonably and safely so as not to harm him in the circumstances that occurred."  *Id.* at ¶ 363.

In Oregon, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendants conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari By and Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987).  "Under *Fazzolari*, the Supreme Court has abandoned the traditional notion of 'proximate cause,' as well as the concept of common-law duty in the absence of a special relationship." *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 506 (2010).  "In effect, the more traditional duty-breach analysis in an

ordinary negligence claim is supplanted by the question whether the defendant's conduct resulted in a foreseeable and unreasonable risk of harm of the kind that the plaintiff suffered." *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86 (2015).

As summarized in *Son*, a common-law claim for negligence under Oregon law requires the plaintiff to demonstrate:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Son*, 239 Or. App. at 506 (internal quotation marks and citation omitted).

The element of causation refers to "causation-in-fact" or "but-for" causation. *Watson v. Meltzer*, 247 Or. App. 558, 565 (2011). "That is to say, in order to prevail in a negligence action, a plaintiff must establish that *but for* the negligence of the defendant, the plaintiff would not have suffered the harm that is the subject of the claim." *Id.* (emphasis in original); *see also Towe*, 357 Or. at 87 ("Thus, apart from proving either that the defendant's conduct created an unreasonable risk of the kind of harm that befell the plaintiff or that the defendant breached a special duty owed to the plaintiff, the plaintiff in a negligence action must also prove a causal link between the defendant's conduct and the plaintiff's harm—that is, the plaintiff must prove 'cause in fact.'" (citation omitted)).

In this case, Plaintiffs allegations concerning the conduct of the County Defendants are vague. The SAC alleges that the County Defendants "cooperated" with "plans and acts orchestrated by others," and "united" with the aims of the other Defendants. SAC ¶ 6. It alleges that federal agencies used false and misleading information about Finicum and the operation to enlist the support and cooperation of the County Defendants. *Id.* at ¶ 133. The County Defendants

then disseminated that information, despite allegedly knowing that some of the information was false, and that this information was used by law enforcement to create operational plans. *Id.* at ¶¶ 134-36, 171-74.  When it came to the vehicle stop and roadblock operation, the SAC alleges that the planning was done by state and federal actors and the County Defendants are only vaguely alleged to have cooperated, supported, or "aided and assisted" in some vague and undefined way. *Id.* at ¶¶ 189, 191, 195, 206.  As noted, there is no allegation that the County Defendants were present for the vehicle stop or roadblock operation or that they directly participated in the events that followed.

The SAC attempts to paper over the lack of specific allegations concerning the County Defendants by lumping all Defendants together with impermissibly vague and conclusory statements.  Such statements are not entitled to a presumption of truth on a Rule 12(b)(6) motion. For the purposes of Plaintiffs' claim for negligence, the SAC fails to plausibly allege that the conduct of the County Defendants created a foreseeable risk of harm or that the conduct was the cause-in-fact of Finicum's death.  The Court therefore concludes that Plaintiffs have failed to state a claim for negligence as to the County Defendant and this claim should be dismissed.

### VIII.   Assault and Battery

Plaintiffs' eighth claim alleges assault and battery against Harney County.  Of note, this claim is not alleged against either Ward or Grasty.  It alleges that Harney County "engaged in voluntary acts that caused intentional harm and contact with LaVoy Finicum, including shooting him three times in the back."  SAC ¶ 373.

"Under Oregon law, civil assault is defined as 'an intentional attempt to do violence to the person of another coupled with the present ability to carry the intention into effect.'"  *Mally v. City of Beaverton*, 3:17-CV-1000-PK, 2018 WL 6133727, at *6 (D. Or. Sept. 12, 2018) (quoting

*Bollaert v. Witter*, 101 Or. App. 654, 658 (1990)).  "To recover for battery under Oregon law a plaintiff must prove that the defendant intended to cause a harmful or offensive contact to the plaintiff, whether directly or indirectly." *Id.* (citing *Brown v. Far West Fed. Sav. & Loan Ass'n*, 66 Or. App. 387, 390 (1984)).  "The force applied may be indirect and through an intervening agent, so long as it was an intentional act caused by the defendant." *Brown*, 66 Or. App. at 390.

In this case, none of the County Defendants were present at the roadblock and none of the County Defendants used force against Finicum.  Although the application of force may be indirect and through an intervening agent, the SAC alleges that the arrest operation was planned and executed by state and federal law enforcement.  SAC ¶¶ 189, 221.  The vague allegations of cooperation or support from the County Defendants are insufficient to support a claim for assault or battery.  Plaintiffs' claims for assault and battery against Harney County should therefore be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should GRANT the United States' Motion to Dismiss.  All claims against the United States should be DISMISSED without jurisdictional discovery.  All claims against the FBI and BLM should be DISMISSED with prejudice.

The Court should GRANT Defendant Bretzing's Motion to Dismiss.  All claims against Bretzing should be DISMISSED with prejudice.

The State Defendants' Motion to Dismiss should be GRANTED in part and DENIED in part.  The claims against Defendants Travis Hampton, Trooper 1, and Trooper 2 should be related back to the original Complaint and deemed timely.  The claim for excessive force under 42 U.S.C. § 1983 against Defendant Governor Brown should be DISMISSED for failure to state a claim. The municipal liability claims under 42 U.S.C. § 1983 as to all State Defendants should be

DISMISSED.  Plaintiffs' conspiracy claim should be DISMISSED and Plaintiffs should be ordered to amend their complaint to provide a more definite and certain statement of their claim for conspiracy as to the State Defendants.

The County Defendants' Motion to Dismiss should be GRANTED.  Plaintiffs' claims against Defendants David M. Ward and Steven E. Grasty should be DISMISSED with prejudice. Plaintiffs' claims against Defendant Harney County for municipal liability, conspiracy, negligence, assault and battery should be DISMISSED with leave to amend.  The County Defendants' Special Motion to Strike should be DENIED with leave to refile.

Plaintiffs' claim for excessive force under 42 U.S.C. § 1983 and Plaintiffs' state law claims for negligence, assault, and battery are personal to the decedent and should therefore be DISMISSED except as alleged by Plaintiff D. Jeanette Finicum in her capacity as personal representative for the estate of Robert LaVoy Finicum.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

IT IS SO ORDERED.

DATED this 24th day of July, 2020.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge