J. Morgan Philpot, Esq.
(Oregon Bar No. 144811)
JM PHILPOT LAW, PLLC
1063 East Alpine Drive,
Alpline, UT 84004
(801) 428-2000
 morgan@jmphilpot.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **D. JEANETTE FINICUM, ET AL.** | |
| *Plaintiffs,* | CASE NO: 2:18-CV-00160-SU |
| v. | |
| **UNITED STATES OF AMERICA, ET AL.** | **PLAINTIFFS' OBJECTIONS TO FINDINGS & RECOMMENDATIONS (ECF NO. 161)** |
| *Defendants.* | |

Plaintiffs, by and through undersigned counsel, and in response to the Findings and

Recommendations ("F&R") entered by the U.S. Magistrate Judge on July 24, 2020, (Doc. 161),

submit the following objections as follow:

### PROCEDURAL POSTURE

This lawsuit was filed on January 25, 2018 in the District of Oregon, Pendleton Division

in response to the unlawful killing of Robert LaVoy Finicum. ("Finicum" or "LaVoy Finicum" or

"decedent") Plaintiffs were granted leave to file the currently operative complaint i.e., the Second

Amended Complaint("SAC") on April 30, 2019. (ECF No. 89) The SAC alleges eight claims

against Defendants[1] including Count I: Wrongful Death pursuant to the Federal Tort Claims Act,

---

[1]      United States, Federal Bureau of Investigations("FBI"), Bureau of Land Management ("BLM"), Greg
T. Bretzing, Joseph Astarita, Daniel P. Love, Salvatore Lauro, Special Agent BM, Michael Ferrari, Katherine
Brown, the State of Oregon, Oregon State Police, Travis Hampton, Trooper #1, Trooper #2, Harney County,
David M. Ward, Steven E. Grasty, and Center for Biological Diversity (Generally and collectively referred to
as "Defendants")

1

Count II: Bivens Actions for Constitutional deprivations caused by the federal agents acting on behalf of the FBI and BLM, Count III: Title 42-1983 Claims against the state law enforcement officers and Governor Katherine Brown, Count IV: Title 42-1983 Claims raised by the heirs of decedent Robert LaVoy Finicum, Count V: Title 42-1983 Monell Claim, Count VI: Conspiracy, Count VII: Negligence and Count VIII: Common Law Assault and Battery. ECF No. 89 at pp. 60-70.

Plaintiffs further seek to establish that Defendants including an elite clandestine faction within the FBI known as the HRT[2] Team, and others intentionally engaged in falsifying official documents, reports and other law enforcement work product as well as knowingly misrepresenting facts, circumstances and other key information hereinafter which Plaintiffs will refer to as the **wide-spread multi-jurisdictional lie** --- regarding LaVoy Finicum and the events leading up to and including the infamous traffic stop on January 26, 2016. These abhorrent acts and omissions mentioned herein and throughout the SAC caused decedent's common law, constitutional and ultimately his terminal injuries. Plaintiffs have maintained no probable cause existed for Defendants, including the United States, Oregon State Police and others to employ elite special forces militaristic tools, weapons and tactical operational planning and personnel for a simple traffic stop, then seize Mr. Finicum twice, utilize high powered semi-automatic assault-style weapons, with trained lasers on the occupants inside decedent's vehicle, then discharge voluminous rounds of fire power at the vehicle; which ultimately killed Mr. Finicum while he feverishly tried to surrender in the high banked snow outside of his vehicle.

Moreover, Plaintiffs maintain the attempt to arrest Finicum on a traffic encounter was pretextual and none of the Defendant participants whether on scene or not – intended for the

---

[2] The Hostage Rescue Team (HRT) is the elite tactical unit of the Federal Bureau of Investigation (FBI). The HRT was formed to provide a full-time federal law enforcement tactical capability to respond to major terrorist incidents throughout the United States. The HRT performs a number of tactical law enforcement and national security functions in high-risk environments and conditions and is also deployed overseas. See https://en.wikipedia.org/wiki/Hostage_Rescue Team

occupants i.e., "passengers" to be removed from the vehicles alive that day - on Oregon state route highway 295. Plaintiffs allege the plan was always to "dirty up" the cattle ranching supporters in the media for over a year, and then, intentionally generate false investigative and intentionally mischaracterized and patently false/fake work product for purposes of heinously and unreasonably escalating force and killing Finicum and others on January 26, 2016 – in direct violation of state and federal law.

The video(s) of the traffic stop incident speak for itself --- decedent's hands are observed to be raised in the air when he is shot three (3) times in the back by Defendants as federal agents stand-off and observe the fruit of their on-going complex *gas-lighting*[3] operation and disinformation campaign waged against Finicum and the cattle ranching community and supporters. Finicum is observed feverishly maneuvering to avoid Defendants' Deadman's Curve Roadblock on video and mitigating the loss of life of law enforcement officer when he commanded his vehicle off the roadway into a snow-bank. Yet the videos demonstrate Finicum and the passengers being assaulted by state and federal agents as he tries not to hit them.

Plaintiffs seek to further prove Defendants are likewise liable on derivative claims such as common law conspiracy to kill Finicum and otherwise deprive him of his inalienable rights protected by the Constitution of the United States of America. These protections also apply to defendants' exhaustive efforts to implement a complex disinformation campaign designed for the purpose of killing Mr. Finicum and others.

The SAC further alleges Defendants' failure to train and negligent supervision and/or grossly negligent hiring substantially contributed to or was the proximate cause and a substantial factor in the death of LaVoy Finicum.

Plaintiffs maintain under no reasonable or legal standard should the passengers or decedent

---

[3]     Instances can range from the denial by an <u>abuser</u> that previous abusive incidents occurred, to belittling the victim's emotions and feelings, to the staging of bizarre events by the abuser with the intention of disorienting the victim. The goal of gaslighting is to gradually undermine the victim's confidence in their own ability to distinguish truth from falsehood, right from wrong, or reality from delusion, thereby rendering the individual or group pathologically dependent on the gaslighter for their thinking and feelings.

have been subjected to an all-out retaliatory attack by local, state and federal agents who reigned down an onslaught of militaristic assault-style firepower similar to that observed during the Ruby Ridge ambush – especially on the basis of a pretextual basis for an illusory traffic infraction. Pending now is a F&R (ECF No. 161) issued by the Magistrate Judge with regards to the following dispositive motions, responses and subsequent replies:

The motions *supra* have been supported and opposed by the parties with hundred(s) if not thousands of pages of filings and transcripts and subjected to several hours of oral argument before the Magistrate Judge on March 6, 2020. See ECF No. 156

On July 24, 2020, the Magistrate Judge entered a seventy-three (73) page set of Findings and Recommendations (F&R (Doc.161)) urging the Court to grant Defendants USA's Motion to Dismiss and dismissing all claims against it without jurisdictional discovery. The F&R, further, urges the Court to grant Defendant Greg T. Bretzing's Motion to Dismiss which essentially seeks dismissal of all claims against him with prejudice on personal jurisdiction and defective service of process grounds.

The F&R recommends that all State Defendants Motions to Dismiss should be <u>granted in part and denied in part</u>. The Magistrate found that the claims against Defendants Travis Hampton, Trooper #1, and Trooper #2 [should relate back] to the original complaint and be deemed timely, that the claim for excessive force under 42 USC 1983 should be dismissed with prejudice on the grounds for failure to state a claim against Defendant Kate Brown as well as the municipal liability claims against all State Defendants should be dismissed, as well as, Plaintiffs' conspiracy claim should be dismissed with leave to amend to provide a more definite and certain statement as to the State Defendants – only.

Moreover, the F&R urged the Court to grant the County Defendants' motion to dismiss including claims against David M. Ward and Steven E. Grasty with prejudice, and that the claims against Harney County for municipal liability, conspiracy, negligence and battery should be dismissed with leave to amend. The Magistrate went on to recommend the County Defendants' Special Motion to Strike be denied with leave to refile.

Lastly, the F&R determined the claim(s) under 42 USC 1983 and Plaintiffs' negligence, assault and battery are personal to decedent and should therefore be dismissed except as to the claim by Plaintiff D. Jeanette Finicum in her capacity as the personal representative and administrator for the state of Robert LaVoy Finicum.

## STANDARD OF REVIEW

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn,* 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc) (holding that the court must review *de novo* magistrate's findings and recommendations if objection is made, "but not otherwise").

Although in the absence of objections no review is required, the Magistrates Act "does not preclude further review by the district judge[ ] *sua sponte* ... under a *de novo* or any other standard." *Thomas,* 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed.R.Civ.P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record." Alexander v. Williams, No. 2:13-CV-1176-PK, 2015 WL 478444, at *1 (D. Or. Feb. 4, 2015), aff'd, 653 F. App'x 516 (9th Cir. 2016) "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* The review is therefore plenary, with the District Court considering "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

The court may "accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." U.S.C. § 636(b)(1). Ed. 2d 424 (1980)). "The

Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. . The Court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed." *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 742-43 (D.S.C. 2010) (citing *Mathews v. Weber,* 423 U.S. 261, 270–71, 96 S. Ct. 549, 46 L.Ed.2d 483 (1976)).

### PERTINENT FACTS ALLEGED IN THE
### SECOND AMENDED COMPLAINT

On April 12, 2014, LaVoy Finicum peacefully gathered [as an interested cattle rancher from the state of Arizona] near a cattle impound site in Bunkerville, NV.  SAC at ¶ 67. The Bureau of Land Management("BLM") through Daniel P. Love and other federal agents took up an aggressive, military style posture in an effort to execute a taking order issued by a district court.  After the operation fell apart partly based on fake and manufactured documents, reports, information and other intentionally false assessment findings; The BLM, by and through, Daniel P. Love initially refused to  vacate the area, abandon the operation, release  the cattle impounded and belonging to fellow rancher namely, Cliven Bundy. *Id.*

This same faction of federal agents engaged in wide-spread fabrication and disinformation campaign  related to the manufactured conflict with the cattle ranching community.  Love and others provoked a violent confrontation with Bundy and the cattle ranching community and other supporters. Id at ¶ 68.  Love and others intentionally manufactured false and misleading threat assessment documents and knowingly and intentionally disseminated those same false and misleading documents and information to other federal, state and local law enforcement (throughout the Midwest and in Oregon) including demonstrably and flagrantly false information about LaVoy Finicum including, inter alia, his leadership involvement in a purported militia. Id. at ¶ 69.  The FBI and BLM, through internal documents, analyzed, were aware and determined many if not most local sheriffs were likely hostile toward the BLM, Love and the rogue policy to

impound cattle. It was widely known that local sheriffs did not support federal action against the Bundy's, the cattle ranching community or its supporters. Id. at ¶¶ 70-71.

Actions by the local Sheriffs sent a clear message to the BLM, FBI and other federal agents who were, in fact, observed threatening to use lethal force to kill peaceful cattle ranching supporters repeatedly during the 2014 Bunkerville demonstration(s). Id. at ¶ 73. As a result, top-level intervention from Washington, D.C. directed Love and other federal agents to withdraw and release Bundy's cattle effectively ending the Bunkerville operation in 2014. Id. at ¶ 74. This enraged Love, the BLM, the FBI and US Attorneys.

SA Love organized, planned and confederated with other local, state and federal agents including Bretzing to carry out arguably one of the largest militaristic, intelligence manufacturing disinformation campaigns, which relied on tactical weapons and logistics operations during the post-Bunkerville targeting of LaVoy Finicum and others. As well, it was the federal agents intent to provoke Bundy and the cattle ranching supporters, including Finicum, in such a fashion that would clearly and maliciously injure or kill people. Id. at ¶ 81.

It was also the intent of the United States by and through Daniel P. Love, Greg T. Bretzing and others to silence political dissent of individuals who peacefully supported the ranching community and opposed militaristic style operations; whereas federal agents designed such a plan and schemed to target those supporters and apply constitutionally unreasonable force and/or threaten the use thereof against LaVoy Finicum and others for no legitimate law enforcement purpose. Id. at ¶ 83. Thereafter, BLM, the FBI and its federal agents continued to track LaVoy Finicum and maintained detailed and manufactured/fake informational documents and files on him and his day-to-day dealings. For example, defendants purported in their narrative that Finicum was involved with a militia, that he was making bombs, that he was stock piling weapons, that he qualified as a high value target – i.e., a leader of a militia group and other preposterously false/fake information was disseminated by defendants to local, state and federal authorities. Id.

at ¶ 85.

Federal agents including Love also acquiesced to the fabrication of said information. They edited, omitted or reported this misleading and false information echoed repeatedly by defendants, based on a falsified and "padded" file which continued to grow to include other and further false/fake/misleading information to bolster the conclusion that Finicum presented a risk of violence to law enforcement when in fact he did not. However, federal agents and others affirmatively knew the narrative was fake and federal agents were never in possession of any legitimate intelligence or other information which supported such an assessment that could lead to such a fantastical conclusion. Id. at ¶¶ 86-87.

Aside from this flagrantly false and untrue information generated by federal agents about LaVoy Finicum prior to the January 26, 2016 traffic stop – there was no other information that would support a finding that Finicum constituted a threat to law enforcement or that he was confrontational with anyone let alone federal or other law enforcement agents. *Id.* At that point, Defendants deemed it necessary to *dirty up* Mr. Finicum and turn him into a domestic terrorist on paper in the hopes to garner local, state and other community support in their efforts to kill him and others. Defendants relied on main-stream media outlets as well as federal investigative disinformation campaigns to gain acquisition of expansive federal and legal resources from among other places the "domestic terrorism" division of the DOJ which otherwise they would not have access too. This most likely included the use of FISA warrant(s) among other things which Plaintiffs proffer on information and belief were maliciously obtained for the purpose of breaking into Mr. Finicum's home, planting surveillance equipment, and using it to eavesdrop on him and his family by, among other things, recording audio and video of him and his family's conversations for over a year leading up to his death on January 26, 2016.

Defendants pandered the false and fabricated narrative and further intentionally withheld exculpatory evidence to the media and the public. They also allowed local and state law

enforcement throughout the Midwest and Northwestern United States; to believe Finicum was an anti-government [ i.e., sovereign citizen] domestic terrorist who hated the police and the government which they knew was false and untrue. Id. at ¶ 88. Federal agents intended their disinformation and narrative about Finicum and others to cause a heightened alertness and law enforcement readiness and ultimately the application and/or escalation of terminal and constitutionally unreasonable force to be applied to Mr. Finicum and others. *Id.*

Further, as a result of and/or based on the false reports, false documents and other memorialized law enforcement information and work-product found in federal investigation files and other reporting and record keeping, and for which federal agents herein knew was false and not true – Federal agents such as Love, Lauro and Bretzing and others caused Finicum's activities to be tracked without a legitimate law enforcement purpose – regardless that no inculpatory information was obtained therefrom. Id. at ¶ 102. As previously stated above, the United States, by and through these federal agents named herein and throughout, monitored, surveilled, and surreptitiously broke into the Finicum's home without his knowledge, consent and without a valid search warrant issued by a competent judge based on probable cause that Finicum had committed a cognizable crime. Id. at ¶ 103. Federal agents secretly installed listening and other surveillance devices without lawful justification in violation of Arizona state and federal law.

Through the Wooten OIG Report it is now known that federal agents intentionally covered up and refused to disclose exculpatory information which demonstrated documents, reports and other information memorialized and disseminated by local, state and federal agents about Finicum was knowingly false and untrue. Id. at ¶ 104. The Wooten OIG Report further demonstrates the DOJ knew about this rogue faction of federal agents who were intentionally targeting Finicum and others. Id. at ¶ 105. The United States investigated these allegations internally and, indeed, concluded that it was in-fact true that what happened in the run up to the Bunkerville operation, and the post-Bunkerville targeting **"would shock the conscious of the public and greatly**

**embarrass the United States if fully disclosed"**. Id. at ¶ 110

Indeed, the widespread misconduct, scheme and plan described above, and the conduct of the federal agent defendants and others named herein, was a substantial factor or substantially contributed to the leadup, preparation and plan to kill LaVoy Finicum and others on January 26, 2016. Id. at ¶ 111

BLM and FBI leadership coordinated with SA Love to receive and distribute intentional and demonstrably false/fake individual profiles including that of LaVoy Finicum which was compiled by the Center for Biological Diversity. Id. at ¶ 112. They used these fake profiles to cause a gas-lighting effect or otherwise deceive local and state officials and enlist local and state government resources, law enforcement sympathizers and community support [in the furtherance of said scheme to kill LaVoy Finicum] and others. Id. at ¶ 133 Defendants with the assistance of local and state officials distributed the false/fake information including the profile of LaVoy Finicum to local/state government decision makers over the State of Oregon, Harney County, Oregon and the Oregon State Police. Id. at ¶ 134

As a result, Defendants entered into an agreement with a common goal to implement the fake traffic stop on a state highway 395 – and while Finicum and others were seized, Defendants further conspired, confederated and subsequently did utilize an onslaught of militaristic fire-power against the occupants of the vehicles whom they had already anticipated and expected would flee (for their own lives) into a second trap – a Deadman's Curve Roadblock; whereas Defendants reigned down more fire-power from the ambush team put in place to kill Finicum and the others inside his vehicle. Id. at ¶ 136

As planned, Defendants killed LaVoy Finicum, mercilessly, while he struggled to maintain footing in the high banked snow with his hands raised, helpless and pleading with them. As he bobbled in the snow to maintain his footing, Finicum was shot three times in his back, and fell in the snow. His body remained in that position for up to twelve (12) hours without any first aid or

CPR prior to his body being removed. Local, state and federal agents remained on the scene for the next 10-12 hours altering, moving or hiding evidence, corroborating their stories with one another and rehashing the conduct and manufacturing their own facts to report back to supervisors and leadership at the OSP, FBI, DOJ and other state and federal institutions. All of this against state and federal law enforcement policy and procedure most likely to escape further scrutiny and objective review in violation of Plaintiffs First, Fourth, Fifth and Fourteenth Amendment rights which was designed to block Plaintiffs' access to the Courts among other things.

Moreover, it was determined a shot was fired downward into the roof of Finicum's vehicle which to this day has not been identified or assigned to any federal or state actor. Passenger Ryan Bundy was shot in the top of his shoulder possibly by the targeted rooftop assault which if it turns out to be the case --- a jury could conclude was another attempted "kill shot" which further corroborates that Defendants' plan was to kill Mr. Finicum and the passengers in the back seat of Finicum's truck.

## OBJECTION NO. 1
### (Failure to Resolve and Weigh Facts in Favor of Plaintiff)

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration omitted). With this in mind, the Court noted "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Slayden v. Schulz Boat Co., Inc., 3:13-CV-02259-AC, 2014 WL 7642584, at *2 (D Or Oct 28, 2014), report and recommendation adopted in part, rejected in part, 3:13-CV-02259-AC, 2015 WL 225731 (D Or Jan 16, 2015)

Throughout the entire findings and recommendations (ECF No. 161), the Magistrate

continuously and perpetually failed and refused to acknowledge and weigh the facts in the Second Amended Complaint in favor of Plaintiff and further failed to draw reasonable inferences from those well plead facts. It was clear to Plaintiffs that the Magistrate believed Plaintiff could not prove the facts and that recovery was remote when she couched her position as Plaintiffs factual position was irrelevant, stating:

> If you refer back to some of the other allegations, then you're back to, you know, things like the Bunkerville allegations, which, frankly, <u>I think are totally irrelevant</u>. But what we're talking about here is the wrongful death of Mr. Finicum, and we're not talking about Bunkerville or any of the issues that you claim arise out of that particular incident.

See (ECF No. 156, p.19 at li. 23-24; p.20 at 20, li. 1-4)

The Magistrate cannot properly weigh the facts and draw all reasonable inferences in favor of Plaintiff is she believes conduct alleged post-Bunkerville leading up to Finicum's death are irrelevant. This failure caused the Court to recommend dismissal in nearly each of Plaintiff's claims. Hence, the F&R is erroneous and should not be adopted by the district court.

## OBJECTION NO. 2

A Rule 12(b)(1) motion may be brought as a facial or factual attack. <u>Gould</u> <u>Electronics Inc. v. U.S.</u>, 220, F.3d 169, 176 (3rd Cir. 2000) The burden is on the plaintiff to prove subject matter jurisdiction in response to a Rule 12(b)(1) motion. <u>La Reunion Francaise SA v. Barnes</u>, 247 F.3d 1022, 1026 (9th Cir. 2001)

Here, the Magistrate Judge found the federal defendants' (i.e., federal agents for the FBI and BLM) decision to investigate and arrest Finicum, select the location, the manner, and the timing of the arrest, involved the exercise of a protected discretion, and that Defendants conduct was protected by the discretionary exception to the Federal Tort Claims Act as follows:

> "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency

or an employee of the Government, whether or not the discretion involved be abused."

See 28 U.S.C.A. § 2680(a)

As a result, the F&R concluded the Court lacked subject matter jurisdiction and the United States' Motion to Dismiss should be granted without jurisdictional discovery. The Magistrate Judge recommended the claims against the United States for wrongful death and negligence should be dismissed without prejudice.  See ECF No. 161 at p.21, ¶ 1.

In this instance, Defendant made a factual attack on jurisdiction. The district court reviewed evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. _Robinson v. United States_, 586 F.3d 683, 685 (9th Cir. 2009). However, the F&R fails to consider whether a dismissal under 12(b)(1) _was inappropriate_ to the extent the motion was based on genuinely disputed facts and whether  the jurisdictional and substantive issues were "so inextricably intertwined" that the resolution of the jurisdictional question required the court to reach the merits of the plaintiff's claims. _Safe Air_, 373 F.3d at 1039 (quoting _Sun Valley Gas, Inc. v. Ernst Enters._, 711 F.2d 138, 139 (9th Cir. 1983)).

Here, the motion involves issues that go  to the heart of the merits of the claim(s), including the falsities and the intentional fabrications/fake documents and information manufactured by Defendants and applied to Finicum which were purportedly used to make the decisions the Magistrate believes are discretionary.  Plaintiff complains of this throughout the litigation but neither Defendant nor the Court has addressed this problem.   The Magistrate should have applied a summary judgment standard and then declined to  reach the jurisdictional question until the issues were ripe under a substantive motion or the case proceeding to trial. _Young v. United States_, 769 F.3d 1047, 1052 (9th Cir. 2014).

Plaintiffs' chief argument is that the alleged misconduct of Greg T. Bretzing, Joseph Astarita, Daniel P. Love and other federal agents fall outside of the FTCA's discretionary-function exception.

The FTCA permits suits against the United States for personal injuries caused by the wrongful acts of federal employees acting within the scope of their employment under circumstances in which a private person would be liable to the plaintiff. *See* 28 U.S.C. § 1346(b)(1). Although the FTCA's waiver of sovereign immunity is broad, Congress has excepted certain claims from its purview, including "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see Berkovitz v. United States,* 486 U.S. 531, 535, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

The discretionary-function exception has two requirements. First, the conduct alleged must involve an element of judgment or choice. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954; *Palay,* 349 F.3d at 427. Conduct cannot be discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954; *see Palay,* 349 F.3d at 427.

Second, given that the exception "protects only governmental actions and decisions based on considerations of public policy," the challenged discretionary conduct must amount to a permissible exercise of policy judgment. *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954; *see Gaubert,* 499 U.S. at 323, 111 S.Ct. 1267; *Palay,* 349 F.3d at 427–28. The government actor's intent is of no consequence to this analysis, "[n]or must the actor belong to the policymaking or planning ranks of government in order for the exception to apply." *Palay,* 349 F.3d at 428. All that matters is "the nature of the actions taken and ... whether they are susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267; *see Varig Airlines,* 467 U.S. at 814, 104 S.Ct. 2755; *Palay,* 349 F.3d at 432.

Stripped to bare essentials, Plaintiff's claims are, in substance, that decedent was intentionally targeted, harassed and strategically setup by a rogue faction of federal agents who intentionally employed the use of local, state and federal law enforcement resources to commit intentional

homicide against Finicum and others absent probable cause. Defendants intentionally generated law enforcement work-product that was false/fake and not true about Finicum – which federal agents such as Love, Bretzing and others relied on to escalate force and employ military style efforts and resources to effectuate a traffic stop when no crime had been committed at the refuge or during the traffic stop and certainly nothing that justified SWAT and the HRT Team's clandestine operational response.

When determining the actual nature of an action, one must look to the essence or gravamen of the claim rather than merely rely on the label(s) provided by the parties. See Quitmever v. Theroux, 144 Mont. 302, 311, 395 P.2d 965, 969 (1964); Erickson v. Croft, 233 Mont. 146, 153, 760 P.2d 706, 710 (1988). Here, the Magistrate failed to consider the facts in the SAC alleging federal agents knowingly initiating false reports about LaVoy Finicum between 2014-16 which was transmitted to local and state law enforcement authorities who were tasked with responding to emergencies involving danger to life or property.

Oregon SWAT responded to a simple traffic stop as a result based on the flagrantly false/fake and fraudulent information, compiled and maliciously disseminated and reported by the federal agents; whereas Oregon state law imposes a jail sentence of 30 days because the SWAT deployment resulted in the death of LaVoy Finicum and serious injury to Ryan Bundy. See ORS 162.375. As such, the FTCA affords a basis for invocation of this court's jurisdiction despite the F&R analysis which did not contemplate whether the material facts in Plaintiff's SAC were inextricably intertwined with the facts the Magistrate relied on to recommend dismissal with prejudice on Rule 12(b)(1) grounds. Indeed, the discretionary exemption should not apply under this scope of analysis at this stage in the litigation – absent Plaintiff being allowed to conduct discovery.

In is clear, the Magistrate Judge missed the subtle strand in Plaintiffs' argument when she stated "Although Plaintiffs argue that the federal officers acted based on a vindictive or discriminatory animus, such considerations are irrelevant for purposes of the discretionary

exemption. The F&R went on to state the following:

> "The focus of the *inquiry* is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to the policy analysis."

See F&R at p.20, ¶ 2.

The F&R fails to consider that Plaintiffs assert—under the umbrella of "malicious and bad faith conduct" and consistent with the Second Amended Complaint("SAC")—that the federal agents submitted knowingly malicious and false information for the purpose of deceiving the public as well as local and state authorities which Plaintiffs allege was the direct and proximate cause of Finicum's death. The Magistrate stated during oral argument:

> If you refer back to some of the other allegations, then you're back to, you know, things like the Bunkerville allegations, which, frankly, I think are totally irrelevant. But what we're talking about here is the wrongful death of Mr. Finicum, and we're not talking about Bunkerville or any of the issues that you claim arise out of that particular incident.

See (ECF No. 156, p.19 at li. 23-24; p.20 at 20, li. 1-4)

The court refused to acknowledge this causal nexus and overlooked it at the dispositive motions stage. Plaintiff's position is that providing knowingly false information *en route* to or otherwise precipitating state and federal criminal investigations and foreseeable prosecution(s) is 'sufficiently separable' from the 'protected discretionary decision.'

In *Reynolds v. United States*, the Seventh Circuit Court of Appeals asked the government whether a law-enforcement officer involved in a criminal investigation has discretion to report information that the officer knows to be false. The Court was surprised to find that counsel answered yes and cited *Gray v. Bell*, 712 F.2d 490 (D.C.Cir.1983) in support. *The Court* rejected *Gray*, stating the Government's reliance on this case was not well founded and could not be right after a close reading of *Gray* and other related cases.

In *Gray,* the D.C. Circuit considered whether prosecutors who failed to call certain witnesses

before a grand jury, omitted mention of exculpatory evidence, and misrepresented dates in a timeline of criminal activity had nevertheless engaged in activities that were not "separable from a protected discretionary function." 712 F.2d at 494, 513–16. The court concluded that the alleged misconduct was **"inextricably tied to the decision to investigate and prosecute and the presentation of evidence to the Grand Jury,"** and that there was "no meaningful way in which the allegedly negligent investigatory acts could be considered apart from the totality of the prosecution." *Id.* at 516.

*As in Reynolds*, Plaintiff alleges the federal agents fueled the investigation and ultimately the seizure and shooting and excessive by deadly force which caused the death of Finicum by their use of knowingly engineered and false information about him and others. How can that be a *discretionary* decision when it is codified by Oregon state law? *See* ORS 162.375, (Initiating filing and/or disseminating False Information/Reports). In *Reynolds, the Court* determined that it cannot. A federal investigator's decision to lie and/or certify a lie in a false report, affidavit or under oath is sufficiently separable from the discretionary decision to prosecute and in this case investigate. *See Moore v. Valder,* 65 F.3d 189, 197 (D.C.Cir.1996) ("Disclosing grand jury testimony to unauthorized third parties ... is *not* a discretionary activity nor is it inextricably tied to matters requiring the exercise of discretion."); *Limone v. United States,* 271 F.Supp.2d 345, 356 (D.Mass.2003) (rejecting argument that law-enforcement officers had discretion to suborn perjury or falsify evidence); *Tri–State Hosp. Supply Corp. v. United States,* 142 F.Supp.2d 93, 100–01 (D.D.C.2001) ("With respect to Tri–State's claims that Customs officials falsified records and lied to bring about a prosecution, ... [l]ying under oath to preserve barred claims is not a protected act under the discretionary function exception."), *rev'd on other grounds,* 341 F.3d 571 (D.C.Cir.2003); *Wang v. United States,* No. 01–1326, 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001) ("To be actionable as malicious prosecution, the investigator's conduct must be independent or quasi-independent from the non-actionable decision to prosecute and must constitute the kind of wrongful conduct that is designed to corrupt the fairness of

a prosecution."). There can be no argument that perjury is the sort of "legislative [or] administrative decision [ ] grounded in social, economic, and political policy" that Congress sought to shield from " 'second-guessing.' " *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. 2755. As in *Reynolds*, the discretionary-function exception has no application in the instant case.

The Seventh Circuit's approach makes a great deal of sense. By reading § 2680(a) independently from § 2680(h), courts have construed § 2680 "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States,* 556 U.S. 303, 313 (2009). With the addition of the law enforcement proviso, such behavior *is no longer excepted from the FTCA's waiver of sovereign immunity* under § 2680(h).

However, the F&R accepted the FBI's conclusions in the exhibits for the purpose of granting the 12(b)(1) Motion which was not necessary or proper. For example, the FBI had agent Katherine Armstrong race to draft an apparent backdated declaration in support of arresting Ammon Bundy, Jon Ritzheimer, Joseph O'Shaghnessy, Ryan Payne, Brian Cavalier, Shawna Cox and Peter Santilli for allegedly Conspiring to Impede Officers of the United States from discharging their official duties through the use of force, intimidation, threats, in violation of Title 18 USC 372 – after LaVoy Finicum was shot and killed. Plaintiff's conclusion is that this was a cover-up after the fact else defendants would have already filed their charging documents under seal.

This Court is not bound to accept the conclusions of the FBI and BLM in a civil case. It was legal error for the magistrate to do so in as much as Plaintiffs dispute many if not all of those factual assertions, and certainly the conclusions drawn by the agents of the federal government while explaining or excusing their conduct prior to and during the traffic stop.

**OBJECTION NO. 2a:** The Magistrate Judge failed to consider and determine whether the jurisdictional and substantive facts were inextricably intertwined and would be improper to resolve on a 12(b)(1) Motion. Therefore, the F&R should not be adopted by the district court.

**OBJECTION NO. 2b:**     The Magistrate erroneously considered exhibits filed by Defendants which the court utilized to recommend dismissal with prejudice. The exhibits were contained within the Request for Judicial Notice and accompanied by a 12(b)(1) Motion. Plaintiffs object to the extent they represent inextricably intertwined facts which support the merits of the Plaintiffs case.

**OBJECTION NO. 2c:**     The Magistrate erroneously barred Plaintiff from conducting jurisdictional discovery especially without considering whether a mixed question of fact and law existed regarding the court's jurisdiction as it applied to the merits of the case i.e., whether the jurisdictional facts were intertwined with the merits of the case.

**OBJECTION NO. 2d**:      The videos of the incident were filed but never served on Plaintiffs and they have not been reviewed by Plaintiffs' counsel. But to the extent they resemble what is readily available on the internet – the poor video quality creates an authentic dispute as to whether Finicum had a firearm and whether he was merely suring up his footing when he stumbled in the snow rather than purportedly reaching for a weapon. Since the parties have opposing positions as to what the videos depict, and to the extent the F&R has impermissibly weighed the self-serving and uncorroborated documents of Defendant(s), and as a result, resolved the poor quality of the video prior to any Rule 56 Motion in favor of the federal agents prior to any discovery has taken place – Plaintiff objects to the merits being resolved without discovery and without the trier of fact weighing the evidence. Plaintiff further objects on the basis of *Witt v. West Virginia State Police*.[4]

Regarding all claims against federal agencies, Plaintiffs concede the FBI and BLM are subsumed into the FTCA claim against the United States and therefore should be abandoned. For the reasons stated above, the district court should not adopt the findings and recommendations.

**OBJECTION NO. 3**
**(Discussion)**

For the same reasons found *supra* in Objection 1, Plaintiffs also objection to the F&R as follows:

Plaintiffs agree the FBI agents are empowered to detect and prosecute crimes (F&R at pp.17-18) however, that analysis does not comport with the allegations in the SAC which alleges the FBI

agents created and manufactured documents, work-product, narratives and criminal conclusions on purpose as demonstrated by the criminal narrative about LaVoy Finicum which preceded him while he traveled in Oregon. Defendant, here, is not cloaked with the power to make arrests or escalate force without a valid warrant based on probably cause. In this case, the Defendants manufactured the content and then acted on their own fabrications. No power to arrest flows from the nature of that conduct.

The F&R further states:

As part of this mission, the FBI is authorized to "make arrests without warrant for any offense against the United States committed in their presence or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." 18 U.S.C. § 3052. This includes damage or "depredation against any property of the United States, or of any department or agency thereof."
18 U.S.C. § 1361.

See F&R at pp.17-18

The F&R cannot rely on this statement to presume probable cause because 1) Plaintiff has alleged an adverse possession took place at the refuge not a depredation of federal property, and certainly not anything close to being felonious depredation or conduct, and/or alternatively, 2) Defendants have not nor can they claim anything Finicum did at the refuge rose to more than a misdemeanor. But, according to the law cited by the F&R, warrantless arrests are not permitted by federal agents pursuant to 18 USC 3052. To the extent a "less crime" may be argued, in the alternative, by the government – This, too, is a large problem for the federal agents. To the extent there may be an argument that supports Finicum possibly engaging in misdemeanor conduct at the Refuge, Defendant agents will be hard pressed to create a *colorable excuse* for why they attempted to arrest him with no warrant on January 26, 2016.

Further, the Dept. of Justice("DOJ") agrees with Plaintiffs that the conduct alleged by Plaintiffs cannot arise to anything more than a claim for adverse possession under the facts at the

Refuge -- which cannot-nor-ever-will be actionable under state or federal criminal law according to the DOJ. Plaintiff hereby agrees with the DOJ.

To the extent, the F&R weighs the facts in favor of Defendant relies the United States' rendition and mischaracterization of the facts to determine jurisdiction and/or that probable cause existed – the recommendation is erroneous and contrary to the law. The DOJ website states:

> This section prohibits actual physical damage or destruction of both real and personal property, **but mere adverse possession of that property without physical harm is insufficient to violate the law**. *United States v. Jenkins*, *supra*, 554 F.2d at 785. Section 1361 is a specific intent crime, *see United States v. Jones*, 607 F.2d 269, 273-74 (9th Cir. 1979), *cert. denied*, 444 U.S. 1085 (1980), and the government must prove that the defendant acted willfully; that is intentionally, with knowledge that he/she is violating a law. *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir. 1972); *United States v. Moylan*, 417 F.2d 1002, 1004 (4th Cir. 1969), *cert. denied*, 397 U.S. 910 (1970).
>
> -and-
>
> The government is not required to prove that defendant knew the property belonged to the government, because government ownership is "merely a 'jurisdictional fact'." *United States v. LaPorta*, 46 F.3d 152, 158 (2d Cir. 1994), *quoting United States v. Feola*, 420 U.S. 671 (1975). In fact, title or possession by the United States is not a necessary element of this offense, if the property in question was being made for the United States.
>
> -and-
>
> The government must present evidence establishing value of damage. *United States v. Seaman*, 18 F.3d 649, 651 (9th Cir. 1994). The penalties for violations of this section are tied to the extent of the property damage. As amended on September 13, 1994, if the damage exceeds $100, the defendant is subject to a fine of up to $250,000, ten years imprisonment, or both. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 330016, 108 Stat. 1796, 2146-47 (1994). When property damage does not exceed $100, the offense is a misdemeanor punishable by a fine of up to $100,000, one year imprisonment, or both. *See* 18 U.S.C. §§ 3559(a), 3571.

*See Exhibit A.*

The F&R goes on to rely on the AGG DOM to justify the conduct of the federal agents, but does not consider several issues relevant to this analysis. First, the manual presumes agents are

conducting themselves in good faith according to their oath of office which the SAC alleges is not the case; and 2.) the exhibits fail to address or resolve Plaintiffs claims surrounding **tacit unwritten** policies instituted by the federal defendants between 2014-2016 leading up to and including the intentional killing of LaVoy Finicum.

Further, contrary to the F&R, no choice can exist between different investigative methods when one of the choices allegedly is "manufacture, falsify, and maliciously disseminate federal documents, work-product, reports and other information generated and disseminated in the furtherance of creating a false/fake narrative about a U.S. Citizen (and for the purpose of employing local, state and federal resources to kill them) between 2014-2016. Further, it cannot be used to accept or rule that any depredation of federal property occurred when, in fact, those issues also go to the merits of the case especially when Plaintiffs dispute the same. This demonstrates the F&R has already resolved those facts and weighed them in favor of the United States which constitutes error if adopted. Moreover, the SAC alleges federal agents knew the occupation was nothing more than an adverse possession. ECF No. 89 at ¶¶ 145-175. Section 1666 of the DOJ resource manual agrees that no federal crime is cognizant in this situation according to the well plead facts in the SAC if taken as true:

> "18 USC 1361 prohibits actual physical damage or destruction of both real and personal property, but mere adverse possession of that property without physical harm is insufficient to violate the law. *United States v. Jenkins*, *supra*, 554 F.2d at 785. Section 1361 is a specific intent crime, *see United States v. Jones*, 607 F.2d 269, 273-74 (9th Cir. 1979), *cert. denied*, 444 U.S. 1085 (1980), and the government must prove that the defendant acted willfully; that is intentionally, with knowledge that he/she is violating a law."

**OBJECTION NO. 3:**    The F&R erroneously characterizes the conduct of federal agents as an investigation of Finicum i.e., detecting of a crime, as well as the vehicle stop and roadblock operation as being discretionarily involving the exercise of judgment and choice on the part of federal officials. Plaintiffs' SAC alleges facts that federal agents were not detecting criminal conduct but instead intentionally manufacturing and falsifying facts, documents,

reports, narratives in the furtherance of creating a criminal persona so agents could percieve jurisdiction to kill Finicum --- Indeed, the SAC alleged in ¶¶ 67 – 130 that the conduct of the federal agents generated and manufactured criminal conclusions, intentionally, without any element of detection ever being involved (meaning it was thought up in the heads of federal agents such as Daniel P. Love, Greg T. Bretzing etc. after the Bunkerville operation failed) who purposed manufactured information and other fraudulent content to be relied on to kill Finicum and others. (See F&R at p.19, ¶ 2)

As such, the F&R should not be adopted by the district court and/or otherwise Plaintiffs request leave to amend and correct any technical deficiencies the Court deems necessary, or otherwise Plaintiffs request immediate discovery.

**OBJECTION NO. 4**
**(Discussion)**

The F&R asserts Plaintiffs' claims for negligent hiring, supervision, and retention of agents and employees must fail pursuant to Nurse v. United States, 226 F.3d 996 (9th Cir 2000). Here the Ninth Circuit ruled as such and Plaintiffs concede that is the case here. However, the *Nurse Court* made other findings which apply to this case and demands the F&R not be adopted by the district court as follows:

In Nurse, the complaint alleged the policy-making defendants promulgated discriminatory, unconstitutional policies which they had no discretion to create. In general, governmental conduct cannot be discretionary if it violates a legal mandate. *See United States Fidelity & Guaranty Co. v. United States,* 837 F.2d 116, 120 (3d Cir.) *cert. denied,* 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988). The Ninth Circuit ruled that because "it cannot be determined at this stage of the proceedings whether the acts of the policy-making defendants violated the Constitution, and, if so, what specific constitutional mandates they violated. **These are questions that will be fleshed out by the facts as this case proceeds toward trial. They are not questions that can always be easily answered on a motion to dismiss."**

The Court went on to opine that because the alleged decisions of the policy-making defendants may have been non-discretionary, we must reverse the district court's dismissal of plaintiff's FTCA claims based on those decisions.

Here, Bretzing is a policy-making defendant who it is alleged engaged in a conspiracy and ultimately followed through with the conspiracy to commit unconstitutional and/or lethal force on LaVoy Finicum on January 26, 2016. Questions surrounding Bretzing's conduct will be the facts and discovery in this case as it proceeds to trial. These questions cannot be easily answere at the motion to dismiss stage.

**OBJECTION NO. 4:**   The F&R brushed Plaintiffs facts off as "irrelevant" and in so doing erroneously weighed each Plaintiffs' facts in favor of the Defendants and determined, among other things, that Bretzing's decisions as a head law enforcement policy-maker for the United States had engaged in discretionary conduct. As a result, the Magistrate erroneously barred Plaintiffs requests and attempts to take jurisdictional discovery on him and other Defendants.

Plaintiffs object because the facts should have been weighted in favor of Plaintiffs and a ruling at the Motions to Dismiss stage should have been deferred to allow the issues and factual disputes between the parties to be fleshed out as the claims proceeded through discovery towards trial pursuant to the holding in Nurse v. United States, 226 F.3d 996 (9th Cir 2000).

*See* ECF No. 156, p.19 at li. 23-24; p.20 at 20, li. 1-4.

**OBJECTION NO. 5**
**(Discussion)**

Plaintiff has also made claims in the SAC which sound in false imprisonment, invasion of privacy, malicious prosecution, assault and battery and negligence based on the law enforcement proviso against the United States and based on the acts of federal agents. The Ninth Circuit also determined in *Nurse* that those groups of claims fall within the FTCA's "law enforcement officer" proviso, <u>28 U.S.C. § 2680(h)</u>, and, at this stage of the proceedings, do not appear to be protected by the discretionary function exception. *See, e.g., <u>Caban v. United States</u>,* <u>671 F.2d 1230, 1233 (2d Cir.1982)</u> (detention of suspect at international airport did not "involve a choice between competing

policy considerations"); _Morales v. United States,_ 961 F.Supp. 633, 636 (S.D.N.Y.1997) (decision

to arrest and prosecute plaintiffs for obstruction of justice did not involve consideration of public

policy); _Patel v. United States,_ 806 F.Supp. 873, 878 (N.D.Cal.1992) (negligent execution of arrest

warrant did not involve consideration of competing policy options).

**OBJECTION NO. 5:**

      The F&R does not mention much less analyze or consider the law enforcement proviso which states:

> "'_Provided_ That, with regard to acts or omissions of investigative or law
> enforcement officers of the United States Government, the provisions of this
> chapter and section 1346(b) of this title shall apply to any claim arising, on or
> after the date of the enactment of this proviso, out of assault, battery, false
> imprisonment, false arrest, abuse of process, or malicious prosecution. For the
> purpose of this subsection, 'investigative or law enforcement officer' means any
> officer of the United States who is empowered by law to execute searches, to
> seize evidence, or to make arrests for violations of Federal law"

      The F&R recommends dismissal of the United States from suit when the proviso clearly

demonstrates causes of action exist against the United States for conduct by federal law enforcement

officers associated with their acts and omissions to the extent they have engaged in assault, battery,

false imprisonment, false arrest, abuse of process, or malicious prosecution should proceed.

      There is no question that escalating force to train lasers from an assault weapon on individuals,

discharging voluminous rounds of fire-power from those weapons towards occupants of a stopped

vehicle (i.e. in Stop "1") causing Finicum to flee the scene.  Defendants unleashed a second wave of

firepower on the same individuals and killing Finicum constituting the second assault and battery

against him.  Although the United States and other Defendants have vehemently argued probable

cause existed – that is not true if the facts in the SAC are weighed in favor of Plaintiffs.

      Therefore, federal agents engaged in numerous and various instances of assault during Stop

"1" and Stop "2" supported by the videos uploaded by defendants in the docket.   As well, at this

stage, it is still unclear if the kill shot which entered through the roof of Finicum's vehicle was that

of a federal or state agent.  At this juncture, it would be flagrantly oppressive and erroneous for the

court to resolve that issue in favor of the United States and dismiss the government from prior to discovery. A substantial basis has been alleged to demonstrate federal agents were on a mission to kill on January 26, 2016 (if this court weighs the facts in favor of the Plaintiffs) in violation of the constitution, public policy.

Evidence exists that an oppressive and unprecedented show of force including the use of a deadman's roadblock, the deployment of Oregon state SWAT and the FBI's HRT Team, both, as well as the videos clearly demonstrate Defendants instigated both shooting at Stop "1" and Stop "2" when no threat of harm existed to the officers at "Stop 1" and defendants engineered the danger at Stop "2", so they could engage in an intentional killing. Indeed, Ryan Payne attempted to give up while in the passenger seat of Finicum's truck at Stop "1". He showed his hands outside the window, communicated with defendants yet defendants still employed deadly force against Finicum's truck and Ryan Payne by firing shots at Payne regardless that he did not possess or brandish a firearm and was trying to "give-up". The F&R is erroneous to the extent it weighs these facts in support of Defendants and concluded probable cause existed and the use of force was legally and constitutionally justified at Stope "1" and Stop "2" against Finicum in support dismissing the United States and Bretzing when in fact it was not.

The F&R should not be adopted by the district court and requests an order directing discovery to commence. Alternatively, Plaintiffs request leave to amend to the extent the court finds the SAC may be technically defective.

## OBJECTION NO. 6
## D. SECTION 1983 AND CONSPIRACY CLAIMS
## AGAISNT THE UNITED STATES
### (Discussion)

The F&R states:

> In sum, Plaintiffs' fifth and sixth claims do not fall within the terms of the FTCA's sovereign immunity waiver and Plaintiffs fail to demonstrate that any other waiver of the government's sovereign immunity is applicable to these claims. Thus, the Court lacks subject matter jurisdiction over Plaintiffs' §

1983 and conspiracy claims against the United States and claims should be dismissed.

*See F&R at pp.22-23.*

Plaintiffs respectfully concede to dismissal of all defendants except for the defendant policy making officials for Harney County i.e., Grasty, Ward and Harney County regarding the Fifth Claim for Relief. Plaintiffs object(s) to Claim No. 5 being dismissed for failure to state a claim pursuant to Objection No. 1 *supra.* Further, to the extent this claim is technically defective, Plaintiffs request leave to cure the deficiency as dismissal would have the affect of being with prejudice since the statute of limitations has expired and would highly prejudice Plaintiffs in that regard,but cause little inconvenience to Defendants if allowed to replead and cure any defects as directed by the district court.

Regarding the Sixth Claim for Relief, Plaintiffs aver the United States has not waived sovereign immunity to the extent the conduct federal agents conspired to engage in was actually committed and said conduct is part of the law enforcement proviso found in Section 2680(h). In this case, Plaintiff objects to the extent the F&R recommends dismissing any conspiracy claims against the United States where federal agents engaged in assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. To this end, there is no waiver of sovereign immunity by the United States.

For these reasons, the F&R should not be adopted by the district court.

## OBJECTION NO. 7
### (Discussion)

The F&R determined that A.) Plaintiff's service upon Defendant Bretzing was insufficient; that 1.) Bretzing did not waive service of process; that 2.) Service did not comply with Rule 4; and that 3.) Dismissal for Failure to Serve was appropriate.

The F&R states that "although Ms. Taylor appeared for Bretzing at each hearing in this case, the only issues she raised on his behalf were related to service issues. The rest of her participation in

those hearings involved representing the federal government's general position on issues related to the unrepresented individual federal defendants and arguing for the United States to oppose Plaintiffs' motion for leave to amend." The court further believes that it may only exercise discretion of a finding of good cause is met. District courts have broad discretion to extend time for service under Rule 4(m). The docket reflects that Attorney Taylor made her appearance on behalf of Defendant Bretzing on June 22, 2018.

It can be inferred that Attorney Taylor spoke with her client and advised him of the lawsuit filed against him and the nature thereof. Indeed, she would not be permitted to make an appearance on his behalf absent a meet and confer conversation about the nature of the lawsuit and his agreement to allow her to represent Bretzing. Plaintiffs believe no reasonable person would believe Bretzing did not have actual or at minimum constructive knowledge of the lawsuit and the allegations against him and certainly enough notice to suffice minimal due process requirements considering the volume of pleadings Bretzing filed and the nature of the exhibits which he submitted to the court which, in turn, purportedly support his position on the merits of the case.

Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. *In re Sheehan,* 253 F.3d 507, 512 (9th Cir.2001). The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect. *Id.* at 512, 514. Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action. *See Efaw v. Williams,* 473 F.3d 1038, 1041 (9th Cir.2007); *see also 2,164 Watches,* 366 F.3d at 773.

Here, Plaintiffs can demonstrate excusable neglect and that the court should exercise discretion to allow plaintiffs to reserve to extent service was defective. If the court does not exercise its discretion and allow Plaintiffs to reserve him, the case against Bretzing will be time-barred if the

Court dismisses the action. There will be no ability to re-file which essentially constitute a dismissal with prejudice.  Plaintiffs would be prejudiced if they could not complete service in this regard.

Further, the F&R does not consider this factor but instead erroneously states the court can only exercise its discretion [if] good cause is established which is not the standard and should not be followed here.  In contrast, the  district court should follow the Ninth Circuit Court of Appeals in *Lemoge.  The Court* held discretionary relief under Rule 4(m) to allow further  time is appropriate when the case is time-barred and cannot be refiled.  <u>Lemoge v. U.S.</u> (9th Cir. 2009) 587 F.3d 1188, 1198.  In this case, Plaintiff has been put on notice for the first time the Court intended to dismiss absent any warning that it would do so within a predetermined number of days which is what the rule requires.

Plaintiffs further object to any ruling on the merits of Bretzing's claims.  Defendant has complained the entire time that he has not been served.  It seems might rich that he now can make substantive arguments to each of Plaintiffs claims without purported actual notice and be granted a dismissal without even making an appearance.   If the Court rules on the merits, it would seem self-evident that he did receive service when Bretzing and Plaintiffs have at least somewhat agreed service may be defective but nevertheless curable.

Plaintiffs assert that any ruling on the merits of Bretzing's case would be premature to the extent the parties agree service has not been properly executed.  Bretzing cannot have his cake and eat it too.  Either he has not been properly served or he has at least obtained a constitutional minimum of actual notice – evidenced by his sheer volume of pleadings in this matter.  Further, Plaintiffs concede the claims against Bretzing may have technical defects which require additional amendment to demonstrate the nexus between Daniel P. Love with the FBI in Oregon as it relates to Plaintiffs claims. Such evidence may be found in the transcripts of the Astarita case and the grand jury transcripts which Plaintiffs have been unable to gain access to at this time because the court has sealed the documents among other things.

It would be patently unfair to hide the evidence from Plaintiffs which Plaintiffs require pursuant to court order and then suffer dismissal of the case because Plaintiffs may have fallen short of the Iqbal-Twombly threshold. The very documents necessary to demonstrate plausibility are being guarded in a related case in the same court; whereas this Defendants and the Magistrate demand more evidence full well knowing they are the gate keepers thereto.

As such, Plaintiffs request an order granting a 30-day window to complete service of process again on Greg T. Bretzing or alternatively impose a crafted dismissal order without prejudice which allows Plaintiffs to bring him back into the case when and if more facts become available through proper discovery mechanisms which will support the case moving forward and preserving Plaintiffs rights to re-add Mr. Bretzing pending the discovery of the factual nexus Plaintiffs are confident exist but are being withheld and hidden at the present time.

## OBJECTION NO. 8

Plaintiffs concede the SAC may be technically deficient to the extent no allegations assert Bretzing was operating under the color of Oregon state law. However, Plaintiff can plausibly allege Bretzing and others were operating under the color of state law when they assisted the Oregon state police, who had command control presence at all times during a state law traffic stop on a state highway, on Oregon state land, within the state of Oregon. Plaintiff can further allege Bretzing could not and did not institute his *own* traffic stop or roadblock in this case because he was without authority under these facts to stop the vehicles without OSP agents agreeing to take command control presence at the scene. Indeed, this case is sufficiently separable from *the Ibrahim* decision in *Ibrahim v. Dept. of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2008)

The SAC alleges or Plaintiffs proffer here that federal officers recruited local and state police not to enforce federal law but to precipitate a pretextual traffic stop which had nothing to do with the Refuge or the adverse possession and everything to do with Finicum's last interview with the Oregonian which Plaintiffs assert enraged the United States by and through Bretzing and other

federal agents.  Previously, Defendants may have worked toward a peaceful resolution and kept positive dialogues open which was somewhat productive prior to Finicum's interview with the Oregonian.  However, after Finicum asserted he believed the United States had no rights to the land at the refuge and essentially explained the federal agents' feelings about the property to a major news outlet  – the conduct that commenced against Finicum and others on January 26, 2016 demonstrates the fix was in and "killing" was the purpose and goal.

It should be noted that prior to the interview, agents conceded to the refuge occupants  rights and abilities to travel back and forth on and off the property at the refuge prior to the  Finicum killing.  However, on January 25, 2016, Finicum stated the following when interviewed by the Oregonian:

> "They [Federal agents] DO NOT want to let go of this.  They [Federal agents] DO NOT intend on losing here. And we DO NOT intend to give it back to them."[5]

It is plausible that if Bretzing and other federal agents were surveilling Finicum throughout, which that is not disputed, that they had this knowledge and the January 25, 2016 video.  Plaintiff proffers that this overly enraged Bretzing and other agents who, in turn, conspired, confederated and ultimately concluded that it was necessary for them to  kill Finicum in a militaristic style assault and ambush.  Hence, they devised the militaristic style operation which included SWAT, the HRT Team, drones and well over 40-50 other law enforcement officers who's conduct was committed under the color of state law, a pretext so to speak.  The traffic stop was clearly on a state road, by state officers using state resources – to kill Finicum and others masquerading as a lawful federal operation which it was not.  Plaintiffs aver that the  very next day, Finicum was singled out and killed -- after the interview was recorded by the Oregonian.

It is not only plausible but highly likely that Bretzing and others conspired to change state and federal policy and put a target on Finicum to be killed if it already was not there (on or after

---

[5] See https://www.youtube.com/watch?v=N1DiMtcZXCA&feature=emb_logo at 2:10 through 2:20.

January 25th, 2016) in order to save face for the FBI and BLM considering its perceived woeful failures and the blistering OIG reports which pegged Daniel P. Love as a rogue special agent during the previous two years leading up with the cattle ranching community. Since the Bunkerville operation's implosion was a favorable ending for the cattle ranching community – and left egg on the face of the FBI and BLM, The FBI and BLM through Bretzing and others were compelled to send a direct message to the cattle ranching community and its supporters throughout the Midwest and the western portion of the United States which was:

> the federal government will kill citizens without due process and to the extent any question regarding the power and authority of the federal government exists, that it should be expected that any political dissents surrounding public lands or adverse position thereof will not be handled in a civil manner through the court system -- by the United States, the FBI or the BLM. In that regard, the message resonating is that citizens should expect to be ambushed and killed by the FBI and BLM, by and through its agents.

As such, Ibrahim does not apply to the facts in this case and should not be adopted by the district court. Alternatively, Plaintiffs request leave to cure any technical defects that district court may deem is necessary or appropriate.

## OBJECTION NO. 9

The F&R states:

> In this case, Plaintiffs' claims against Bretzing fall outside the three recognized remedies under *Bivens*, *Davis*, and *Carlson* and must therefore be regarded as a "new context" for a *Bivens* claim.

See F&R at p.35 at ¶ 2.

Plaintiffs object to the F&R because the claims do not fall outside the remedy in Bivens. See *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Magistrate assumes without deciding that is the case. But, clearly Plaintiffs case is the type to sufficiently comport with recognized remedy decided in Bivens as follows:

The Supreme Court held in Bivens that a complaint alleging agents of Federal Bureau of Narcotics, acting under color of federal authority, made warrantless entry of petitioner's apartment, searched the apartment and arrested him on narcotics charges, all without probable cause, stated federal cause of action under the Fourth Amendment for damages recoverable upon proof of injuries resulting from agents' violation of that Amendment. *Id.*

The only difference here is it is alleged the level of force utilize to make the search and seizure was constitutionally unreasonable, but nevertheless is also a fourth amendment analysis similar to that in Bivens. Further, it is alleged agents engaged in these fourth amendment deprivations without probable cause. As in Bivens, Plaintiffs should be allowed to recover damages upon proof of injuries resulting from the agents' violations of the Amendment.

Moreover, the F&R states that it is immaterial that the Ninth Circuit has recognized certain types of Bivens claims i.e., such has *Harris* and *Mendocino* presumably because these cases are strikingly[6] similar to the instant case and decided in this Circuit. See F&R at p.35, ¶ 2. Plaintiffs disagree that cases such as Harris and Mendocino are not material to whether Plaintiff has a Biven action under the same or similar facts. The suggestion is that Harris is now bad law in light of *Ziglar v. Abassi* which Plaintiffs do not accept, primarily because the claims in the instant case as well as *Harris* fall sufficiently within the scope of *Bivens*. As such, the F&R is erroneous to the extent the Magistrate recommends dismissal of Plaintiffs Bivens claims against Bretzing and should not be adopted. Alternatively, Plaintiffs request leave to cure any technical deficiency the court deems necessary and proper.

## OBJECTION NO. 10

The F&R recommend dismissing Defendants Ward and Grasty for the same reasons the Magistrate recommended dismissal of Bretzing's based on defective service of process.

---

See *Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457 (9th Cir.1994)
See *Harris v. Roderick,* 126 F3d 1189, 1196 (9th Cir 1997)

For the same reasons in Plaintiffs' objection to Bretzing's being dismissed based on service of process, Plaintiff realleges and incorporates the same position herein against Defendants Ward and Grasty and requests a reasonable 30-days to cure any service of process defects to the extent it may exist.

## OBJECTION NO. 11

Plaintiffs maintain that a sufficient factual nexus has been alleged or at least enough to allow the cases to proceed to discovery, against Defendants Ward, Grasty and Harney County who have actual notice of the claims against each of them. However, to the extent there may be some confusion and vagueness caused by or contained in the SAC, or that any technical defects remain unresolved, Plaintiffs urge the court that they are certainly curable and requests the district court not adopt the Magistrate's harsh recommendation of dismissal; but instead order a more definite statement be filed, and/or grant Plaintiffs leave to correct any technical difficulties as determined by the court. A dismissal in this matter would effectively be with prejudice because Plaintiffs cannot refile their claims against these defendants as they would essentially be time-barred due to the statute of limitations. At bare minimum, the Court should allow the claims to proceed against these defendants on the conspiracy claims and with the understanding Plaintiffs may amend to add back any previously dismissed claims against them to the extent further facts are discovered which would cure defects the district court determines may still remain.

For these reasons, the F&R should not be adopted by the district court because the Magistrate weighed the facts in favor of the defendants and failed to consider all reasonable inferences pertaining to plaintiffs allegations and meetings surrounding the decision to intentionally kill Finicum and/or others traveling with him at all related times herein during January 26, 2016.

## OBJECTION NO. 12

Katherine Brown acted pursuant to a clandestine objective she adopted and knew would rise to the level of a state created danger. No immunity should be granted from suit for her participating in the excessive

force and subsequent wrongful death of LaVoy Finicum.  *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Here, Plaintiffs have pointed to Brown's "kill order" she tailored which "*affirmatively* and particularly place[d] Finicum in a position of imminent danger." *Kennedy*, 439 F.3d at 1061 (emphasis added).  In the instant case, the SAC has alleged a  harm which was foreseeable i.e., Finicum's death,  and was particularized toward him when the elite special forces singled out his vehicle, chased him at a high rate of speed, erecting a dangerous Deadman's Roadblock which they knew would most likely cause terminal injuries to him and others.  Defendant Brown has no priviledge from these actions which were taken outside her official capacity.   She could have prevented the danger, but in fact – intentionally caused it in violation of Oregon state law and policy.  The F&R is erroneous and should not be adopted by the district court.

WHEREFORE, Plaintiffs timely file these objections to the Magistrate's Findings and Recommendations, (ECF No. 161) and respectfully request the district court conduct a de novo review of each claim and reject the recommendation, and allow Plaintiffs claims to proceed to discovery and any other and further relief this court deems proper and just.


*Date: January 29, 2020*


    */s/ J. Morgan Philpot*
J. Morgan Philpot, OSB #144811
Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2019, I filed the foregoing notice through the CM/ECF system, causing the following individuals to be served by electronic means, as reflected in the Notice of Electronic Filing:

| | |
|---|---|
| **James S. Smith**<br>Department of Justice<br>Trial Division<br>100 SW Market St<br>Portland, OR 97201<br>Email: james.s.smith@doj.state.or.us | JOSEPH HUNT<br>Assistant Attorney General<br><br>Civil Division<br>C. SALVATORE D'ALESSIO, JR.<br>Acting Director, Constitutional Tort Staff<br>Torts Branch, Civil Division |
| **Molly S. Silver**<br>**Thomas F. Armosino**<br>Frohnmayer Deatherage, et al.<br>2592 E. Barnett Road Medford, OR 97501<br>Email: armosino@fdfirm.com | RICHARD MONTAGUE<br>Senior Trial Counsel<br>Constitutional Tort Staff<br>Torts Branch, Civil Division |
| **Casey S. Murdock** Frohnmayer,<br>Deatherage, Jamieson, Moore, Armosino &<br>McGovern<br>2592 East Barnett Road<br>Larson Creek Professional Center<br>Medford, OR 97504<br>Email: Murdock@fdfirm.com | LEAH BROWNLEE TAYLOR<br>United States Department of Justice<br>Senior Trial Attorney<br>Constitutional Tort Staff<br>Torts Branch, Civil Division<br>PO Box 7146<br>Washington, D.C. 20044<br>Leah.B.Taylor@usdoj.gov<br>*Attorney for Defendants*<br>*United States of America and Greg*<br>*Bretzing* |

By: */s/ J. Morgan Philpot*