LEAH BROWNLEE TAYLOR
Leah.B.Taylor@usdoj.gov
United States Department of Justice
Senior Trial Attorney
PO Box 7146
Washington, D.C. 20044
(202) 616-4325
Attorney for Greg T. Bretzing and the United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| D. JEANETTE FINICUM;<br>THARA TENNEY TIER COLIER;<br>ROBERT FINICUM; TAWNY CRANE;<br>ARIANNA BROWN; BRITTNEY BECK;<br>MITCH FINICUM; THOMAS KINNE;<br>CHALLICE FINCH;<br>JAMES FINICUM; DANIELLE FINICUM;<br>TEAN FINICUM;<br>and the<br>ESTATE OF ROBERT LAVOY FINICUM.<br>Plaintiffs | Case No. 2:18-CV-00160-SU |
| | Defendant Greg T. Bretzing's<br>Response to Plaintiffs' Objections<br>To Findings and Recommendation<br>(ECF No. 161)<br><br>Oral Argument Requested |
| v.<br><br>UNITED STATES OF AMERICA;<br>FEDERAL BUREAU OF INVESTIGATION;<br>BUREAU OF LAND MANAGEMENT;<br>DANIEL P. LOVE; SALVATORE LAURO;<br>GREG T. BRETZING; W. JOSEPH ASTARITA;<br>STATE OF OREGON; OREGON STATE POLICE;<br>KATHERINE BROWN; HARNEY COUNTY;<br>DAVID M. WARD; STEVEN E. GRASTY;<br>THE CENTER FOR BIOLOGICAL DIVERSITY;<br>and JOHN DOES 1-100.<br>Defendants | |

## BACKGROUND AND PROCEDURAL HISTORY[1]

On January 25, 2018, Plaintiffs sued Greg T. Bretzing and others in connection with the death of LaVoy Finicum on January 26, 2016. *See* ECF No. 1. Finicum was a leader of an armed occupation of the Malheur National Wildlife Refuge in Oregon. *Id*. Bretzing was the Special Agent in Charge of the FBI's Portland, Oregon office at the time of the Refuge occupation. *See* ECF. No. 89 (Second Amended Complaint or "SAC") ¶ 156. Plaintiffs allege that Bretzing supported an arrest plan that permitted the use of a vehicle stop to arrest Finicum and his co-conspirators for federal crimes.[2] *Id*. ¶¶ 206-209. The plan included a roadblock in case Finicum and his co-conspirators attempted to evade arrest. *Id*. ¶ 220. On January 26, 2016, Oregon State Police officers pulled over the pickup truck in which Finicum and others were traveling on U.S 395. Finicum sped away driving at a high rate of speed on U.S. 395. *Id*. ¶¶ 236, 243. After Finicum nearly collided with the roadblock and got out of his truck, two Oregon State Police SWAT Troopers shot and killed him. *Id*. ¶ 268. The operative Second Amended Complaint does not allege Bretzing was present at the scene of the operation or shooting.

Plaintiffs asserted six claims against Bretzing: (1) a *Bivens* claim under the Fourth and

---

[1] The factual allegations are taken from the Second Amended Complaint and the F&R, including the facts the Magistrate Judge judicially noticed. *See e.g.* F&R at 3-6. Plaintiffs filed no opposition to the federal defendants' motion for judicial notice under Federal Rule of Evidence 201. They also did not contest the authenticity or admissibility of any of the exhibits filed in support of the federal defendants' motions. *See* ECF No. 144 (Pls. Opp. to Bretzing's MTD). A more fulsome account of the facts are also set forth Bretzing's Motion to Dismiss or the Alternative, Motion for Summary Judgment. *See* ECF No. 107 at 3-9.

[2] Though Plaintiffs use the term "traffic stop," Obj. at 2, Finicum and his confederates were stopped in an effort to arrest them for federal felonies related to the refuge takeover, and not for a state traffic offense. *See* F &R at 3, 32. Those federal crimes are detailed in the criminal complaint and superseding indictment filed in the United States District Court for the District of Oregon. *See* ECF No. 107-2, (Ex. A) (Criminal Compl.) and ECF No. 107-3, (Ex. B) (Superseding Indictment).

Fifth Amendments, *see Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Second Cause of Action);(2) a 42 U.S.C. § 1983 claim for excessive force (Third Cause of Action); (3) a § 1983 claim for familial deprivation (Fourth Cause of Action); (4) a § 1983 *Monell* claim (Fifth Cause of Action); (5) a state law conspiracy claim (Sixth Cause of Action); and (6) negligence (Seventh Cause of Action). *See* SAC ¶¶ 310-369. The United States substituted itself on the state law claims under the Westfall Act, 28 U.S.C. § 2679(d)(1). *See* F&R at 30. Meanwhile Bretzing moved to dismiss for lack of personal jurisdiction and insufficient service of process. He also asserted qualified immunity and failure to state a claim on which relief may be granted under Rule 12(b)(6). *See* ECF No. 107 (Bretzing MTD). And he moved in the alternative, for summary judgment under Federal Rule of Civil Procedure 56(a). *Id*.

On July 25, 2020, Magistrate Judge Sullivan recommended dismissal of Bretzing on several grounds. *See* ECF No. 161 ("F&R"). The Magistrate Judge concluded that Plaintiffs failed to properly serve Bretzing, but also that dismissal with prejudice was warranted. She further explained that special factors counseled against the creation of a new *Bivens* remedy for Plaintiffs' alleged constitutional claims; Plaintiffs' 42 U.S.C. § 1983 claims were not actionable against Bretzing, who was a federal  official; and the remaining common law negligence and state conspiracy claims were foreclosed by the Westfall Act substitution. *See* F&R at 23-36.

After several extensions, on January 29, 2021, Plaintiffs' filed objections to the F&R. *See* ECF No. 171 (Pls. Obj. to F&R or Obj.). Those objections repeat Plaintiffs' wildly speculative, conclusory, and conspiratorial allegations that Bretzing was in on a multi-year plan by federal officials to kill Finicum and others. *See* Obj. at 2-11. More prosaically, they challenge the recommended dismissal for lack of service and insist they have valid section 1983 and *Bivens*

2

claims against Bretzing. (They do not challenge dismissal of the state law claims in light of the government's self-substitution under § 2679(d)). But none of Plaintiffs' theories are viable. None is supported by "sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation omitted). And no amendment would save their case.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b), a party "may serve and file specific written objections" to a magistrate judge's proposed findings and recommendations. The district judge is required to make a de novo determination of those portions of the report or specified findings or recommendation "that ha[ve] been properly objected to." *Id*.; *see also* 28 U.S.C. § 636(b)(1)(C). The court is not required to review the factual or legal conclusions of the magistrate judge as to portions of the F&R to which no proper objections are addressed. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). The district court is free to accept, reject, or modify any part of the magistrate judges' findings and recommendations. 28 U.S.C. § 636(b)(1)(C).

## ARGUMENT

Of Plaintiffs' ten objections to the Findings and Recommendations, their Objections Nos. 1 and 7 through 9 aim at the findings and recommendations related to Bretzing's dismissal. None of Plaintiffs' objections are valid.

I.   **Plaintiffs' Objection No. 1 is Nonspecific and Otherwise Meritless. The Magistrate Judge Assessed The Well-Pleaded in Plaintiff s' Favor and Properly Determined that Plaintiffs' Claims Cannot Survive Dismissal.**

To start, Plaintiffs Objection No. 1 does not comply with Rule 72(b). It is anything but "specific." Plaintiffs contend that the Magistrate Judge "failed and refused to acknowledge and

3

weigh the facts in the Second Amended Complaint in favor of Plaintiff and further failed to draw reasonable inferences from those well pled facts." Obj. at 12. But their objection is not meaningfully developed. Plaintiffs do nothing to show how, contra the Magistrate Judge's conclusions, well-pleaded allegations in the operative complaint support an inference that Bretzing is liable. *See Iqbal*, 556 U.S. at 678. The closest they come to adding any specificity to their first objection is their apparent complaint that the Magistrate Judge viewed the Bunkerville, Nevada events as irrelevant. But here too, they make no meaningful attempt to demonstrate how those events are legally relevant; they just insist that they are. That alone is reason enough to overrule their objection.

Specificity aside, Plaintiffs misunderstand pleading standards. The Magistrate Judge did not reject their claim because she disbelieved Plaintiffs' allegations; she rejected it because too many of those allegations are conclusory, and Plaintiffs' inferences connecting the Bunkerville events in 2014 to Bretzing and to Finicum's death in 2016 are not plausible. That determination was correct. Here, just as in *Iqbal*, "[i]t is the conclusory nature of [Plaintiffs'] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." 556 U.S. at 681.The Magistrate Judge viewed the well-pleaded facts in the light most favorable to Plaintiffs, and expressly stated: "*Even read in the light most favorable to Plaintiffs*, it is clear from the allegations of the SAC that Bretzing acted under color of federal, rather than state law." F&R at 32 (emphasis added). To the extent Plaintiffs more generally claim that the Magistrate Judge erred by not considering the alleged Bunkerville events as somehow leading up to Finicum's death that objection is also non-specific and without merit.[3]

---

[3] Although Plaintiffs object to comments the Magistrate Judge made at oral arguments, they overlook a critical part of her comments regarding the implausibility of their claims:

The Magistrate Judge appropriately evaluated the plausibility of Plaintiffs allegations under the correct standards. As Judge Sullivan correctly observed, a claim possesses "facial plausibility" only when a plaintiff pleads "sufficient factual matter" to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See* F&R at 9 (citing *Iqbal*, 556 U.S. at 678); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Judge Sullivan properly assessed the Plaintiffs' allegations, disregarding the conclusory ones and ruling that the well-pleaded allegations do not support any claim for relief against Bretzing. Plaintiffs' objection No.1 lacks merit.

II.    **Plaintiffs' Objection No. 7 Lacks Merit. The Magistrate Judge Properly Determined that Plaintiffs' Service of Process Was Insufficient and Dismissal With Prejudice is Appropriate.**

Plaintiffs don't actually assign any error to the Magistrate Judge's finding of insufficient service of process. Rather, their central objection is that it can be "inferred" that Bretzing had actual notice of the complaint through his counsel. Obj. at 28. But as the Magistrate Judge correctly observed, actual knowledge of a complaint does not excuse service defects. *See* F&R at 28. That ruling is consistent with well-established law. "Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Accordingly,

---

THE COURT: Let me say this: I looked at the sixth claim for relief, and it has significant defects, in terms of *Twombly* and the allegations that are required to make out a case for that. If you refer back to some of the other allegations, then you're back to, you know, things like the Bunkerville allegations, which, frankly, I think are totally irrelevant. But what we're talking about here is the wrongful death of Mr. Finicum, and we're not talking about Bunkerville or any of the issues that you claim arise out of that particular incident.

Mar. 6, 2020 Tr. of Mot. Hr'g. at 19-20. At any rate, even if the Bunkerville-related events are considered here, those allegations and Plaintiffs' theories about them would actually underscore that Bretzing acted under color of federal, not state, law. *See* Part III, *infra*.

one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) (citing Fed. R. Civ.  4). Actual notice of a complaint is not substitute; it obligates a defendant to do nothing. *See id*. at 351; *see, e.g., id*. at 356.

Plaintiffs also complain that the Magistrate Judge had the discretion to allow them additional time to properly serve for excusable neglect, but did not. Obj. at 29. The dismissal recommendation, they contend, was the "first time" they suspected the time-bar consequences of failing timely serve process. *Id.* Regardless, the Magistrate Judge correctly noted that numerous "challenges from multiple Defendants challenging service and several extensions of time to serve Defendants[]" justified dismissal with prejudice. F&R at 29. As early as 2018, Plaintiffs knew that service was incomplete or improper. At the very first status conference in the case, Plaintiffs were alerted to the service deficiencies, with the Magistrate Judge taking the extraordinary step of requiring Plaintiffs to file a Report of Service to identify how and when any defendants were served. *See* ECF No. 44. And Plaintiffs' experienced counsel was well aware of the statute of limitations and thus, the consequences of a service-based dismissal. Plaintiffs filed this action one day before the statute of limitations expired, an issue that was litigated before this court. *See* ECF No. 88.

Plaintiff's reliance on *Lemoge v. United States*, 597 F.3d 1188 (9th Cir. 2009), to say that the Magistrate erred by recommending dismissal without further opportunity to perfect service is misplaced. *See* Obj. at 29. *Lemoge* involved a motion to reopen a time-barred case under Rule 60(b). The Ninth Circuit ruled that the district court erred in applying Rule 60(b) standards and that the record demonstrated counsel's excusable neglect in not timely serving the defendants. *Id*.

at 1195. Due to his multiple surgeries, counsel was unable to work. *Id.* at 1197-98. Here by contrast the Magistrate Judge determined that "Plaintiffs' failed to offer any reason," let alone good cause or excusable neglect "for their failure to comply with FRCP 4 or ORCP 7." F&R at 29 n.6.

Absent a showing of good cause or excusable neglect, the Magistrate Judge had broad discretion to either extend the time for service or recommend dismissal. She properly chose the latter. *See Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007); *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001). A court may consider factors such as a statute of limitations bar, prejudice to the defendant, the defendant's actual notice of a lawsuit, and eventual service. *Efaw*, 473 F.3d at 1040. Here the Magistrate Judge appropriately considered the years of delay, the multiple opportunities to serve Bretzing, and Plaintiffs' failure to effect service. Judge Sullivan was correct in recommending the dismissal of Bretzing with prejudice. *See Efaw*, 473 F.3d 1041.

For the same reasons, this Court should reject Plaintiffs' request to serve Bretzing within 30 days. It has been over five years since Finicum's death and over three years since Plaintiffs sued.  Plaintiffs' inability or unwillingness to comply with an elementary requirement of civil practice has already caused undue prejudice to Bretzing, prejudice that is magnified because the claims against him lack legal viability in any event. Service would be futile because Bretzing would still be dismissed on the other grounds relied on in the Findings and Recommendations.

### III.    Plaintiffs' Objection No. 8 is Meritless Because Bretzing Acted Under Color of Federal Law.

Plaintiffs' objection to the Magistrate Judge's ruling on their § 1983 claims is meritless. At the outset they "concede the SAC may be technically deficient to the extent *no allegations assert Bretzing was operating under the color of Oregon state law*." Obj. at 30 (emphasis added). Nonetheless they argue "Plaintiff can plausibly allege Bretzing and others were operating under

the color of state law when they assisted the Oregon state police, who had command control

presence at all times during a state law traffic stop on a state highway, on Oregon state land,

within the state of Oregon." *Id*. But the question of course is not what Plaintiffs say they "can"

plausibly allege, but what their operative complaint *does* allege. And as the Magistrate Judge

pointed out, that complaint alleges that "at all times relevant," Bretzing acted under color of

federal law and in the scope of his employment as the FBI's Special Agent in Charge. F&R at

31. The Magistrate Judge also explained that:

> The SAC alleges that Bretzing was part of a "rogue faction of government
> agents," targeting Finicum for an earlier incident in Nevada. *See, e.g*., SAC ¶ 105.
> The SAC alleges that Finicum traveled to Oregon and joined in seizing and
> occupying a federal facility. *Id*. at ¶¶ 139, 153, 156. Plaintiffs have alleged that
> the vehicle stop and roadblock operation was "adopted in significant part by the
> FBI," and only "aided and assisted" by state and local law enforcement. *Id*. at ¶
> 195. Indeed, the SAC alleges that Brown, Ward, and Grasty "had been
> specifically advised and informed that no state laws had been broken by the
> protests and occupation of the Malheur National Wildlife Refuge." *Id*. at ¶ 211.
> An indictment was eventually brought against several of Finicum's associates
> concerning the occupation of the Refuge, charging them with federal crimes.
> Taylor Decl. Ex. B (Superseding Indictment in *United States v. Bundy, et al*.,
> 3:16-CR-00051-BR).

*Id*. at 31-32.

"[S]ection 1983 only provides a remedy against persons acting under color of state law."

*Ibrahim v. Dept. of Homeland Security*, 538 F.3d 1250, 1257 (9th Cir. 2008) (citing *Cabrera v.

Martin*, 973 F.2d 735, 742 (9th Cir. 1992)). And there is no "exception to this rule where, as

here, federal officials recruit local police to help enforce federal law." *Id*. That's exactly what

happened here. And so the Magistrate Judge was correct that "[e]ven read in the light most

favorable to Plaintiffs, it is clear from the allegations of the SAC that Bretzing acted under color

of federal, rather than state law." *Id*. at 32.

Plaintiffs protest that "this case is sufficiently separable from the *Ibrahim* decision," Obj. at 30, but don't further explain. Instead, they go a different route and say "[t]he SAC alleges or Plaintiffs proffer here that federal officers recruited local and state police not to enforce federal law but to precipitate a pretextual traffic stop which had nothing to do with the Refuge or the adverse possession and everything to do with Finicum's last interview with the Oregonian[.]" *Id*. But playing out that astounding theory leads right back to action under color of federal law: The interview, Plaintiffs go on, "enraged the United States by and through Bretzing and other federal agents." *Id*. at 30-31. When Finicum "asserted he believed the United States had no rights to the land at the refuge," federal agents supposedly dropped efforts to peacefully end the Refuge takeover and then "the fix was in and 'killing' was the purpose and goal." *Id*. at 31.

The problems with that remarkable and convoluted claim are quickly apparent. First it is conclusory and not supported by any well-pleaded allegations that Bretzing or any other government officials decided to forget about arresting Finicum and instead just kill him over his idiosyncratic ideas about federal government property rights. Second, changing the alleged *motive* for federal officials' actions does nothing to change the color of law under which they acted. And indeed, even taken on its own terms, Plaintiffs' theory points back to *federal* government motives and actions that would have been taken on the United States' behalf and under color of federal law assuming they occurred: moving against Finicum over his claim that "the United States had no rights to the land at the refuge," Obj. at 31. And so the Magistrate Judge correctly determined that the operative complaint does not establish a "sufficiently close nexus between the State and challenged action of the federal actors so that the action of the later

may be fairly retreated of the State itself" to establish § 1983 liability. F&R at 31 (citing *Ibrahim*, 538 F.3d at 1258).[4]

Plaintiffs protest that Bretzing had no authority to stop vehicles without the Oregon State Police. *See* Obj. at 30. But Bretzing had federal authority to investigate crimes against the United States, including attacks on federal personnel and facilities. *See generally* 28 U.S.C. § 533. And the allegations here bear out the federal character of Bretzing's conduct as a Special Agent in Charge supervising FBI agents. Plaintiffs allege, for example, that federal officials, including Bretzing, labeled Finicum a domestic terrorist. *See* SAC ¶¶ 88, 172, 327. The FBI exercises lead investigative responsibility for "federal crimes of terrorism." 28 C.F.R. § 0.85(i). And again, federal agents don't become state actors just because they allegedly recruit local police assistance. *Ibrahim*, 538 F.3d at 1257 (citation omitted). So the Magistrate Judge properly ruled that Bretzing acted under federal law and authority. *See* F&R at 32. The complaint concedes that and also shows that the attempt to arrest Finicum arose from a federal investigation of federal crimes. The same is evidenced by the federal criminal complaint identifying federal crimes Finicum and others committed. *See id*. at 3 (noting the criminal complaint and supporting affidavit filed in *United States v. Bundy et al.*, 3:16-CR-00051-BR).

Still more, as the Magistrate Judge recognized, the SAC alleges that "no state laws had been broken by the protests and occupation of the Malheur National Wildlife Refuge." *See* F&R at 32. The SAC makes no reference to any state court order or state law that authorized Bretzing to allegedly surveil or investigate Finicum. And while Plaintiffs say that the Oregon State Police exercised "command control process at all times during a state law traffic stop on a state

---

[4] Plaintiffs make no objection to the Magistrate Judge's ruling that they have no cognizable *Monell* claim against Bretzing, who is a federal actor, not a municipality subject to suit under § 1983.

highway" in Oregon, they mischaracterize the facts. *See* Obj. at 30. This was an arrest for federal

crimes, not state traffic laws. Importantly, the Magistrate Judge noted that the SAC alleges that

the arrest operation was "largely adopted by the FBI" and took place on "[U.S.] 395," a federal

highway, with state and local law enforcement that "aided and assisted" the FBI. *See* F&R at 32.

The Magistrate Judge properly reasoned that the collaborative nature of this operation does not

transform Bretzing's federal role superintending the investigation and arrest operation into one

"taken under the color of state law." F&R at 32. For all the reasons just described, Magistrate

Judge Sullivan correctly concluded that the Plaintiffs' allegations demonstrate that Bretzing

acted under federal, not state law. *See e.g.* F&R at 31 (citing *West v. City of Mesa*, 708 F. App'x

288, 292 (9th Cir. 2017), as holding that where the plaintiff alleged that the defendant was the

"lead FBI investigator," the allegation supported the conclusion the defendant was acting under

federal, rather than state law).

IV.    **Plaintiffs' Objection No. 9 is Legally Unsupported. The Magistrate Judge**
       **Correctly Concluded that Special Factors Counseled Against Creating a**
       ***Bivens* Remedy.**

Magistrate Judge Sullivan conducted the two-part analysis mandated in *Ziglar v. Abbasi*,

137 S. Ct. 1843 (2017), and correctly determined that no *Bivens* remedy should be created here.

F&R at 36. Plaintiffs object only that their case does not present a new *Bivens* context. They are

mistaken. Their claims present a new context outside the trio of cases in which the Supreme

Court has allowed *Bivens* actions. *See* F&R at 34-35. And the Magistrate Judge correctly

determined that the context is new under *Abbasi's* non-exhaustive list of factors for identifying a

new *Bivens* context. *See* F&R at 35; *see also Abbasi*, 137 S. Ct. at 1859-60. Judge Sullivan then

determined that special factors counsel hesitation in expanding *Bivens*. *Id*. at 35. That ruling was

also correct, and indeed the Court similarly determined, in a related *Bivens* case against Bretzing

arising from the same events, that Bretzing's "implementation and formulation of policy decisions" was "a *new* variation of *Bivens*" and that *Bivens* "shouldn't be extended." *Payne v. Bretzing*, No. 2:18-cv-00165-MO, Sept. 9, 2019 Oral Argument Tr. of Proceedings at 5 (attached).

Plaintiffs nonetheless argue that their case is "similar to that in *Bivens*" and to two older cases, *Harris v Roderick*, 126 F.3d 1189 (9th Cir. 1997), and *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999). *See* F&R at  33. They are wrong on both counts. First, this case is significantly different from *Bivens*, which involved line-level agents participating in a warrantless search and arrest in a New York City home. *See* 403 U.S. at 389. By contrast this case is brought against a former FBI Special Agent in Charge for superintending a law enforcement operation designed to apprehend suspected armed felons who took over federal land and intimidated federal employees at a wildlife refuge in Oregon. "[T]here is a world of difference between" *Bivens* and the context we have here. *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020).

Plaintiffs are wrong when objecting that "[t]he only difference here is it is alleged the level of force utilize [sic] to make the search and seizure was constitutionally unreasonable, but nevertheless is [sic] also a fourth amendment analysis similar to that in *Bivens*." Obj. at 33. The significant differences were just explained. And it is irrelevant that Plaintiffs sue under the Fourth Amendment. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. So contra Plaintiffs' argument, "[c]ourts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir.

2019), *cert denied*, 141 S. Ct. 112 (2020). Any lingering doubt is put to rest by *Hernandez*, in which the Supreme Court declined to extend *Bivens* to Fourth and Fifth Amendment claims based on a cross-border shooting. *See* 140 S. Ct. at 743-50.

Second, *Harris* and *Mendocino* predate *Abbasi* by over twenty years. Those cases reflect a time when it might have been thought "there was a possibility that the Court would keep expanding *Bivens* until it became the substantial equivalent of 42 U.S.C. § 1983." *Abbasi*, 137 S. Ct. at 1855 (citation and internal quotations omitted). And sure enough, the parties and the courts in both *Harris* and *Mendocino* assumed that *Bivens* applied. But in neither case was the Ninth Circuit actually called on to decide that. And so neither decision is controlling, especially after *Abbasi* and *Hernandez* clarified *Bivens* standards. *Cf. National Aeronautics and Space Admin. v. Nelson*, 562 U.S. 134, 163 (2011) (Scalia, J., concurring in the judgment) ("But stare decisis is simply irrelevant when the pertinent precedent assumed, without deciding, the existence of a constitutional right."). "Plaintiffs do not accept" that, and "disagree that cases such as *Harris* and *Mendocino* are not material to whether Plaintiff has a Biven [sic] action under the same or similar facts." Obj. at 33. But the Magistrate Judge applied the correct standards in rejecting Plaintiffs' *Bivens* claims, as did this Court in the earlier *Payne* litigation.

After identifying a new context, the Magistrate Judge also correctly determined that Bretzing's role in planning the FBI's investigation and arrest operation implicated questions of executive policy and "domestic terrori[ism]," and that his alleged dissemination of information to other law enforcement agencies and other alleged actions counseled hesitation in creating a new *Bivens* remedy. F&R at 35-36. Having put their eggs in the "same context" basket, Plaintiffs do not argue otherwise. Given all that and also that the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity, *Abbasi*, 137 S. Ct. at 1857,

13

Judge Sullivan correctly ruled that the *Bivens* claims should be dismissed. F&R at 36. Plaintiffs' last-gasp "alternative[ ]" plea for "leave to cure any technical deficiency the court deems necessary and proper" misses the point. Obj. at 33. The problems with Plaintiffs' *Bivens* claims are not "technical," nor could amendment save them. Here, as in all cases in which *Bivens* is not properly extended, "the relief sought by [Plaintiffs] is unavailable as a matter of law, [and] the case must be dismissed." *Schweicker v. Chilicky*, 487 U.S. 412, 429 (1988). And the same is true for Plaintiffs' identically conclusory request for leave to save their section 1983 claim, *see* Obj. at 32.

## V.    Alternatively, Qualified Immunity Bars Plaintiffs' Claims.

The Magistrate Judge determined it was not necessary to reach the question of qualified immunity. F&R at 32. That also is correct. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Bretzing's qualified-immunity defense nonetheless provides this Court additional grounds for dismissal. *See* ECF 107, Bretzing MTD at p 18-30. Because Plaintiffs also failed to establish a violation of clearly established law, *see id.*, under 28 U.S.C. § 636(b)(1)(C), the Court may elect to modify the findings and recommendations and grant dismissal on that ground as well.

## CONCLUSION

The Findings and Recommendations should be adopted and the claims against Bretzing dismissed with prejudice.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Constitutional Tort Staff
Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel
Constitutional Tort Staff
Torts Branch, Civil Division

/s/ Leah Brownlee Taylor
LEAH BROWNLEE TAYLOR
United States Department of Justice
Senior Trial Attorney
Constitutional Tort Staff
Torts Branch, Civil Division
PO Box 7146
Washington, D.C. 20044
Leah.B.Taylor@usdoj.gov

Attorney for Defendants
United States of America and Greg Bretzing

15

## LOCAL RULE 7.2 CERTIFICATE

In accordance with Local Rule 7-2 (b), counsel certifies that this brief complies with the page limitation under LR 7-2(b) because it contains approximately 14 pages, including headings, footnotes, and quotations, but excluding any caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/ Leah Brownlee Taylor
Leah Brownlee Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, I filed the foregoing document through the

CM/ECF system, causing the following individuals to be served by electronic means, as reflected

in the Notice of Electronic Filing:

**J. Morgan Philpot**
JM Philpot Law
1063 E. Alpine Dr.
Alpine, UT 84004
Email: morgan@jmphilpot.com

**James S. Smith**
Department of Justice
Trial Division
100 SW Market St
Portland, OR 97201
Email: james.s.smith@doj.state.or.us

**Molly S. Silver**
**Thomas F. Armosino**
Frohnmayer Deatherage, et al.
2592 E. Barnett Road
Medford, OR 97501
Email: armosino@fdfirm.com

/s/ Leah Brownlee Taylor
Leah Brownlee Taylor