1       IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF OREGON

3  RYAN PAYNE and VICTORIA SHARP,)
                                )
4          Plaintiffs,          )  Case No. 2:18-cv-00165-MO
                                )
5      v.                       )
                                )
6  GREG T. BRETZING, DOES 1-12, )  September 6, 2019
   and OTHER MEN NAMES UNKNOWN, )
7                               )
           Defendants.          )  Portland, Oregon
8  _____)

9

10

11

12

13

14

15                  **Oral Argument**

16            TRANSCRIPT OF PROCEEDINGS

17      BEFORE THE HONORABLE MICHAEL W. MOSMAN

18   UNITED STATES DISTRICT COURT CHIEF JUDGE

19

20

21

22

23

24

25

```
 1
 2                                 APPEARANCES
 3
 4  FOR THE PLAINTIFFS:      Mr. Roger I. Root (by telephone)
                             Attorney at Law
 5                           113 Lake Drive East
                             Livingston, MT 59047
 6
 7
 8  FOR DEFENDANT GREG T.
    BRETZING:                Ms. Leah Brownlee Taylor
 9                           U.S. Department of Justice
                             P.O. Box 7146
10                           Washington, D.C. 20044-7146
11
12  FOR DEFENDANT HARNEY
    COUNTY:                  Ms. Molly R. Silver (by telephone)
13                           Frohnmayer, Deatherage, Jamieson,
                             Moore, Armosino & McGovern
14                           2592 E. Barnett Road
                             Medford, OR 97504
15
16
17  COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
18                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
19                           (503) 326-8188
20
21
22
23
24
25
```

```
 1                    (P R O C E E D I N G S)

 2              (September 6, 2019, 9:07 a.m.)

 3         THE CLERK:  We're here today for oral argument in

 4    Case No. 2:18-cv-165-MO, Payne, et al. v. Astarita, et al.

 5         Counsel, please state your name for the record,

 6    starting with plaintiff.

 7         MR. ROOTS:  Roger Roots for Plaintiff Payne and

 8    Sharp.

 9         MS. SILVER:  Molly Silver on behalf of Harney County.

10         MS. TAYLOR:  And Leah Brownlee Taylor on behalf of

11    Defendants Greg Bretzing and the United States of America.

12         THE COURT:  Ms. Silver, we could barely hear you, so

13    please speak up next time you speak, if you do speak in this

14    hearing.

15         MS. SILVER:  Yes, Your Honor.

16         THE COURT:  Mr. Roots, I'm surprised to learn you're

17    appearing by phone.  Did I get any notice of that from you in

18    advance?

19         MR. ROOTS:  No.  I didn't know I needed to file any

20    motion on that.

21         THE COURT:  All right.  Same request to you.  Please

22    speak up, because you're on speaker -- or because you're on the

23    phone.  It's not a great system here.  Try to be as clear and

24    as loud as you can to make sure you're heard for our purposes

25    and for the court reporter.
```

1          A couple of housekeeping matters to start with.

2  Plaintiffs have voluntarily dismissed certain named persons.

3  Particularly that relates to Harney County and Oregon State,

4  Oregon State Police and others.  And it appears that the "other

5  men" and the 1X to 12X or Doe defendants are related to the

6  named defendants that have been voluntarily dismissed.  In

7  other words, that it appears plaintiff is not proceeding any

8  longer against the "and other men" and Doe or 1X through 12X

9  defendants.  But I don't want to jump to any conclusions here.

10          Is that correct, Mr. Roots?

11          MR. ROOTS:  No, that's not my understanding at all.

12  We're still trying to get the names of those John Doe

13  defendants and to file an amended complaint.

14          THE COURT:  And are they Harney County and Oregon

15  State defendants, or are they in some other category?

16          MR. ROOTS:  I would almost -- I'm almost certain that

17  few or none are Harney County.  Several are certainly Oregon

18  State Police.

19          THE COURT:  All right.  Thank you.

20          Let me give you my tentative thoughts in the order in

21  which they were briefed, and then I'll hear any further

22  argument you wish to make.

23          Mr. Bretzing has several theories supporting his

24  motion to dismiss.  The first theory I'll pick up is his theory

25  that there is, under Rule 12(b)(6), a failure to state a *Bivens*

1    claim, and related to that is his theory of qualified immunity.

2    I'll take both up at once.

3         For the failure to state a theory of relief here in

4    his motion to dismiss, it turns on the concept that under a --

5    that in a *Bivens* claim like this, plaintiff must allege

6    Mr. Bretzing's own acts, not acts supervising other people.

7    And it certainly appears that the -- both the complaint and

8    plaintiffs' response here focus on supervisory acts by

9    Mr. Bretzing, and so in that sense, they fail to state a claim

10   under *Bivens*.

11        He also alleges -- again, under the 12(b)(6)

12   theory -- that as formulated here, this would be a new

13   variation of *Bivens*, requiring a special factors analysis, and

14   that one of the things that special factors analysis tells me

15   to look at is whether this *Bivens* action would focus on the

16   individual acts of an officer that violate someone's

17   constitutional rights -- that is, for example, failing --

18   failing to provide medical care when needed or searching when

19   you shouldn't search, that sort of thing, or does it implicate

20   the implementation and formulation of policy decisions.  And

21   here it seems much more like the latter, and because that's the

22   case, a significant number of cases say that *Bivens* shouldn't

23   be extended into that sort of arena.

24        So those are the two 12(b)(6) theories, and related

25   to that is his request for application of qualified immunity.

1  That's a little harder here because the first step in that

2  analysis is was there a substantial right violated by

3  Mr. Bretzing.  And that, again, brings up the problem of here

4  there's no direct acts of Mr. Bretzing that are implicated by

5  the complaint or by the briefing.  Instead, it's all

6  supervisory.  So to grant qualified immunity, I'd have to say,

7  well, first, there's been nothing alleged that shows

8  Mr. Bretzing directly violated a constitutional right, and I'm

9  not going to try to imagine, you know, what might be alleged to

10  do that.  So it appears to me that you don't get out of the

11  gate with qualified immunity, in part because you don't have an

12  allegation that Mr. Bretzing violated a constitutional right.

13  And that's all related to this idea that there's no allegations

14  or briefing of Mr. Bretzing's own acts, as opposed to his

15  supervision of others.

16        Now, I'm aware that in *Starr v. Baca* in the Ninth

17  Circuit, consistent with other circuits, has made clear that

18  deliberate indifference by a supervisor can amount to

19  individual acts and individual liabilities.  That's different,

20  however, than just supervising others, and it doesn't seem to

21  me that that's what's alleged here at all.  It doesn't fit that

22  narrow exception to the requirement that you allege, direct as

23  opposed to supervisory action.

24        So let's start with the 12(b)(6) motion.  I don't

25  think we need to talk about qualified immunity much yet.  And

1    I'll turn to you, Mr. Roots.  What have you alleged that

2    involves Mr. Bretzing's own actions as opposed to supervising

3    others?

4            MR. ROOTS:  Well, Count 2 is fairly broadly

5    written --

6            THE COURT:  Mr. Roots, I'm going to interrupt you

7    now, because I can tell you that we're not going to be able to

8    make a transcript of what you're saying at the rate we're

9    going.  I don't know if you're speaking into a speaker phone or

10   not.  Are you?

11           MR. ROOTS:  No.

12           THE COURT:  Then you'll have to speak far more loudly

13   and far more clearly.  This is precisely why, if you had filed

14   a motion asking to appear by phone, I would have denied it.

15   This is an important hearing, and right now your arguments are

16   not even being noted, heard or recorded.  So do your best.

17           MR. ROOTS:  Well, Count 2 is very broadly written,

18   and it does include Mr. Bretzing for a breach of duty to

19   protect the constitutional rights of the plaintiffs.  Count 3

20   is a *Bivens* claim for excessive force, and I would say the

21   complaint as written is quite similar to many other complaints,

22   *Bivens* complaints.

23           THE COURT:  So what excessive force did Mr. Bretzing

24   employ against somebody, for example?

25           MR. ROOTS:  Well, now, I would say the line here is

1   not as bright as it might seem.  Mr. Bretzing was

2   communicating, you know, on site.  He was in active

3   communication with all the other defendants in this case at the

4   time.  So he was -- he wasn't just supervising but directing

5   some of these violations.

6           THE COURT:  All right.  Thank you.

7           MR. ROOTS:  And, of course, failure to train.  And

8   that's laid out very similar to many other *Bivens* lawsuits for

9   failure to train.  I think all the elements are met there.

10          And finally, Count 5, violation of the right to

11  travel, and Count 6 also include Mr. Bretzing.  Count 6 is

12  retaliation for First Amendment -- for people exercising their

13  First Amendment rights.  And I think these counts as written

14  are very -- the complaint is not perfect, it was written by pro

15  se litigants, but it certainly lays out the four corners that

16  are required of a *Bivens* complaint.

17          Again, it's not so much a bright line of supervisory

18  versus -- versus, you know, the people who actually fired the

19  weapons or whatnot or displayed the weapon.  Mr. Bretzing was

20  in active control of the situation.

21          There's the line of cases about the policy arena.

22  You know, that line of cases is very clear that policy

23  supervisors, such as the secretary of -- you know, the

24  secretary of the Department of Justice or the attorney general

25  or someone in a policy position cannot be brought into a *Bivens*

1    claim in this way, but Mr. Bretzing was not that high a level.

2    He was not a policy direct supervisor.  He was a hands-on

3    controlling supervisor.

4              THE COURT:  Thank you.

5              Your argument repeats what your brief makes clear,

6    and that is that this case involves Bretzing's supervision of

7    others.  The fact that he's directly there ordering people to

8    go here or go there, that's what's meant by the term

9    "supervision," and so it therefore fails to state a *Bivens*

10   claim under 12(b)(6) by failing to allege Mr. Bretzing's own

11   acts as opposed to his supervision of others.  It does not

12   remotely come within *Starr v. Baca*.  It does raise the concerns

13   in a new *Bivens* context under a special factors analysis that

14   implicate the implementation of broad decisions as opposed to

15   the direct actions that *Bivens* is intended to get at, and

16   therefore I dismiss the complaint against Mr. Bretzing on Rule

17   12(b)(6).

18             There is the question of qualified immunity.  Step

19   one in looking at qualified immunity is did Mr. Bretzing by his

20   own acts violate someone's constitutional rights.  And here no

21   direct act of Mr. Bretzing's, as opposed to a supervisory act,

22   violate anybody's constitutional rights.  And for that reason,

23   then, he is entitled to qualified immunity as far as that goes,

24   although it's really fundamentally the same 12(b)(6) problem

25   that results in a failure to state a claim.

1    And because we've now been around this a couple times
2    and talked about it, and both in briefing and oral argument
3    it's clear that plaintiff simply disagrees with this concept, I
4    dismiss the complaint for these reasons with prejudice.
5    The complaint also seeks injunctive relief.  And
6    there are two problems with the injunctive relief sought.  One
7    is that in it's -- in an individual capacity against
8    Mr. Bretzing, that can't be granted because he's now an
9    ex-employee of the United States, and that is insuperable.
10   There's no argument about that, and it just can't be done.  So
11   I dismiss all claims for injunctive relief against Mr. Bretzing
12   in his individual capacity, since he can't play an official
13   role anymore.
14   In his official capacity, plaintiff -- plaintiffs
15   need to show some real or immediate threat of similar action
16   occurring to them.  The classic way that's done is, you know,
17   that you complain that you got stopped unconstitutionally
18   without probable cause by a policy that stops, say, black
19   drivers in certain neighborhoods far more often than others,
20   and you assert that it will happen again in the future because
21   you're going to drive through the same neighborhood and you're
22   a black driver, and the custom, practice or policy hasn't
23   changed, so you're at risk to have it happen again.  That's the
24   sort of fact pattern that gets one injunctive relief in a case
25   like this.

1      Here it's difficult to imagine how one would make a

2  case that these similar actions would happen again, but I'll

3  let you, Mr. Roots, make your best case for why your clients

4  are under a real and immediate threat of similar action, in

5  order to justify injunctive relief against Mr. Bretzing in his

6  official capacity.

7      MR. ROOTS:  With regard to the injunctive relief

8  claim, I believe I've already waived those.  We waived those.

9  I believe I communicated with Ms. Taylor we're waiving that

10 claim.

11     THE COURT:  Then I grant the motion to dismiss that

12 claim.

13     There is another theory that I should probably take

14 up.  Maybe I should have taken it up first, since it's

15 jurisdictional, and that's insufficient service of process.  So

16 the law requires for someone -- for plaintiffs suing someone

17 like Mr. Bretzing, that they serve him, which they successfully

18 accomplished, but they must also serve the United States, even

19 though he's an ex-employee.  The advisory committee note to

20 Rule 4I3 makes that clear.

21     Mr. Bretzing, in an improper, unsworn declaration,

22 asserts that plaintiffs have not served the United States.

23 Plaintiffs have never responded to that, but they've also not

24 filed any proof of service against the United States.

25     So I'll just ask, Mr. Roots, with regard to this

1    complaint against Mr. Bretzing, did you ever successfully serve

2    the United States with that complaint?

3             MR. ROOTS:  I have to say my understanding is we did

4    not.

5             THE COURT:  All right.  Then that's a further reason

6    again -- as I say, maybe we're now getting to the cart, which

7    should have come first before the horse and the other theories,

8    and that's jurisdictional failure to serve the United States

9    and justifying dismissal under 12(b)(6).

10            The United States has a theory for dismissal separate

11   from Mr. Bretzing, and that's, of course, that the Federal Tort

12   Claims Act for a case like this requires a written notice of

13   the incident giving rise to the injury for which a federal

14   agency may be held responsible to be sent to the United States

15   or provided within the two -- required two-year period, and the

16   United States in this case has provided a properly executed

17   declaration that that never happened.  If that never happened,

18   then these tort claims -- which is what they are -- are barred

19   under the FTCA.

20            So again, Mr. Roots, it appears that has never

21   happened.  The United States has asserted it's never happened.

22   In your brief you don't assert otherwise.  Is it true, then,

23   that the FTCA tort claim notice was never provided within the

24   required two-year period?

25            MR. ROOTS:  My understanding from talking to Shawna

1  Cox, who was one of the original plaintiffs, Shawna Cox told me

2  that she did send such a notice.  And I've been in

3  communication with her recently, and she indicated in the last

4  two weeks that she was unable to find her paperwork.  But she

5  insists that she did file such a thing.  I have not seen it.

6          THE COURT:  I have before me, then, the United

7  States' properly executed declaration that this has never

8  happened.  I have your brief in response, which never disputes

9  that it didn't happen.  And I have your assertion here today, a

10  hearsay declaration of Ms. Cox that she says she did but can't

11  find the paperwork.

12          I find in favor of the United States on that and rule

13  that I lack jurisdiction for failure to provide the written

14  notice within the required two-year time period, and dismiss

15  with prejudice the claims against the United States.

16          That leaves us with claims against the other men and

17  the Doe defendants.  I'm first of all curious whether any of

18  those are anything other than state law tort claims against

19  state defendants.

20          Mr. Roots, do you know?  Are these all going to be

21  state tort claims against state defendants?

22          MR. ROOTS:  No.  Some of them are clearly identified

23  as the FBI hostage rescue team.

24          THE COURT:  I'm talking about the unnamed defendants.

25  So in what way is an unnamed defendant clearly identified as

1   FBI?

2          MR. ROOTS:  I'd say they're clearly identified by the

3   known facts.  We know there were two agencies at fault.  There

4   were several officers of the Oregon State Police, and there

5   were also several officers of the FBI.

6          THE COURT:  All right.  Ms. Silver, are you on the

7   line?

8          MR. ROOTS:  I'm sorry?

9          THE COURT:  I'm asking for Molly Silver.  Is she on

10  the line?

11         MS. SILVER:  Yes, Your Honor.

12         THE COURT:  Anything you want to say about in what

13  manner this case moves forward against the and other men and

14  Doe defendants?

15         MS. SILVER:  We previously solicited dismissals as

16  not involved in the case.  At this point, proceeding forward,

17  to the extent that Mr. Roots believes he still has any claims,

18  we can raise motions to dismiss and --

19         THE COURT:  I'm losing you now.  Can you speak up?

20         MS. SILVER:  Can you hear me now, Your Honor?

21         THE COURT:  Yes.

22         MS. SILVER:  At this time we are not moving to

23  dismiss.  We've been in discussions about dismissal, but given

24  the procedural posture, we have concerns that claims might be

25  improperly revived, and so it may be best to proceed in a

1    linear track.  If any claims may arise throughout discovery, or

2    putative claims, those can be addressed at that time.

3              THE COURT:  Well, these are the only defendants left

4    in the case, and you represent some or all of them, right?

5              MS. SILVER:  We represent whatever ambiguous "and

6    other men of Harney County."  We don't represent anyone else of

7    the state.  I believe that would fall on state defense counsel.

8    However, it's unclear to us who beyond the previously named

9    Harney County defendants would remain, and so far, as you've

10   heard, plaintiffs' counsel is unwilling to dismiss us.  Moving

11   forward with discovery is what we've planned to do, and being

12   involved in that process.

13             THE COURT:  Ms. Taylor.

14             MS. TAYLOR:  Yes, Your Honor.  Should I stand here --

15             THE COURT:  You can sit there and pull the mic

16   closer.

17             MS. TAYLOR:  Thank you, Your Honor.

18             Thank you, Your Honor, for your cogent summary and

19   analysis of Gregory Bretzing's defense and for your ruling.

20             On behalf of the United States, with respect to the

21   Doe defendants that have been unnamed and unidentified by

22   plaintiffs' counsel, I will say that with respect to any

23   federal employees who are acting within the scope of their

24   employment, that the U.S. may or may not be substituted for on

25   state tort claims, Mr. Roots has already acknowledged that

1   there has been no Form 95 administrative claim that's been

2   presented to the United States with respect to this incident

3   that's the subject of the complaint, so it would be futile for

4   the plaintiffs to amend their complaint to identify named

5   federal employees for state tort claims for that very reason.

6           As to the *Bivens* claims, I only represent Gregory

7   Bretzing and cannot make any arguments on behalf of any

8   putative defendants that have been unidentified.  But I will

9   state this on behalf of the United States:  Doe pleadings are

10  highly disfavored in the Ninth Circuit, as I'm sure the Court

11  is aware.  This case has been languishing for years.  There

12  have been a number of full-blown criminal trials where

13  witnesses have testified, including witnesses from the hostage

14  rescue team.  We have already made arguments before the Court

15  that this complaint, to correct the complaint is time barred,

16  does not relate back, but at this late stage for the Court to

17  allow some amendment that would identify federal employees,

18  whom plaintiffs' counsel had sufficient time and knowledge and

19  notice of who they were, it would simply be futile under Rule

20  15.  And there's certainly case law in the Ninth Circuit and in

21  the District of Oregon that would support the proposition that

22  at this late stage of the pleadings, that an amended complaint

23  naming and identifying the defendants should not take place.

24          THE COURT:  I did neglect to take up your relation

25  back argument.  And your theory there is that the Cox

1  complaint, filed on the last possible day and subsequently
2  withdrawn, can't be this complaint, and any iteration cannot
3  relate back to it since Cox cannot have represented in any way
4  Payne or Sharp, and therefore this complaint in its entirety is
5  time barred.  That's your theory, right?
6        MS. TAYLOR:  That is our position.  When Ms. Cox
7  voluntarily dismissed this case, it operated under Rule 41 to
8  dismiss the action.  We understand that there was a corrected
9  complaint that was filed, but that corrected complaint naming
10  new plaintiffs was filed after the statute of limitations
11  expired, so there was no service on any individual within the
12  90-day time period under Rule 4(m), and it cannot relate back
13  under Rule 14 to the original complaint, which was filed by
14  another plaintiff, not the plaintiffs in this case.
15        THE COURT:  Thank you.
16        Mr. Roots, do you wish to be heard any further on
17  this question?
18        MR. ROOTS:  Yes.  I would say the Court's own orders
19  have already addressed this very issue.  You know, not to go
20  back in all this litigation, but the original complaint had
21  flaws on it.  There were some signatures that were missing.
22  The Court gave leave to fix that problem and correct that
23  problem, and that problem was fixed by October of last year.
24  And so the case has been fully -- it was never without -- the
25  case has never been out of court during that time for Mr. Payne

1    and Mr. -- Ms. Sharp.  They have been plaintiffs all along.

2            And with regard to whether a complaint relates back

3    to the original date of filing, I'd say there's a lot of case

4    law, including the original *Bivens* case.  The original *Bivens*

5    case did not know a single name of any of the defendants.  And

6    so that's the position I guess we're in right now at this

7    moment.

8            Obviously, there have been some leaks and some names

9    have gotten out, but when I filed a motion to file an amended

10   complaint, the State moved in and argued that it all needed to

11   be sealed and that these defendants are in fear for their lives

12   and can't be named, which would be highly unusual.  And so I

13   think it is still a live case with these John Doe defendants

14   representing Oregon State Police and the FBI.

15           MS. TAYLOR:  May I respond, Your Honor?

16           THE COURT:  That's all right.  Thank you.

17           This case has been languishing in the face of

18   plentiful opportunities to be more specific, so I agree that

19   it's time to put a fork in this case.

20           In the face of a murky situation in the beginning, I

21   declined to rule on the question of relation back without

22   allowing the case first to proceed forward in a variety of

23   ways, in the hopes of straightening out that situation.  We now

24   know better than before what really happened back then, and it

25   is my ruling that the current complaint is barred by the

1  statute of limitations filed after the last day it could have

2  been filed, and does not relate back to the Cox complaint,

3  which does not -- did not contain these two plaintiffs here

4  before me today, cannot have contained them, since Ms. Cox was

5  unrepresented and could not represent Payne and Sharp, and

6  their own complaint came too late, past the last point at which

7  the statute had run.  And therefore I dismiss the complaint

8  against all remaining defendants for statute of limitations

9  reasons.

10        It's also true, as Ms. Taylor has pointed out, that

11  the same problem with the FTCA tort claims notice with named

12  federal defendants would apply with equal force to currently

13  unnamed federal defendants, and prevent any state tort claims

14  being made against them, and there are -- there is not the

15  supervisory issue but the new *Bivens* context issue at least

16  with some potential as yet unidentified federal *Bivens*

17  defendants.

18        So there are sort of a cascading series of reasons

19  why the case should not go forward.  Of course, the principal

20  one as to the unnamed defendants is the non-relation back

21  statute of limitations problem.  And therefore I dismiss the

22  complaint on that ground also as to all named defendants with

23  prejudice.

24        Thank you all.  We'll be in recess.

25        MS. TAYLOR:  Thank you.

1          THE CLERK:  Court is in recess.

2          (Proceedings concluded at 9:37 a.m.)

1

2                                --o0o--

3

4          I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9
     /s/Bonita J. Shumway                September 23, 2019
10   _____     _____
     BONITA J. SHUMWAY, CSR, RMR, CRR     DATE
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25