LEAH BROWNLEE TAYLOR
Leah.B.Taylor@usdoj.gov
United States Department of Justice
Senior Trial Attorney
PO Box 7146
Washington, D.C. 20044
(202) 616-4325
Attorney for Greg T. Bretzing and the United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| D. JEANETTE FINICUM;<br>THARA TENNEY TIER COLIER;<br>ROBERT FINICUM; TAWNY CRANE;<br>ARIANNA BROWN; BRITTNEY BECK;<br>MITCH FINICUM; THOMAS KINNE;<br>CHALLICE FINCH;<br>JAMES FINICUM; DANIELLE FINICUM;<br>TEAN FINICUM;<br>and the<br>ESTATE OF ROBERT LAVOY FINICUM.<br>Plaintiffs | Case No. 2:18-CV-00160-SU |
| | Defendant United States'<br>Response to Plaintiffs' Objections<br>To Findings and Recommendation<br>(ECF No. 161) |
| | Oral Argument Requested |
| v. | |
| UNITED STATES OF AMERICA;<br>FEDERAL BUREAU OF INVESTIGATION;<br>BUREAU OF LAND MANAGEMENT;<br>DANIEL P. LOVE; SALVATORE LAURO;<br>GREG T. BRETZING; W. JOSEPH ASTARITA;<br>STATE OF OREGON; OREGON STATE POLICE;<br>KATHERINE BROWN; HARNEY COUNTY;<br>DAVID M. WARD; STEVEN E. GRASTY;<br>THE CENTER FOR BIOLOGICAL DIVERSITY;<br>and JOHN DOES 1-100.<br>Defendants | |

## BACKGROUND AND PROCEDURAL HISTORY[1]

On January 25, 2018, Plaintiffs sued the United States, the Federal Bureau of Investigation,

the Bureau of Land Management, several FBI agents, and several state and local officials in

connection with the death of LaVoy Finicum on January 26, 2016. *See* ECF No. 1 (Complaint).

Finicum was the leader and "the most visible spokesmen" of an armed, self-styled "adverse

possession occupation" of federal property at the Malheur National Wildlife Refuge in Oregon.

ECF No. 89 (Second Amended Complaint or "SAC") ¶ 156. Anti-federal government occupiers

self-described as the "Citizens for Constitutional Freedom" cleared the Refuge, set up a defensive

perimeter, placed an armed guard in the tower, set heavy equipment on roadways, and blocked

entrance and egress to the facilities. *See* SAC ¶¶ 157-159, 162. These acts were crimes. They are

detailed in a federal criminal complaint and superseding indictment charging the occupiers with

felonies. *See* ECF Nos. 108-2-3 (*United States v. Bundy et al,* 3:16-cr-00051 Criminal Complaint and

Superseding Indictment).

In response the FBI brought in its Hostage Rescue Team (HRT), "the Nation's only full

time domestic counter-terrorism unit" enabled "to confront the most complex threats." *See*

https://www.fbi.gov/services/cirg#Tactical-Operations. The FBI also coordinated with local law

enforcement, including the Oregon State Police, the Harney County Sheriff's Office, and the Burns

Police Department.[2] *See e.g*., SAC ¶ 195. The FBI and the Oregon State Police received

---

[1] The factual allegations referenced herein are taken from the Second Amended Complaint and the Findings and Recommendation, including the facts judicially noticed by the Court. *See e.g.* Findings and Recommendation at pp. 3-6. Plaintiffs filed no response or opposition to the federal defendants' motion for judicial notice under Federal Rule of Evidence 201. *See* Docket, generally. They also did not contest the authenticity or admissibility of any of the exhibits filed in support of the federal defendants' motions, filed with the Court and served on counsel. *See* ECF No. 144 (Pls. Opp. to Bretzing's MTD). A more fulsome account of the facts is also set forth in the United States' Motion to Dismiss. *See* ECF No. 108 at pp. 2-7.

[2] *See, e.g.*, Mar. 8, 2016 Press Conference Script – Deschutes County Sheriff's Office,

1

intelligence from an informant that Finicum planned to leave the Refuge and travel on U.S. 395 to John Day, Oregon with other occupiers. SAC ¶¶ 199-200. The route they planned to take was remote and would allow law enforcement to attempt an arrest in a location where no other bystanders or innocent people might be. Bretzing, the Special Agent in Charge of the FBI's Portland, Oregon office at the time, approved an operational plan that permitted the use of a roadblock as a contingency in the "second stage" of the operation, in the event a vehicle stop was unsuccessful. *See* SAC ¶¶ 206-209, 220.

On January 26, 2016, Oregon State Police officers stopped the truck in which Finicum and other occupiers were riding on U.S. 395. Finicum refused to peacefully surrender. *Id*. ¶¶ 236, 243. He sped away, driving at a high rate of speed. *Id*. Before the roadblock, Finicum braked and swerved off the road into a deep snow bank narrowly missing "at least one law enforcement officer…in front of his truck." SAC ¶¶ 249, 256. During these events, Plaintiffs allege that multiple rounds, including lethal rounds, were fired at the truck. *Id*. ¶¶ 249-258. Plaintiffs claim that additional rounds were fired after Finicum came to a stop in the snowbank, but they do not allege that any of the rounds allegedly fired by FBI agents hit Finicum. *See e.g.* SAC ¶¶ 262-65 ("two shots missed LaVoy"). After Finicum almost collided into the roadblock and got out of the truck, two Oregon State Police SWAT Troopers shot and killed him. *Id*. ¶ 268 *see also* ECF No. 17 (First Am. Compl.) ¶ 257 ("two . . . OSP SWAT troopers . . . approached LaVoy…and between the two of them, these JOHN DOE officers fired at least three additional lethal rounds, penetrating LaVoy repeatedly through the back"). But Plaintiffs attribute Fincium's 2016 death to "rogue" federal agents who sought to target him for his protest related to the 2014 Bundy cattle ranch stand-off with the Bureau of Land Management in Bunkerville, Nevada.[3] *See* SAC ¶¶ 62-102.

---

https://sheriff.deschutes.org/March_8_press.pdf (last visited Feb. 23, 2021).

[3] In addition to Greg Bretzing, Plaintiffs also claim that former BLM employees Daniel Love and

Plaintiffs sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1); 2671-2680 (2012) ("FTCA"), along with the other defendants. The operative Second Amended Complaint sets out eight causes of action. *See* SAC at 60-69. Those contain legal conclusions, but they do provide the framework for understanding the complaint. *See Iqbal*, 556 U.S. at 679. Of these eight causes of action only the Plaintiffs' First Cause of Action (for wrongful death) is explicitly brought "against the United States." *See* SAC at p. 60-61. Plaintiffs' Fifth, Sixth, and Seventh Causes of Action are brought "Against All Defendants," *id*. at 65-66, 67, 68, and presumably include the United States. The Fifth Cause of Action asserts a 42 U.S.C. § 1983 claim; the Sixth an Oregon law conspiracy claim; and the Seventh asserts negligence. *See* SAC ¶¶ 310-369. The remaining claims, including the assault and battery claim against State and local officials, including the Oregon troopers who shot Finicum, are not asserted against the United States. *See id*. ¶¶ 370-374.

Plaintiffs ground their tort case against the government on "Finicum suffer[ing] wrongful death by virtue of the UNITED STATES's actions, plans, conduct and policies," SAC ¶ 322; federal officials' "fail[ing] to intervene to prevent harm to LaVoy Finicum, though able," *id*. ¶ 359; and their breaching "a duty to the public to properly train and supervise the officers, employees and agents under their control and influence." *Id*. ¶ 362. That, they say, "led to the untimely and unwarranted death of LaVoy Finicum." *Id*. In response the United States moved to dismiss because Plaintiffs' claims fall outside the FTCA's sovereign-immunity waiver, including the Act's "discretionary-function exception," 28 U.S.C. § 2680(a). *See* ECF No. 108, United States MTD at 8-22.

---

Salvatore Lauro, who are no longer parties to this action, targeted Finicum. *See* SAC ¶ 98.

On July 25, 2020 Magistrate Judge Sullivan issued Findings and Recommendations on the various parties' dismissal motions. *See* ECF No. 161 (Findings and Recommendations or "F&R"). Relevant here, the Magistrate Judge concluded that the FTCA's discretionary-function exception barred Plaintiffs' claims. She also concluded that the United States had not waived sovereign immunity from suit under 42 U.S.C. § 1983 and other federal civil rights statutes, and that Congress had not authorized the suit against the FBI and Bureau of Land Management. *See* F&R at 10-23. In recommending dismissal, the Magistrate Judge relied on the face of the operative complaint. She did not rely on video recordings and trial testimony filed in support of the United States' alternative Federal Rule of Civil Procedure 12(b)(1) challenge. *See e.g.,* F&R at 10-23 *compare with* ECF Nos. 108-6-7 (Oregon SWAT Trooper Testimony Regarding Their Fatal Shooting of Finicum *in United States v. Astarita*, 3:17-cr-002226 (D. Or.)). After several extensions of time to do so, Plaintiffs have objected to the findings and recommendations.[4] None of their objections to the recommended dismissal of the government is valid, and the Magistrate Judge's Findings and Recommendations should be adopted and the government dismissed from the case.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b), a party "may serve and file specific written objections" to a magistrate judge's proposed findings and recommendations. The district judge is required to make a de novo determination of those portions of the report or specified findings or recommendation "that ha[ve] been properly objected to." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C).

---

[4] Plaintiffs' claim for the first time in briefing on the dismissal motions in this case that they did not receive recordings filed with the Court in support of the government's motion. Those recordings were mailed to Plaintiffs' counsel at his address of record on September 3, 2019. Because the Magistrate Judge relied on the operative complaint, statutes, regulations and agency directives and no other materials in her findings and recommendations, Plaintiffs are not prejudiced here.

The court is not required to review the factual or legal conclusions of the magistrate judge as to portions of the F&R to which no proper objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The district judge is free to accept, reject, or modify any part of the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C).

## ARGUMENT

Plaintiffs' objections suffer several substantive and procedural flaws. Several are not specific in whole or in part and hence not proper ones under Rule 72. And the legal premises underlying Plaintiffs' objections—indeed the premises for their very case against the United States—are flawed. Of Plaintiffs' objections to the Findings and Recommendations, their Objections Nos. 1 through 6 appear addressed in whole or part to the recommended dismissal of the United States and its agencies. (Pls. Objs. or "Objs.") None are valid.

I.     **Plaintiffs' Objection No. 1 is Meritless. The Court Properly Considered Plaintiffs' Factual Allegations and Determined That Their Claims Could Not Survive Dismissal as a Matter of Law.**

Plaintiffs Objection No. 1 does not comply with Rule 72(b). It is anything by "specific." Plaintiffs contend that the Magistrate Judge "failed and refused to acknowledge and weigh the facts in the Second Amended Complaint in favor of Plaintiff and further failed to draw reasonable inferences from those well pled facts." Objs. at 12. But their objection is not meaningfully developed. Plaintiffs do nothing to show how, contra the Magistrate Judge's conclusions, well-pleaded allegations in the operative complaint support an inference of misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The closest they come to adding any specificity to their first objection is their apparent complaint that the Magistrate Judge viewed the Bunkerville, Nevada events as irrelevant. But here too, they make no meaningful attempt to demonstrate how those

events are legally relevant; they just insist that they are. That alone is reason enough to overrule their objection.

Specificity aside, Plaintiffs misunderstand pleading standards. The Magistrate Judge did not reject their claim because she disbelieved Plaintiffs' allegations; she rejected it because too many of those allegations are conclusory and Plaintiffs' inferences connecting the Bunkerville events to the Refuge takeover and Finicum's death are not plausible. That determination was correct. Here, just as in *Iqbal*, "[i]t is the conclusory nature of [Plaintiffs'] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." 556 U.S. at 681. Although none of Plaintiffs' Bunkerville-related claims are actionable because they failed to administratively exhaust them (as required by 28 U.S.C. § 2675),[5] the Magistrate Judge considered and evaluated the myriad conspiratorial allegations lobbed at the United States, including the allegation that Finicum was targeted "for an earlier incident in Nevada" by "rogue" federal agents. *See* F&R at 21-23, 31. And the Magistrate Judge was correct that Plaintiffs' claim that "all Defendants . . . conspired with each other and together[] to cause LaVoy Finicum's harm and ultimate death," SAC ¶ 357, states no FTCA claim because "'[c]onspiracy' is not a tort or 'separate theory of recovery' under Oregon law." F&R at 22 (citing *Granewich v. Harding*, 329 Or. 47, 53, 985 P.2d 788, 793 (1999)). That conclusion was correct because the FTCA imposes liability only to the extent state law does so. *See* 28 U.S.C. § 1346(b)(1); *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). And without

---

[5] As explained in the United States' motion to dismiss, Plaintiffs' administrative claims filed with the FBI under 28 U.S.C. § 2675 contain no notice related to acts or omissions taken by any federal employee before January 25, 2016, nor any claim for acts or omissions concerning Bunkerville, Nevada. *See* ECF No. 149 (Reply in Support of the United States' MTD at 19-20); No. 149-2 (Deborah Crum FBI Decl.); No. 149-2-4 (FBI Administrative Claims). Plaintiffs submitted no administrative claim at all to the Department of Interior, the Bureau of Land Management's parent agency. *See* ECF No. 149-1 (Charles Wallace U.S. Dep't of Interior Decl.).

an actionable tort on which to peg Plaintiffs' "conspiracy" theory, there can be no FTCA liability at all. *See Ting v. United States*, 927 F.2d 1504, 1514-15 (9th Cir. 1991).

The Magistrate Judge was also correct that Plaintiffs' conspiracy theories bear no meaningful, let alone plausible, relationship to the wrongful death and negligence claims they actually bring against the United States. Plaintiffs' wrongful death, "conspiracy," and negligence causes of action are based on the government's "actions, plans, conduct and policies," SAC ¶ 322 "failure to intervene to prevent harm" to Finicum, *id*. ¶ 359, and breach of "a duty to the public to properly train and supervise the officers, employees and agents" when conducting the operation to arrest Finicum and his confederates. *Id*. ¶ 362. For that reason as well, the Magistrate Judge was correct in rejecting both the plausibility and the relevance of Plaintiffs' conspiracy theory of a years-long plot to kill Finicum the next time he provoked a confrontation with federal law enforcement agents.[6] Judge Sullivan properly assessed the Plaintiffs' allegations under the governing substantive and procedural standards, and Plaintiffs' objection No.1 lacks merit.

## II. Plaintiffs' Objection No. 2 is Improperly Non-Specific and Unsupported in Law. The Magistrate Judge Properly Determined that the FTCA's Discretionary-Function Exception Barred Plaintiffs' FTCA claims.

The Magistrate Judge recommended dismissal under the "discretionary-function exception" to the FTCA sovereign-immunity waiver, 28 U.S.C. § 2680(a). The exception requires determining

---

[6] As Judge Sullivan explained when hearing the parties dismissal motions:

> THE COURT: Let me say this: I looked at the sixth claim for relief, and it has significant defects, in terms of *Twombly* and the allegations that are required to make out a case for that. If you refer back to some of the other allegations, then you're back to, you know, things like the Bunkerville allegations, which, frankly, I think are totally irrelevant. But what we're talking about here is the wrongful death of Mr. Finicum, and we're not talking about Bunkerville or any of the issues that you claim arise out of that particular incident.

Mar. 6, 2020 Tr. of Mot. Hr'g. at 19-20.

first, if government agents were authorized to exercise judgment or choice in taking the acts triggering suit, and second, "whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy." *Terbrush v. United States*, 516 F.3d 1125, 1130 (9th Cir. 2008) (citation and internal quotations omitted); *see also Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988); F&R at 16.

Applying those standards, the Magistrate Judge first examined federal statutes and regulations, Attorney General Guidelines for Domestic FBI Operations, and the FBI's Domestic Investigations Operations Guide ("DIOG"). Those materials demonstrated that the surveillance, monitoring, intelligence and information sharing, and efforts to apprehend Finicum and his accomplices were all discretionary. F&R at 18-19. Here, as in past cases, "no statute or regulation . . . prescribes a course of action for the FBI and its agents to follow in the investigation of crime." *Gonzales v. United States*, 814 F.3d 814 F.3d 1022, 1029 (9th Cir. 2016). Judge Sullivan then concluded that the arrest attempt here met the second part of the test because "[t]he Ninth Circuit has held that '[i]nvestigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decision about the nature and scope of a criminal investigation.'" F&R at 19 (quoting *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996)). That immunized discretion extends to arrest operations because they "implicate a number of policy considerations, including weighing 'the urgency of apprehending the subject in light of such factors as the potential threat the subject poses to public safety and the likelihood that the subject may destroy evidence,' as well as the consideration of available resources and "how to allocate those resources among the many investigations for which they are responsible.'" *Id.* at 19-20 (quoting *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997)).

Those determinations were correct and amply supported by precedents from the Ninth Circuit and courts around the country.

Plaintiffs object that the Magistrate Judge gave short shrift to their claims that federal agents misrepresented information: "[T]he Magistrate failed to consider the facts in the SAC alleging federal agents knowingly initiating [sic] false reports about LaVoy Finicum between 2014-16 which was transmitted to local and state law enforcement authorities who were tasked with responding to emergencies involving danger to life or property." Objs. at 15. But once again Plaintiffs' objection is not specific, as Rule 72(b) requires. And it is unsupported; Plaintiffs don't even point to a portion of the operative complaint they claim supports it. Nor do they explain how supposed misrepresentations are pertinent to the otherwise discretionary plan to arrest Finicum or whether the FBI officials who planned the operation misrepresented anything. They simply assert in conclusory terms that "federal agents submitted knowingly malicious and false information for the purpose of deceiving the public as well as local and state authorities which Plaintiffs allege was the direct and proximate cause of Finicum's death." Objs. at 16. The objection is not specific, nor do Plaintiffs supply any well-pleaded allegations to back it up. They simply recite their false information assertion but "do[ ] not tie those facts back to the discretionary function exception." *Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020). And so the Magistrate Judge did not err in recommending dismissal on discretionary-function grounds.

Plaintiffs say their "position is that providing knowingly false information en route to or otherwise precipitating state and federal criminal investigations and foreseeable prosecution(s) is 'sufficiently separable' from the 'protected discretionary decision.'" Objs. at 16. But that overgeneralizes, and it is not the law. One can safely assume that the discretionary-function exception doesn't shield knowingly submitting false affidavits to procure criminal charges as in *Reynolds v. United States*, 549 F.3d 1108, 1113 (7th Cir. 2008). *See also* Objs. at 16-17. That's

perjury in violation of clear federal law. *See* 18 U.S.C. § 1621. The discretionary-function exception doesn't apply to official actions that federal law clearly prohibits. *Berkovitz*, 486 U.S. at 536. But Plaintiffs are wrong to take from that a broad general principle that the discretionary-function exception drops out anytime a plaintiff alleges law enforcement "misrepresentation." If Plaintiffs were right, the exception would never shield undercover operations, which depend heavily on discretion *and* deception. That the exception does indeed cover such cases refutes Plaintiffs' theory that "providing knowingly false information en route to or otherwise precipitating state and federal criminal investigations and foreseeable prosecution(s)," Objs. at 16, is outside the discretionary-function exception. *See, e.g., Frigard v. United States*, 862 F.2d 201, 203 (9th Cir.1988) (per curiam); *see also Joiner*, 955 F.3d at 406; *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006).

And just as Plaintiffs point to no well-pleaded facts to support their "misrepresentation" theory, they also identify no specific laws, regulations, or mandatory directives that curbed FBI officials' discretion in some way relevant to this case. Nor is there even any reason to think that "misrepresentation" meaningfully affected the FBI's arrest plan or the on-scene officers' decision to use deadly force after Finicum refused to surrender and careened toward the roadblock. *Cf. Plumhoff v Rickard*, 572 U.S. 765, 777-78 (2014) (deadly force was justified where motorist refused to surrender and resumed a high-speed chase). So there's no apparent causal link between the nondiscretionary conduct they claim ("misrepresentation") and the injuries for which they sue. *See Joiner*, 955 F.3d at 406.

The plaintiffs here don't sue for malicious prosecution, and they don't allege perjury. They can't sue for misrepresentation, nor even maintain a claim "arising from" it. The FTCA bars that too. *See* 28 U.S.C. § 2680(h); *Block v. Neal*, 460 U.S. 289, 297 (1983); *see also Thomas-Lazear v. FBI*, 851 F.2d 1202, 1206-07 (9th Cir. 1988). Plaintiffs do sue for negligence and "wrongful death

by virtue of the UNITED STATES's actions, plans, conduct and policies," SAC ¶ 322; federal officials' "fail[ing] to intervene to prevent harm to LaVoy Finicum, though able," *id*. ¶ 359; and breach of "a duty to the public to properly train and supervise the officers, employees and agents under their control and influence." *Id*. ¶ 362. But as the Magistrate Judge correctly ruled, that all involves quintessentially discretionary conduct under federal law. For all of those reasons, Plaintiffs are wrong in both their conclusory insistence that misrepresentation was the "direct and proximate cause" of Finicum's death, Objs. at 16, and that the discretionary-function exception doesn't apply here.

Plaintiffs also argue—in their Objection No. 2 and in scattered other places in their objections—that the discretionary-function exception doesn't apply to claims covered by the "law enforcement proviso" in § 2680(h). *See, e.g*., Objs. at 18 ("With the addition of the law enforcement proviso, such behavior *is no longer excepted from the FTCA's waiver of sovereign immunity* under § 2680(h)."); *see also id*. at 28. The proviso expands the FTCA sovereign-immunity waiver to allow certain intentional tort claims if based on the conduct of federal investigative or law enforcement officers. *Millbrook v. United States*, 569 U.S. 50, 54 (2013). But as explained before, Plaintiffs' don't sue the United States on any claims made actionable under the proviso. They sue for wrongful death and negligence based on "the UNITED STATES's actions, plans, conduct and policies," SAC ¶ 322; federal officials' "fail[ing] to intervene to prevent harm to LaVoy Finicum, though able," *id*. ¶ 359; and federal agents' breach of "a duty to the public to properly train and supervise the officers, employees and agents under their control and influence." *Id*. ¶ 362. And so Plaintiffs wouldn't be entitled to the benefit of their argument even if it was valid (and it is not). Assault and battery is actionable under the proviso, and Plaintiffs do bring such a claim, but not against the United States. Their assault and battery claim is against State and local officials, including the Oregon troopers who shot Finicum. *Id*. ¶ 373.

In any event, Plaintiffs are wrong on the law. Every circuit to consider the question save one has held that claims covered by the law enforcement proviso remains subject to § 2680(a)'s discretionary-function exception. *See Joiner*, 955 F.3d at 406 (collecting cases). The Ninth Circuit agrees with the majority position, and it has rejected the argument that the law enforcement proviso exempts covered claims from the other parts of the FTCA's § 2680. *See Gasho v. United States*, 39 F.3d 1420, 1434-35 (9th Cir. 1994).

Changing tack, Plaintiffs also argue under their Objection No. 2 heading that there were genuinely disputed facts concerning alleged "intentional fabrications/fake documents and information manufactured by the Defendants" and that the Magistrate Judge erred by failing to apply the summary judgment standard. Objs. at 13. Relatedly, they say they should have been granted jurisdictional discovery. Plaintiffs are wrong on both counts.

First, a court can "look beyond the complaint to matters of public record without having to convert [a] motion into one for summary judgment" when resolving an attack on jurisdiction under 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). That is what the Magistrate Judge appropriately did. She focused on the operative complaint's allegations and properly took judicial notice of public records (none of which Plaintiffs disputed or contested) under Federal Rule of Evidence 201, and determined the Court lacks subject matter jurisdiction under the FTCA. *See* F&R at 3-4, 18-21; *see* ECF No. 144 (Pls. Opp. to Bretzing's MTD). In resolving the government's dismissal motion the Magistrate Judge did not look past the complaint except to the extent of relying on federal statutes and regulations, as well Attorney General Guidelines for Domestic FBI Operations (Attorney General Guidelines or "AGG DOM"), and the FBI's Domestic Investigations Operations Guide ("DIOG"). From that the Magistrate Judge determined that the surveillance, monitoring, intelligence and information sharing, and efforts to apprehend Finicum and his accomplices were all discretionary acts. *Id*. at 18-19. That is a common approach in discretionary-

function exception cases and does not in any event warrant resort to full-dress summary-judgment procedure.

For that reason alone jurisdictional discovery is unwarranted. What's more Plaintiffs made no showing that "pertinent facts bearing on the question of jurisdiction are controverted" or that "a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation and internal quotation omitted). They claim, for example, that the poor video quality of the shooting creates a dispute as to whether Finicum was reaching for a weapon. But the Magistrate Judge's determination that the discretionary-function exception applied to the claims against the United States was not based on the shooting video. *See* Objs. at 19 *compare with* F&R at 3-4, 15-21. That was the proper procedure, and the Magistrate Judge properly determined that they were not entitled to jurisdictional discovery. *See Gonzalez*, 814 F.3d at 1031 (affirming the district court's denial of jurisdictional discovery regarding FBI investigatory policies on futility grounds).

### III.    Plaintiffs' Objection No. 3 is Meritless. FBI Officials Had Discretion to Plan and Attempt an Arrest.

Plaintiffs' Objection No. 3 argues that federal agents lacked probable cause to arrest Finicum. It's far from clear how the objection fits in; Plaintiffs don't sue the United States on any claim that depends on probable cause as an element. And as the Magistrate Judge properly understood, "determinations of whom to arrest and when to arrest [come] within the discretionary-function exception." *Dupris v. McDonald*, 554 F. App'x 570, 573 (9th Cir. 2014). And even Plaintiffs grudgingly acknowledge the possibility that Finicum might have committed a misdemeanor. *See* Objs. at 20 ("[T]here may be an argument that supports Finicum possibly engaged[ed] in misdemeanor conduct at the Refuge"). That offense is enough. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in

his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). And the FBI is authorized to make warrantless arrests for any offense against the United States committed in an agent's presence or for any felony cognizable under federal law if agents have reasonable grounds to believe that the person to be arrested has committed or committing such a felony. *See* Objs. at 20 (citing the F&R discussion of 18 U.S.C. §§ 3052 and 1361 as the relevant criminal statutory bases for arrests).[7] No error can be assigned to the Court's determination that the discretionary-function exception applied.

### IV.    Plaintiffs' Objection No. 4 is Meritless. An Alleged Constitutional Violation Does Not Supply a Basis to Sue the United States Under the FTCA or Render the Discretionary-Function Exception Inapplicable.

Plaintiffs' appear to acknowledge that their negligent hiring, supervision, and retention of employees claims fail under *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000). *See* Objs. at p. 23. Their remaining objection to the Magistrate Judge's findings and recommendations is based on the theory that Bretzing was an alleged policy-maker who had no discretion to conspire to commit unconstitutional acts against Finicum. *Id*. at 23-24. Here again, their objection is non-specific; Plaintiffs simply assert Bretzing violated the Constitution without meaningfully developing how that is so. And as explained, their conspiracy allegations are hopelessly conclusory. As between the possibility that Bretzing and other officials planned how to arrest Finicum in connection with the

---

[7] Plaintiffs' conclusory claim that Finicum and his fellow conspirators engaged in "adverse possession" of the Refuge is legally frivolous. *See* Objs. at p. 20. The armed "occupiers" of the Refuge had no lawful right to claim ownership of the MNWR through "adverse possession" under federal or Oregon law. *Cox v. United States of America*, 17-cv-00121, ECF 15, 18 (D. Or. 2017); *United States v. Bundy*, No. 3:16-cr-00051- BR (D. Or. Feb. 1, 2017), at 3 ("the federal government has constitutional authority to own the MNWR"); *see also Bundy,* 3:16-cr-00051-BR, 2016 WL 5340303, at *1-2 (D. Or. Sept.21, 2016) ("[t]he lands comprising the Malheur National Wildlife Refuge are owned by the United States government…."). Plaintiffs' page-long citation to purported language on a DOJ website concerning adverse possession, not referenced by link or attached to their filing, is irrelevant to the circumstances of this case. *See* Objs. at p. 21.

Refuge takeover, on the one hand, and Plaintiffs' theory that federal agents plotted Finicum's premeditated killing, on the other, Plaintiffs' conspiracy allegations are not plausible. *See Iqbal*, 556 U.S. at 678.

Plaintiffs' attempt to characterize their negligence claims as "unconstitutional acts" does not in any event shield their claims from the discretionary-function exception. "The theme that 'no one has discretion to violate the Constitution' has nothing to do with the Federal Tort Claims Act, which does not apply to constitutional violations." *Linder v. United States*, 937 F.3d 1087, 1090 (7th. Cir. 2019), *cert denied*, 141 S. Ct. 159 (2020). The FTCA's limited coverage leaves it as "as a means to seek damages for common-law torts, without regard to constitutional theories." *Id*. And contrary to Plaintiffs' suggestion, the Constitution does not invariably supply the kind of "*specific* mandatory directive*" limiting discretion under § 2680(a), that *Berkovitz* requires. *See* 486 U.S. at 544 (emphasis added) *compare with* Objs. at p. 23. The Constitution typically speaks in "majestic generalities," *Katzenbach v. Morgan*, 384 U.S. 641, 649 (1966), not "specific directives." For example, the Fourth Amendment itself "does not always give a clear answer as to whether a particular application of force" is forbidden. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds, Pearson v. Callahan*, 555 U.S. 223 (2009). The same is true for many other constitutional commands, such as the limits on warrantless arrests. *See, e.g., District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). That is why, for example, officials have qualified immunity from those constitutional torts that are not clearly established violations of the law. *See ibid*.; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Putting aside Plaintiffs' characterization of their claims, Plaintiffs fail to cite any constitutional provision, statute, regulation, or policy specifically prohibiting the alleged investigatory and operational acts they challenge here. As the Magistrate Judge correctly determined, the alleged acts or omissions Plaintiffs attributed to Bretzing and other federal officials

was permissible and discretionary under the relevant federal statutes, regulations, and FBI policies. *See* F&R at 15-21. That determination was wholly consistent with Ninth Circuit precedent and prevailing law. *See e.g. Kornberg v. United States*, 798 F. Appx. 1019, 1020 (9th Cir. 2020) (holding that claims based on negligent and reckless employment, supervision, and training of government employees "fall squarely within the discretionary-function exception"); *Kelly v. United States*, 241 F.3d 755, 763-64 (9th Cir. 2001) (similar holding); *Vickers v. United States*, 228 F.3d 944, 948 (9th Cir. 2000) (same); *see also Linder*, 937 F.3d at 1091 (concluding that U.S. Marshals' Service investigation of potential crimes, and the management of its workforce were "discretion-laden" subjects under § 2680(a) which "did not lead to liability for the Treasury"). And nothing in the Constitution clearly countermands the statutes, regulations, and directives the Magistrate Judge properly relied on.

## V.    Plaintiffs' Objection No. 5 is Meritless. Plaintiffs' Belated Request for Discovery and Leave to Cure Deficiencies in Their Second Amended Complaint Should Be Rejected.

Plaintiffs' fifth objection argues that they "made claims in the SAC which sound in false imprisonment, invasion of privacy, malicious prosecution, assault and battery and negligence," and that "those groups of claims fall within the FTCA's 'law enforcement officer' proviso, 28 U.S.C. § 2680(h), and, at this stage of the proceedings, do not appear to be protected by the discretionary function exception." Objs. at 24 (citing *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982)). Plaintiffs' mistaken premise that the FTCA's law enforcement proviso exempts covered claims from the discretionary-function exception is refuted above. And as also explained above, the Magistrate Judge was correct in relying on that exception to recommend dismissal. To the extent that Plaintiffs' contend that the alleged tactical decisions to use a roadblock and other force to stop Finicum constituted an "assault and battery," for example, *see* Objs. at 25, the Magistrate Judge correctly concluded that federal officials' actions fell squarely within the FTCA's discretionary-

function exception. *See* F&R at 15-20. The techniques federal agents deploy in response to threats involve "balanc[ing] federal policy and social interests" such as the "allocation of federal resources" and "the safety of federal personnel." *Estate of Redd v. United States*, 171 F. Supp. 3d 1229, 1236 (D. Utah 2016) *aff'd*, No.16-4059, 2017 U.S. App. LEXIS 2555 (10th Cir. Feb. 14, 2017).

It follows that amendment to add Plaintiffs' new theories would be futile. And "futility of amendment alone can justify the denial of a motion [to amend]." *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009). Because "proviso" claims are not exempt from the discretionary-function exception, that provision would bar Plaintiffs' new theories, just as it bars their present wrongful death and negligence claims. Aside from that, probable cause to arrest renders futile a false imprisonment claim; it's a complete defense. *Bacon v. City of Tigard*, 81 Or. App. 147, 150, 724 P.2d 885, 886 (Or. Ct. App.1986); *see also Peebles v. Yamhill Cty.*, 26 F. App'x 643, 645 (9th Cir. 2001). Malicious prosecution and abuse of process are nonstarters. Both require initiation of legal process. *See Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994); Restatement (Second) Torts § 653 (1977). But Finicum died before he could be charged. Plaintiffs don't explain the invasion of privacy theory, but it presumably rests on the supposed federal misrepresentations about Finicum. *See, e.g.*, Objs. at 16, 17, 22. Yet the courts of appeals agree that "that claims for false light/invasion of privacy are barred by the libel and slander exception in § 2680(h)." *Cadman v. United States*, 541 F. App'x 911, 913-14 (11th Cir. 2013) (collecting cases). The Ninth Circuit holds essentially the same. And it has upheld denial of leave to amend where the FTCA's libel and slander exception barred proposed new claims styled variously as "slander,

invasion of privacy and tortious interference with contractual relations" and "negligent infliction of emotional distress." *Thomas-Lazear v. FBI*, 851 F.2d 1202, 1206-07 (9th Cir. 1988).[8]

While leave to amend should be denied on futility grounds, undue delay is another reason to deny leave here. In assessing that, a court "inquire[s] 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)). And the answer to that inquiry is plain. It has been more than five years since the events triggering this suit and more than three years since Plaintiffs filed it. They are already on their third complaint. And they surely "knew or should have known the facts and theories raised by the amendment in the original pleading." *Ibid*. (citation and internal quotations omitted). Indeed, Plaintiffs already sue State and local officials, including the Oregon troopers who shot Finicum, for assault and battery. SAC ¶¶ 370-374. So they have known all along about the possibility of such a claim. Likewise, they have known from the beginning about the attempt to arrest Finicum and the two stops on U.S. 395 that presumably would be the basis for a false imprisonment claim.

Federal pleading is not a game of whack-a-mole in which plaintiffs plead, defendants defend, courts consider and rule, and then the process starts all over to satiate a plaintiff's hope she'll luck into something. Plaintiffs have had ample opportunity to try to plead a case against the United States and failed each time. No further leave to amend is warranted.

### VI.    Plaintiffs' Objection No. 6 is Meritless. Plaintiffs' Have No Actionable

---

[8] Under Oregon law, "[t]he tort of false light is akin to the tort of defamation in that it is based on statements about a person that lead others to believe something about that person that is false," consistent with libel and slander. *Baldin v. Wells Fargo Bank, N.A.*, No. 3:12-CV-648-AC, 2013 WL 794086, at *15 (D. Or. Feb. 12, 2013), *report and recommendation adopted*, No. 3:12-CV-00648-AC, 2013 WL 796712 (D. Or. Mar. 4, 2013). And as explained, "t]he United States has not waived sovereign immunity over defamation claims." *Khenaisser v. Zinke*, 693 F. App'x 608, 609 (9th Cir. 2017).

**Conspiracy Claim Against the United States.**

Plaintiffs finally concede they cannot pursue conspiracy theories against the United States under federal civil rights statutes. Objs. at 27. They also concede that their claims against the FBI and the BLM are not separately actionable and abandon them. *Id*. at 19. But they object to the Magistrate Judge's findings and recommendations to the extent federal agents supposedly conspired to engage in "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." *Ibid*. But of course a plaintiff cannot avoid FTCA exceptions by charging a conspiracy. As already explained, conspiracy is not itself a tort under Oregon law. *Granewich v. Harding*, 329 Or. at 53, 985 P.2d at 793; *see also* F&R at 15-16. And alleging a conspiracy does nothing to alter the discretionary nature of the government conduct in issue. Conspiracy is just a way to expand liability for some underlying tort. *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). But when it applies—as it does here—the discretionary-function exception blocks tort liability "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

## CONCLUSION

For the foregoing reasons Plaintiffs' objections should be overruled, the Magistrate Judge's Findings and Recommendations adopted, and Plaintiffs' claims against the United States should be dismissed with prejudice.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Constitutional Tort Staff
Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel
Constitutional Tort Staff

Torts Branch, Civil Division

/s/ Leah Brownlee Taylor
LEAH BROWNLEE TAYLOR
United States Department of Justice
Senior Trial Attorney
Constitutional Tort Staff
Torts Branch, Civil Division
PO Box 7146
Washington, D.C. 20044
Leah.B.Taylor@usdoj.gov

Attorney for Defendants
United States of America and Greg Bretzing

## LOCAL RULE 7.2 CERTIFICATE

In accordance with Local Rule 7-2 (b), counsel certifies that this brief complies with the page limitation under LR 7-2(b) because it contains approximately 18 and half pages, including headings, footnotes, and quotations, but excluding any caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/ Leah Brownlee Taylor
Leah Brownlee Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, I filed the foregoing document through the

CM/ECF system, causing the following individuals to be served by electronic means, as reflected in

the Notice of Electronic Filing:

**J. Morgan Philpot**
JM Philpot Law
1063 E. Alpine Dr.
Alpine, UT 84004
Email: morgan@jmphilpot.com

**James S. Smith**
Department of Justice
Trial Division
100 SW Market St
Portland, OR 97201
Email: james.s.smith@doj.state.or.us

**Molly S. Silver**
**Thomas F. Armosino**
Frohnmayer Deatherage, et al.
2592 E. Barnett Road
Medford, OR 97501
Email: armosino@fdfirm.com


/s/ Leah Brownlee Taylor
Leah Brownlee Taylor

21