IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


**D. JEANETTE FINICUM et al.,**

                Plaintiffs,

    v.

**UNITED STATES OF AMERICA et al.,**

                Defendants.

No. 2:18-cv-00160-SU

OPINION AND ORDER


**MOSMAN, J.,**

On July 24, 2020, Magistrate Judge Patricia Sullivan issued her Findings and Recommendation (F. & R.) [ECF 161], in which she made the following recommendations:

- GRANT in part and DENY in part the State Defendant's Motion to Dismiss [ECF 105].

- GRANT the County Defendant's Motion to Dismiss [ECF 106].

- GRANT Defendant Greg T. Bretzing's Motion to Dismiss [ECF 107].

- GRANT Defendant United States of America's Motion to Dismiss [ECF 108].

The State Defendants filed objections. State Defs.' Objs. [ECF 169]. So did Plaintiffs. Pls.' Objs. [ECF 171].

Upon review, I largely agree with Judge Sullivan's thoughtful opinion. I write here to address the parties' objections and to explain where I reach a different conclusion than Judge Sullivan.

## STANDARD OF REVIEW

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F. & R. to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F. & R. depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F. & R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

As described in Judge Sullivan's F. & R., this case concerns the shooting death of Robert LaVoy Finicum. Plaintiffs include the wife and representative of his estate, Jeanette Finicum, along with his children and heirs. Of the many defendants sued, several have already been dismissed. *See* F. & R. [ECF 161] at 6–7; Pls.' Objs. [ECF 171] at 19 (abandoning claims against the FBI and BLM).

The remaining defendants fall into one of three groups: (1) the Federal Defendants, (2) the State Defendants, and (3) the County Defendants. The Federal Defendants include the United

States of America and FBI Special Agent Greg T. Bretzing. The State Defendants include the

state of Oregon, the Oregon State Police ("OSP"), Governor Kate Brown, OSP Superintendent

Travis Hampton, Trooper 1, and Trooper 2.[1] The County Defendants include Harney County,

Harney County Sheriff David Ward, and Harney County Court Judge Steven Grasty.

I discuss the objections to Judge Sullivan's F. & R. as to each group of Defendants,

beginning with the Federal Defendants.

## I.      Federal Defendants

The remaining Federal Defendants are the United States of America and Special Agent

Bretzing. I discuss the claims against each in turn. For the following reasons, I agree with Judge

Sullivan's recommendation to grant the United States' and Special Agent Bretzing's motions.

### A.      United States of America

The claims against the United States include wrongful death under the Federal Tort

Claims Act ("FTCA"), a *Monell*[2] claim, a claim referred to as "conspiracy," and a negligence

claim under Oregon law. Judge Sullivan recommends dismissal of all four claims. F. & R. [ECF

161] at 15–23.

Judge Sullivan recommends dismissal of the *Monell* and conspiracy claims because those

claims do not fall within the terms of the FTCA's waiver of sovereign immunity. *Id.* at 21–23.

Plaintiffs "respectfully concede to dismissal" of the *Monell* claim against the United States. Pls.'

Objs. [ECF 171] at 27 (maintaining claim against County Defendants only). Plaintiffs do,

however, object to Judge Sullivan's recommendation of dismissal of the conspiracy claim. *Id.*

But they provide no legal authority, or any discernable argument, as to why the conspiracy claim

---

[1] Trooper 1 and Trooper 2 are pseudonyms for the troopers who shot Mr. Finicum.

[2] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

should proceed even though, under Oregon law, conspiracy is not a separate theory of recovery. *See Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999); *see also* 28 U.S.C. § 1346(b)(1) (explaining that the United States is "liable to the claimant *in accordance with the law of the place where the act or omission occurred*" (emphasis added)). I agree with Judge Sullivan's recommendation and dismiss these two claims.

This leaves the FTCA claim.[3] Plaintiffs claim that federal officers, agents, and employees wrongfully caused Mr. Finicum's death. Second Am. Compl. [ECF 89] ¶¶ 310–25. Specifically, Plaintiffs allege that the officers, agents, and employees failed to intervene "to prevent the wrongful acts described herein, though able," thereby causing Mr. Finicum's death. *Id.* ¶ 314. They allege that the United States negligently hired, trained, supervised, and retained agents and employees. *Id.* ¶¶ 315–16, 362. And they allege that the United States caused Mr. Finicum's death by virtue of its "actions, practices, plans, conduct and policies." *Id.* ¶ 322.

Judge Sullivan recommends dismissal based on the discretionary-function exception to the FTCA. F. & R. [ECF 161] at 15–21. As Judge Sullivan explained, if this exception applies, then the court lacks jurisdiction over the FTCA claim. *Id.* at 16. I agree with Judge Sullivan's careful analysis, and I adopt it in full.

None of Plaintiffs' objections are persuasive. First, Plaintiffs assert that Judge Sullivan "continuously and perpetually failed and refused to acknowledge and weigh the facts . . . in favor of Plaintiff." Pls.' Objs. [ECF 171] at 11–12. Plaintiffs point out that Judge Sullivan viewed certain allegations regarding historical events that preceded Mr. Finicum's death as irrelevant. *Id.* at 12. But Plaintiffs never explain why those allegations are relevant to a discretionary-function

---

[3] Since the FTCA and negligence claims against the United States overlap, I consider them together, as did Judge Sullivan. *See* 28 U.S.C. § 1346(b)(1) (providing that under the FTCA, liability in negligence actions is based on state law).

4 – OPINION AND ORDER

analysis (or to an analysis of any other issue pending before me), or how viewing those allegations in a different light would lead to a different conclusion. This is not the sort of objection contemplated by the federal rules. *See* Fed. R. Civ. P. 72(b)(2) (allowing "*specific written objections to the proposed findings and recommendations*" (emphasis added)). Without an adequate explanation, I am left to speculate as to what Plaintiffs could possibly mean—a difficult task at best and an impermissible one at worst. In any event, there is nothing in Judge Sullivan's analysis of the discretionary-function exception to suggest that she applied the wrong legal standard. And, in analyzing all the objections before me, I view all Plaintiffs' factual allegations as true, so long as they are supported by more than "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, Plaintiffs claim that "providing knowingly false information" falls outside the scope of the discretionary-function exception. Pls.' Objs. [ECF 171] at 16 (citing *Reynolds v. United States*, 549 F.3d 1108 (7th Cir. 2008)). The United States agrees that the discretionary-function exception does not shield acts that violate federal law, such as perjury. Def. U.S.A.'s Resp. [ECF 176] at 9–10. But the exception can shield undercover operations, which often rely on deception and large amounts of discretion. *See Frigard v. United States*, 862 F.2d 201, 203 (9th Cir. 1988) (per curiam) (holding that the discretionary-function exception applied to bar suit over the CIA's use of a covert investment company). Here, Plaintiffs take issue with the FBI operation that ultimately led to Mr. Finicum's death. But an "undercover national security operation is a textbook example of discretionary action that Congress meant to insulate from judicial second-guessing." *Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020).

Third, Plaintiffs seem to suggest that the discretionary-function exception is inapplicable as to claims made against law enforcement. Pls.' Objs. [ECF 171] at 18, 25–26 (citing 28 U.S.C.

§ 2680(h)). Under the "law enforcement proviso," the United States has waived sovereign immunity as to claims against investigative or law enforcement officers arising out of the intentional torts of assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution. 28 U.S.C. § 2680(h); *see also Millbrook v. United States*, 569 U.S. 50, 54 (2013). Plaintiffs have not brought any of these intentional tort claims against the United States. (In fact, Plaintiffs brought assault and battery claims against some Defendants, but not the United States.) Even if they had, or if the complaint could be construed to implicitly do so, the Ninth Circuit has held: "If a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." *Gasho v. United States*, 39 F.3d 1420, 1434–35 (9th Cir. 1994). Here, as Judge Sullivan explained, the alleged tortious conduct involves a discretionary function.

Moreover, the proviso does not allow for claims arising out of libel, slander, misrepresentation, or deceit. *See* 28 U.S.C. § 2680(h); *Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir. 1986). "Under such exception, claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred." *Kim v. United States*, 940 F.3d 484, 492 (9th Cir. 2019) (internal quotation marks and citation omitted). "To determine whether section 2680 bars a proposed claim, we look beyond the labels and evaluate the alleged conduct on which the claim is based." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1123 (9th Cir. 2019) (alteration accepted) (internal quotation marks and citations omitted)). In their objections, if not their complaint, Plaintiffs describe their theory of the case and the conduct they view as unlawful. Plaintiffs allege that the United States engaged in a wide-spread governmental conspiracy, falsifying official documents and misrepresenting facts, all with the goal of "dirty[ing] up Mr. Finicum" in the media and "turn[ing] him into a domestic terrorist on paper in

the hopes to garner local, state and other community support in [the government's] efforts to kill

him and others." Pls.' Objs. [ECF 171] at 2–3, 6–8 (emphasis omitted). Plaintiffs claim that

"Defendants pandered the false and fabricated narrative and further intentionally withheld

exculpatory evidence to the media and the public." *Id.* at 8. Even if properly pled, and even

assuming this narrative is true, these allegations arise out of libel, slander, misrepresentation, and

deceit—and thus are barred by 28 U.S.C. § 2680(h).[4]

Fourth, Plaintiffs argue that the discretionary-function determination should not be made

on a motion to dismiss but on a motion for summary judgment. Pls.' Objs. [ECF 171] at 13.

Plaintiffs want to conduct discovery on the alleged wrongdoing. *Id.* However, Plaintiffs fail to

appreciate the subtleties of the discretionary-function exception. "[W]hether the discretion

involved was abused makes no difference; the government will still prevail." *Lam v. United*

*States*, 979 F.3d 665, 673 (9th Cir. 2020); *see also Nieves Martinez v. United States*, 997 F.3d

867, 881 (9th Cir. 2021) ("[E]ven though [the agent's] actions may have been negligent and even

abusive, they are not completely lacking legitimate policy rationale and they are shielded by the

discretionary-function exception."). When considering a motion to dismiss based on the

exception, "courts should put the negligence issue aside . . . and focus its inquiry on whether the

employee's acts were discretionary." *Lam*, 979 F.3d at 673. "This most often means that the

court must examine the applicable government policies to see if they authorize or imply

discretion or if they mandate specific duties." *Id.* "[T]o avoid dismissal, a plaintiff must allege

facts that support a finding that the government employee's negligence was not grounded in

---

[4] To the extent Plaintiffs suggest their wrongful-death claim is premised on the intentional killing of Mr. Finicum, this is not at all clear from the operative complaint. As explained above, Plaintiffs base their wrongful-death claim on a failure to intervene and the negligent hiring, supervision, and retention of agents and employees. Second Am. Compl. [ECF 89] ¶¶ 310–25. Plaintiffs' claims of intentional killing seem to be cabined to their assault and battery claims, which were not alleged against the United States. *Id.* ¶¶ 370–74.

policy judgments." *Id.* at 674. Thus, discovery on factual disputes that bear solely on the alleged

negligence or wrongdoing and not at all on whether the acts were discretionary would be

unhelpful. *See id.* at 672 n.3 (rejecting plaintiff's argument that the motion to dismiss should

have been converted to a motion for summary judgment because "it is well-established that

negligence is not part of the discretionary function exception analysis"). Here, Judge Sullivan

appropriately focused her analysis on whether the alleged acts were discretionary and examined

the applicable policies. F. & R. [ECF 161] at 15–21.

Fifth, Plaintiffs claim that the federal agents lacked probable cause to arrest Mr. Finicum.

Pls.' Objs. [ECF 171] at 19–23. I reject this objection and adopt Judge Sullivan's reasoning and

conclusion that the investigation and attempted arrest of Mr. Finicum fall within the

discretionary-function exception. F. & R. [ECF 161] at 17–21.

Sixth, Plaintiffs concede that their claims of negligent hiring, supervision, and retention

must fail, but then make vague assertions that the United States may have violated some

unspecified constitutional provision. Pls.' Objs. [ECF 171] at 23–24; *see also Kornberg v.*

*United States*, 798 F. App'x 1019, 1020 (9th Cir. 2020) ("Claims based on negligent and reckless

employment, supervision, and training of government employees fall squarely within the

discretionary function exception." (alteration accepted) (internal quotation marks and citation

omitted)). But Plaintiffs fail to brief a coherent theory of what happened or identify which

constitutional provision was violated. Federal pleading standards demand more.

That brings me to the question of whether to grant Plaintiffs' "request for leave to amend

and correct any technical deficiencies." *See* Pls.' Objs. [ECF 171] at 23; *see also id.* at 26

(requesting leave to amend if the court rules that the Second Amended Complaint is "technically

defective"). The United States asks for dismissal with prejudice. Def. U.S.A.'s Resp. [ECF 176]

at 18 ("Federal pleading is not a game of whack-a-mole in which plaintiffs plead, defendants defend, courts consider and rule, and then the process starts all over to satiate a plaintiff's hope she'll luck into something.").

I agree with the United States. Despite the Plaintiffs' characterizations, the deficiencies in their complaint are very much substantive and not merely "technical." Thus, leave to amend "technical deficiencies" will not solve the problems identified in Judge Sullivan's F. & R. In any event, the facts underlying this action occurred more than five years ago, this case itself is over three years old, and Plaintiffs have already filed three complaints. *See* Compl. [ECF 1]; First Am. Compl. [ECF 17]; Second Am. Compl. [ECF 89]. After all this time, Plaintiffs have yet to identify any facts or theories that, properly pled, would support a finding that any negligence or wrongdoing on behalf of the United States was not grounded in policy judgments, is not barred by § 2680(h), and is otherwise actionable under the FTCA. Given these circumstances, I find that allowing further amendment would likely be futile and would cause nothing but undue delay. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (When evaluating undue delay, courts "inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." (internal quotation marks and citation omitted)).

For these reasons, I GRANT Defendant United States of America's Motion to Dismiss [ECF 108], and I DISMISS the claims against it with prejudice.

### B.      Special Agent Bretzing

The claims against Agent Bretzing include a *Bivens*[5] claim, various 42 U.S.C. § 1983 claims, the "conspiracy" claim, and the state-law negligence claim. Judge Sullivan recommends

---

[5] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

dismissal of all claims against Agent Bretzing because Plaintiffs failed to serve him. F. & R.

[ECF 161] at 24–29. Even assuming he was served, Judge Sullivan still recommends dismissal of

all claims. She recommends dismissal of the state-law claims under the Westfall Act. *Id.* at 29–

30. She recommends dismissal of the § 1983 claims because Agent Bretzing was not acting

under the color of state law. *Id.* at 30–32.[6] And she recommends dismissal of the *Bivens* claim as

an inappropriate expansion of the *Bivens* doctrine. *Id.* at 32–36.

Upon review, I agree with Judge Sullivan's conclusion that Agent Bretzing was never

properly served, and I accept her recommendation to exercise discretion to dismiss Agent

Bretzing.[7] Plaintiffs urge me to reject that recommendation for two reasons. First, they

repeatedly argue that Agent Bretzing knew about the claims against him. Pls.' Objs. [ECF 171]

at 28–29. Even if he did, Plaintiffs were still required to properly serve him. *See* F. & R. [ECF

161] at 28; *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)

("[O]ne becomes a party officially, and is required to take action in that capacity, only upon

service of a summons or other authority-asserting measure stating the time within which the

party served must appear and defend.").

Second, Plaintiffs claim that dismissal is unduly harsh and not required. Pls.' Objs. [ECF

171] at 29–30. They argue for an extension of time to serve Agent Bretzing, correctly noting that

the claims against him are otherwise time-barred. *Id.* at 29. It is true that a court may extend time

for service if, for instance, "a statute-of-limitations bar would operate to prevent re-filing of the

---

[6] Judge Sullivan recommends dismissal of the *Monell* claim lodged against Agent Bretzing because he is not a municipality. F. & R. [ECF 161] at 30. Plaintiffs' *Monell* claims against all individual actors fail for this same reason.

[7] Judge Sullivan made the same recommendation as to Defendant W. Joseph Astarita, F. & R. [ECF 130], and I adopted that recommendation and dismissed Defendant Astarita from this case. Op. & Order [ECF 139].

10 – OPINION AND ORDER

action." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). But such an extension is

not mandatory—and is in fact inappropriate absent good cause or excusable neglect. *Id.* ("[I]f

good cause is not established, the district court *may* extend time for service *upon a showing of*

*excusable neglect*." (emphases added)) Judge Sullivan outlined the service issues that have

plagued this case. F. & R. [ECF 161] at 24. She noted that Plaintiffs "did not provide any reason

for [their] failure to comply" with the service rules. *Id.* at 29 n.6.[8] And she laid out the reasons

behind her recommendation against an extension and in favor of dismissal. *Id.* at 28–29. I agree

with those reasons and her recommendation.

 I GRANT Defendant Greg T. Bretzing's Motion to Dismiss [ECF 107].

## II. State Defendants

 The State Defendants include the state of Oregon, OSP, Governor Brown, Superintendent

Hampton, Trooper 1, and Trooper 2. Plaintiffs bring three § 1983 claims (one for excessive

force, one for deprivation, and one based on a *Monell* theory); the "conspiracy" claim; and state-

law negligence, assault, and battery claims. For various reasons, Judge Sullivan recommends

granting the State Defendants' motion in part and denying it in part, allowing some claims to

proceed. *See* F. & R. [ECF 161] at 42–49.

 At the outset, Judge Sullivan determined that the claims against Superintendent Hampton,

Trooper 1, and Trooper 2, first asserted after the statute of limitations had run, relate back to a

timely filed complaint. *Id.* at 37–42. The State Defendants object to this conclusion. State Defs.'

Objs. [ECF 169] at 4–8. Also, for the first time, the State Defendants argue that Plaintiffs' claims

based on state law are untimely and should be dismissed. *Id.* at 8–9. Although I would typically

view this argument as waived, it is a purely legal one, Plaintiffs have had an opportunity to

---

[8] In their objections, Plaintiffs' state that they "can demonstrate excusable neglect" but then fail to
even attempt to do so. Pls.' Objs. [ECF 171] at 28.

respond, and it will almost certainly come up again, either in a future motion to dismiss or motion for summary judgment. For these reasons, I address the new argument here.

If I agree with the State Defendants' timeliness arguments (and I do), most (but not all—I address this later) of Plaintiffs' claims must be dismissed. I first explain why Plaintiffs' claims against Superintendent Hampton, Trooper 1, and Trooper 2 do not relate back to a timely filed complaint. I then explain why the state-law claims against the State Defendants are untimely. Finally, I discuss the remaining claims not implicated by the timeliness arguments.

## A.    Relation Back

The events giving rise to this action culminated on January 26, 2016. On January 25, 2018, the day before the two-year statute of limitations expired, Plaintiffs filed their first complaint, which named as defendants John Does 1–100. Compl. [ECF 1] ¶ 42. More than one year after the statute of limitations expired, Plaintiffs filed a second amended complaint, which, for the first time, identified Superintendent Hampton, Trooper 1, and Trooper 2. Second Am. Compl. [ECF 89] ¶¶ 46–48. The claims against these three defendants are untimely unless they relate back to a timely filed complaint.

At issue here is whether either Oregon law or federal law allows relation back. *See* Fed. R. Civ. P. 15(c)(1). I first address Oregon law, and then I turn to federal law.

### 1.    Oregon Law

"An amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." *Id.* 15(c)(1)(A). Oregon allows relation back if the following requirements are satisfied:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment *changing the party against whom a claim is asserted* relates back

> if the foregoing provision is satisfied and, within the period provided by law for
> commencing the action against the party to be brought in by amendment, such party
> (1) has received such notice of the institution of the action that the party will not be
> prejudiced in maintaining any defense on the merits, and (2) knew or should have
> known that, but for a mistake concerning the identity of the proper party, the action
> would have been brought against the party brought in by amendment.

Or. R. Civ. P. 23C (emphasis added). Judge Sullivan determined that identifying the Doe

defendants as Superintendent Hampton, Trooper 1, and Trooper 2 did not "change" any parties

and thus the second sentence of the rule is not implicated here. F. & R. [ECF 161] at 39–42.

Judge Sullivan found the first sentence satisfied and reasoned that relation back was therefore

appropriate. For the following reasons, I disagree.

Oregon law distinguishes between "misnomer" cases, to which only the first sentence

applies, and "misidentification" cases, to which both sentences apply. *Worthington v. Estate of*

*Davis*, 282 P.3d 895, 898 (Or. Ct. App. 2012). The former occurs when "the plaintiff chooses the

correct defendant and simply misnames it," while the latter "occurs when the plaintiff mistakenly

sues a person or entity other than the one whose conduct allegedly harmed the plaintiff." *Id.* at

898–99. "If, considering all the allegations of the original complaint and the summons, an entity

could reasonably identify itself as the entity intended to be sued, a misnomer has occurred," and

only the first sentence of the rule must be satisfied. *Id.* at 899 (alteration accepted) (internal

quotation marks and citation omitted).

For example, in *Harmon v. Meyer*, the plaintiff sued "Interlake, Inc.," a corporation that

did not exist in Oregon, rather than the correct defendant, "The Interlake Corporation." 933 P.2d

361, 362–63 (Or. Ct. App. 1997). The court determined that this was a case of misnomer,

holding:

> if a plaintiff misnames, but serves, the correct entity with a copy of the original
> complaint within the 60-day period allowed for service, and the entity served should
> reasonably understand from the complaint that it is the entity intended to be sued,

> then an amendment of the pleadings to correct the misnomer does not bring in a
> new entity and is not a change in party.

*Id.* at 365. The court repeatedly emphasized that in misnomer cases, the correct defendant,

though misnamed, is properly and timely served. *See, e.g.*, *id.* at 364 (describing a misnomer

case in which "the summons correctly stated defendant's name and was served properly on

defendant within the 60-day period allowed for service of summons"). And the court

distinguished cases in which "the correct defendants were not served with the original

complaints and for that reason alone were not brought in by the original complaints." *Id.* at 365.[9]

   As Judge Sullivan notes in her F. & R., Oregon state courts have not expressly decided

whether the naming of a Doe defendant should be categorized as a misnomer such that only the

less-stringent first sentence of the relation-back rule applies. F. & R. [ECF 161] at 40. However,

"*Harmon* supplies the applicable legal test for determining whether there has been a change in

the parties." *Vergara v. Patel*, 471 P.3d 141, 147 (Or. 2020). "That inquiry focuses on whether,

when served with a copy of the original complaint, 'the correct entity should reasonably have

understood from the pleadings that it is the entity intended to be sued.'" *Id.* (alteration accepted)

(quoting *Harmon*, 933 P.2d at 364).

   On the issue of relation back of Doe defendants, federal courts in Oregon have split. One

court concluded that these cases may qualify as misnomers. *See Korbe v. Hilton Hotels Corp.*,

Civil No. 08-1309-PK, 2009 WL 723348, at *2–3 (D. Or. Mar. 13, 2009). There, the plaintiff

tripped over the cord of a vacuum cleaner in the lobby of a hotel and sued, naming various hotel

defendants, along with a John Doe defendant who operated the vacuum cleaner on the day of the

incident. *Id.* at *1. Plaintiff did not learn the identity of the Doe defendant until after the statute

---

[9] Considering the *Harmon* court's emphasis on notice and knowledge, which the second sentence
of Oregon's relation-back rule requires anyway, the distinction between misnomer and misidentification
may be a distinction without a difference.

of limitations had run, at which point she served an amended complaint on the now-identified

Doe defendant. *Id.* The court held that this was a case of misnomer, reasoning that the proper

defendant "was incorrectly named in the original complaint by the name John Doe" and that had

the defendant "been served with the original complaint, he would have understood that he was

the intended defendant." *Id.* at *2.

Other Oregon federal courts have rejected *Korbe*, holding that these cases may never

qualify as misnomers because the decision to name a John Doe defendant is intentional, based on

a lack of knowledge, and is thus not a situation in which a plaintiff merely misnames the

defendant. *See, e.g.*, *Glass v. Forster*, Case No. 1:18-cv-01859-MC, 2020 WL 3077868, at *10

(D. Or. June 10, 2020); *Hagen v. Williams*, Case no. 6:14-cv-00165-MC, 2014 WL 6893708, at

*7 (D. Or. Dec. 4, 2014) (expressing disagreement with *Korbe*).

Still other Oregon federal courts stake out a middle ground, holding that to satisfy the

reasoning in *Korbe*, the original complaint must describe the Doe defendants in sufficient detail.

*Fudge v. Bennett*, Case No. 2:19-cv-01102-SB, 2021 WL 1414279, at *4 (D. Or. Jan. 5, 2021);

*Manns v. Lincoln County*, Case No. 6:17-cv-01120-MK, 2018 WL 7078672, at *5–6 (D. Or.

Dec. 12, 2018); *Sarnowski v. Peters*, Case No. 2:16-CV-00176-SU, 2016 WL 10705318, at *5

(D. Or. Sept. 8, 2016).

In this case, Judge Sullivan reasoned that the facts are analogous to those in *Korbe* and

concluded that this is a case of misnomer that should relate back to a timely filed complaint. F. &

R. [ECF 161] at 40–42. I disagree with *Korbe* and thus disagree with Judge Sullivan's

recommendation.

*Korbe* cannot be reconciled with *Harmon*. In *Harmon*, the Oregon Court of Appeals

limited the doctrine of misnomer to those cases in which the correct defendant was timely served

but misnamed, and the court distinguished those cases in which the correct defendant was "not served with the original complaint[] and for that reason alone [was] not brought in by the original complaint[]." 933 P.2d at 364–65. In cases of misnomer, the correct defendant "should reasonably have understood from the pleadings that it is the entity intended to be sued." *Id.* at 364. A John Doe defendant who is not served the original complaint will never understand from the pleadings, which he never received, that he is the person intended to be sued.[10] In *Korbe*, however, the federal court concluded that *had* the correct defendant been served with the original complaint, he *would have* understood that he was the intended defendant. But Oregon law does not invite inquiry into the hypothetical world in which the correct defendant was timely served but misnamed. The inquiry, as described in *Harmon*, rests entirely on whether the correct defendant was *in fact* timely provided the pleadings, from which the defendant should have understood that he or she was the person intended to be sued.

For these reasons, I agree with the cases that reject *Korbe*. Those case are more in line with Oregon law as explained by the Oregon state court in *Harmon*.[11] Accordingly, Plaintiffs must satisfy the entirety of Oregon Rule of Civil Procedure 23C.

Under that rule, an amended complaint relates back if, "within the period provided by law for commencing the action against the party to be brought in by amendment," the party (1) received notice of the lawsuit such that it will not be prejudiced, and (2) should have known that, but for a mistake concerning identity, the lawsuit would have been brought against them in the

---

[10] I suppose a Doe defendant could turn out to be the same person served with the original complaint, in which case the Doe defendant perhaps would understand from the pleadings that he or she was the person intended to be sued. Plaintiffs do not argue that this is what happened here.

[11] I recognize that cases featuring Doe defendants do not perfectly fit within the "misidentification" category either, since the plaintiff does not "mistakenly" sue the wrong defendant. However, I am unaware of any situation other than misnomer in which a plaintiff must satisfy only the first sentence of Oregon's relation-back rule. Under *Harmon*, I hold that this is not a case of misnomer.

first place. Or. R. Civ. P. 23C. The "rule requires that [the amendment] will relate back only if the party to be brought in has received notice of the action within the statutory limitation period, rather than within the 60-day grace period allowed for service." *Harmon*, 933 P.2d at 298 (internal quotation marks and citation omitted). The analysis "is analogous to the federal standard." *Glass* 2020 WL 3077868, at *10 (internal quotation marks and citation omitted). Thus, I turn now to the federal standard.

### 2.    Federal Law

Under the federal rules, an amendment relates back

if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). Here, the State Defendants concede element (i). State Defs.' Objs. [ECF 169] at 7. Instead, they argue that the naming of Doe defendants is not a mistake for purposes of element (ii). *Id.* I agree. *See Boss v. City of Mesa*, 746 F. App'x 692, 695 (9th Cir. 2018) ("Replacing a 'John Doe' defendant with the actual name of a defendant is not a 'mistake' that allows relation back under Rule 15(c)(1)(C)"); *see also Manns*, 2018 WL 7078672, at *4–5 (citing cases establishing "the clear trend in this district" that "relation back does apply when a plaintiff seeks to replace a 'Doe' defendant with a newly named party").

Accordingly, I find that the claims against Superintendent Hampton, Trooper 1, and Trooper 2 are untimely, and I disagree with Judge Sullivan's recommendation to the contrary. I DISMISS all three defendants from this lawsuit.

B.    **Timeliness of State Claims**

As noted above, the State Defendants argue that Plaintiffs' claims based on state law are

untimely. State Defs.' Objs. [ECF 169] at 8–9. I agree.

At the outset, I note that the State Defendants' argument is limited to Plaintiffs' state-law

claims. Federal law governs Plaintiffs' federal-law claims, and under Federal Rule of Civil

Procedure 3, a civil suit "is commenced by filing a complaint with the court." The original

complaint was filed within the two-year statute of limitations, and thus the federal claims are

timely as to the remaining State Defendants. *See S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d

1288, 1293 (9th Cir. 2006) (explaining that "Rule 3 governs the commencement of federal

causes of action using borrowed state statutes of limitations" and holding that "a federal court

borrowing a state's time period for filing suit brought under federal law should not also borrow

the state's time limits for serving the complaint").

For the claims based on state law, however, Oregon's time limits for serving the

complaint do apply, as least as they relate to the statutes of limitation. *See Torre v. Brickey*, 278

F.3d 917, 919–20 (9th Cir. 2002) (per curiam) (finding no conflict between the Federal Rules of

Civil Procedure and Oregon law on this point). In *Torre*, the Ninth Circuit, sitting in diversity

jurisdiction and applying Oregon law, held that the lawsuit was untimely because the defendant

was served with summons more than two years after the statute of limitations expired. *Id.*

In Oregon, "[o]*ther than for purposes of statutes of limitations*, an action shall be

commenced by filing a complaint with the clerk of the court." Or. R. Civ. P. 3 (emphasis added).

For purposes of statutes of limitations, however, an action is considered commenced on the date

the complaint was filed only if summons is subsequently served within 60 days. Or. Rev. Stat.

§ 12.020(2). Otherwise, an action is considered commenced on the date of service. *Id.*

§ 12.020(1).

Here, Plaintiffs filed the original complaint on January 25, 2018, the day before the

limitations period expired. Only if Plaintiffs served summons within 60 days, or by March 26,

2018, are the claims based on state law timely. Plaintiffs concede that the original State

Defendants did not waive service of process until August 3, 2018. Pls.' Resp. [ECF 178-1] at 2;

*see also* Waivers of Service [ECF 48–50] (filing service waivers on August 3, 2018). They make

no argument that a different date should apply. Instead, they argue that the State Defendants

waived what Plaintiffs refer to as a Rule 12(b)(5) defense. Pls.' Resp. [ECF 178-1] at 10–12; *see*

*also* Fed. R. Civ. P. 12(h)(1) (listing when certain 12(b) defenses are waived). But the State

Defendants do not argue that service was insufficient under Rule 12(b)(5); they argue that the

state claims are untimely under Oregon law. Thus, Rules 12(b)(5) and 12(h)(1) are inapposite.

Accordingly, I DISMISS the state-law claims asserted against the State Defendants.

**C.      Remaining Claims**

The remaining State Defendants include the state of Oregon, OSP, and Governor Brown.

The remaining claims against them include the three § 1983 claims (one for excessive force, one

for deprivation, and one based on a *Monell* theory) and perhaps the "conspiracy" claim, though it

is unclear if that claim is based on state or federal law.

Judge Sullivan recommends dismissal of the *Monell* claims against the State Defendants.

F. & R. [ECF 161] at 44. Plaintiffs "respectfully concede to dismissal" of the *Monell* claim

against all defendants except the County Defendants. *See* Pls.' Objs. [ECF 171] at 27. I therefore

DISMISS the *Monell* claims against the State Defendants.

The § 1983 excessive-force claim is brought against Governor Brown. Judge Sullivan recommends that I dismiss the claim because "[t]here is no allegation that Governor Brown was present during the stop or the encounter at the roadblock or that she directly participated in the use of force against Finicum." F. & R. [ECF 161] at 42. Judge Sullivan concluded that the alleged conduct "falls well below the standard required for 'integral participation' in a § 1983 excessive force claim." *Id.* at 43. In their objections, Plaintiffs cite two inapplicable cases: *Monell*, a case about municipality liability, and *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006), a case about the state-created danger doctrine. Pls.' Objs. [ECF 171] at 34–35. These objections are unpersuasive, and I agree with Judge Sullivan. I DISMISS the § 1983 excessive-force claim against Governor Brown.

The § 1983 deprivation claim is also brought against Governor Brown. Judge Sullivan noted that the State Defendants did not move to dismiss this claim. F. & R. [ECF 161] at 49 n.16. The State Defendants' objections are silent on this point. *See* State Defs.' Objs. [ECF 169]. This claim therefore survives.

This leaves the conspiracy claim, which has been asserted against all three remaining State Defendants. Judge Sullivan recommends dismissing the conspiracy claims "with leave to amend so that Plaintiffs can more clearly state their conspiracy claim as to the State Defendants." F. & R. [ECF 161] at 47. The State Defendants did not object to this recommendation. *See* State Defs.' Objs. [ECF 169]. I note, however, that any amendment must be based on federal law, as claims based on state law are untimely.

In sum, I GRANT in part and DENY in part the State Defendants' Motion to Dismiss [ECF 105]. The § 1983 deprivation claim went unchallenged and therefore moves forward. The

conspiracy claim is DISMISSED without prejudice and with leave to amend. The remaining claims against the State Defendants are DISMISSED with prejudice.

## III.    County Defendants

The County Defendants include Harney County, Sheriff Ward, and Judge Grasty. I discuss the individual defendants first, then the County.

### A.    Sheriff Ward and Judge Grasty

Plaintiffs bring various § 1983 claims, a conspiracy claim, and state-law negligence, assault, and battery claims against these defendants. Like with Agent Bretzing, Judge Sullivan explained that Plaintiffs failed to serve Sheriff Ward and Judge Grasty and recommends dismissal. F. & R. [ECF 161] at 51–59. Plaintiffs recycle the arguments they made against dismissal of Agent Bretzing. Pls. Objs. [ECF 171] at 33–34.

Upon review, and for the same reasons I dismissed the claims against Agent Bretzing, I agree with Judge Sullivan's findings, adopt her recommendation, and DISMISS Sheriff Ward and Judge Grasty from this lawsuit.

### B.    Harney County

This leaves Harney County. Plaintiffs bring a *Monell* claim, a conspiracy claim, and state-law claims of negligence, assault, and battery. Judge Sullivan recommends dismissal of all claims against Harney County but with leave to amend. F. & R. [ECF 161] at 64–72. She recommends permanent dismissal of Plaintiffs' state-law claims except as to Mrs. Finicum in her capacity as personal representative of Mr. Finicum's estate. *Id.* at 49.[12] And she recommends denial of the County Defendants' Special Motion to Strike with leave to renew after the close of discovery. *Id.* at 62.

---

[12] Judge Sullivan recommends the same for the excessive-force claim. However, I have dismissed that claim with prejudice as to each defendant against whom it was alleged.

The County Defendants did not file any objections. Plaintiffs ask for an opportunity to amend, which is what Judge Sullivan recommends. Pls. Objs. [ECF 171] at 34. Upon review, I ADOPT Judge Sullivan's findings and recommendations as to Harney County in full.

## CONCLUSION

For the above reasons, I largely agree with Judge Sullivan's recommendations.

I GRANT in part and DENY in part the State Defendant's Motion to Dismiss [ECF 105]. The claims against Defendants Travis Hampton, Trooper 1, and Trooper 2 are untimely, and I DISMISS all claims against them with prejudice. The § 1983 deprivation claim against Governor Brown survives, as the State Defendants did not move on that claim. Plaintiffs have until September 15, 2021, to amend the conspiracy claim, in accordance with this opinion and Judge Sullivan's F. & R., against the remaining State Defendants (the state of Oregon, OSP, and Governor Brown). All other claims are DISMISSED with prejudice.

I GRANT the County Defendant's Motion to Dismiss [ECF 106]. All claims against Defendants David Ward and Steven Grasty are DISMISSED with prejudice. The remaining claims against Defendant Harney County for *Monell* liability, conspiracy, negligence, assault, and battery are DISMISSED with leave to amend. Plaintiffs may amend those claims by September 15, 2021. The County Defendants' Special Motion to Strike is DENIED with leave to refile. Plaintiffs' state-law claims for negligence, assault, and battery are personal to the decedent and are therefore DISMISSED except as alleged by Plaintiff D. Jeanette Finicum in her capacity as personal representative for the estate of Robert LaVoy Finicum.

I GRANT Defendant Greg T. Bretzing's Motion to Dismiss [ECF 107]. All claims against him are DISMISSED with prejudice.

I GRANT Defendant United States of America's Motion to Dismiss [ECF 108]. The claims against the United States are DISMISSED with prejudice. All claims against the FBI and BLM are also DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this _5th_ day of August, 2021.

MICHAEL W. MOSMAN
United States District Judge

23 – OPINION AND ORDER